## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

SATYAM COMPUTER SERVICES LTD.
SECURITIES LITIGATION

This Document Applies to: All Cases

09 MD 2027 (BSJ)
(Consolidated Action)

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DIRECTOR DEFENDANTS' MOTIONS TO DISMISS
## THE CONSOLIDATED CLASS ACTION COMPLAINT

Irwin H. Warren (IW-1168)
Miranda S. Schiller (MS-9456)
Margarita Platkov (MP-1615)
Evert J. Christensen (Admitted in DE only)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Defendants Mangalam
Srinivasan and Ram Mynampati

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .........................................................................................................5

    A.    Plaintiffs..........................................................................................................5

    B.    Defendants ......................................................................................................6

        1.    Satyam ..................................................................................................6

        2.    The Officer Defendants ........................................................................6

        3.    The Maytas Defendants ........................................................................7

        4.    PricewaterhouseCoopers LLP ..............................................................7

        5.    The Directors .......................................................................................8

The Officers' Fraudulent Scheme..............................................................................9

The Allegations As To The Audit Committee............................................................12

ARGUMENT..............................................................................................................14

I.    PLAINTIFFS' § 10(b) CLAIMS AGAINST THE AUDIT COMMITTEE
    DEFENDANTS SHOULD BE DISMISSED.....................................................14

    A.    The Complaint Fails to Satisfy Rule 8 as to the § 10(b) Claim Against the
        Audit Committee Defendants ...............................................................14

    B.    Standards for Pleading Scienter Under Rule 9(b) and the PSLRA ......................15

    C.    The Complaint Fails to Satisfy the PSLRA or Rule 9(b) ....................................16

    D.    No Facts are Pled Showing a Motive and Opportunity to Commit Fraud by
        Each (or Any) Audit Committee Defendant............................................17

    E.    Plaintiffs Plead No Facts Providing Strong Circumstantial Evidence of
        Conscious Misbehavior or Recklessness...............................................18

        1.    Scienter Cannot Be Inferred From Audit Committee Membership ........18

        2.    The Facts Pled as to Both the Officers and PwC India Negate Any
            Inference of the Audit Committee Defendants' Scienter ......................20

        3.    Neither the Magnitude of the Fraud, Nor the Amount of PwC
            India's Fees, Support a Strong Inference of Scienter ............................22

        4.    Pleading of Management Letters Does Not Demonstrate Fraud.............23

        5.    Fraud Cannot Be Inferred From the Proposed Maytas Acquisition ........25

II.    PLAINTIFF'S SECTIONS 11 AND 12 CLAIMS SHOULD BE DISMISSED .............25

    A.    Heightened Pleading Requirements Apply to the §§ 11 and 12 Claims ..............25

i

## TABLE OF CONTENTS
### (continued)

Page

    B.    Adams Does Not Plead Facts Showing Section 11 Standing or Stating Such a Claim..................................................................................................27

    C.    The Section 12 Claim Fails Because No Sale or Solicitation is Pled...................28

III.    PLAINTIFFS' CONTROL PERSON CLAIMS SHOULD BE DISMISSED................30

    A.    No Control Is Alleged.........................................................................................30

    B.    There Are No Fact Allegations Showing Culpable Participation........................31

CONCLUSION .................................................................................................................32

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                                  **Page(s)**

*Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
    2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ..................................................................4, 19

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)....................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .........................................................................................20, 30

*In re Authentidate Holding Corp. Sec. Litig.*,
    2009 WL 755360 (S.D.N.Y. Mar. 23, 2009),
    *app. docketed,* No. 09-1751 (2d Cir. Apr. 24, 2009)........................................................30

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) ..............................................................................27

*Baan Co. Sec. Litig.*,
    103 F. Supp. 2d 1 (D.D.C. 2000)......................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................5, 14, 15

*Caiafa v. Sea Containers Ltd.*,
    331 F. App'x 14 (2d Cir. 2009)........................................................................................26

*Cozzarelli v. Inspire Pharms. Inc.*,
    549 F.3d 618 (4th Cir. 2008) ...........................................................................................27

*In re CP Ships Ltd. Sec. Litig.*,
    506 F. Supp. 2d 1161 (M.D. Fla. 2007)............................................................................24

*In re Deutsche Telekom AG Sec. Litig.*,
    2002 WL 244597 (S.D.N.Y. Feb. 29, 2002) .....................................................................31

*Dileo v. Ernst & Young* ,
    901 F.2d 624 (7th Cir. 1990) ...........................................................................................25

*In re Doral Fin. Corp. Sec. Litig.*,
    563 F. Supp. 2d 461 (S.D.N.Y. 2008),
    *aff'd sub nom., W. Va. Inv. Mgmt.   Bd. v. Doral Fin. Corp.*,
    2009 WL 2779119 (2d Cir. Sept. 3, 2009) .........................................................18, 21, 23

*ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ...................................................................5, 14, 16, 17, 18

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    595 F. Supp. 2d 1253 (M.D. Fla. 2009).............................................................23

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003)..................................................4, 18, 19, 24

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ........................................................................................14

*Feasby v. Industri-Matematik Int'l Corp.*,
    2003 WL 22976327 (S.D.N.Y. Dec. 19, 2003) .....................................................24

*In re Fed. Nat'l Mortgage Ass'n Securities, Derivative, and "ERISA" Litig.*,
    503 F. Supp. 2d 25 (D.D.C. 2007)....................................................................22

*Fidel v. Faley*,
    392 F.3d 220 (6th Cir. 1990) ...........................................................................22

*Furher v. Ericsson LM Tel. Co.*,
    2009 WL 3228895 (2d Cir. Oct. 8, 2009)
    *aff'd sub nom., Furher v. Ericsson LM Tel. Co.*,
    2009 WL 3228895 (2d Cir. Oct. 8, 2009) ...............................................14, 15, 18

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ........................................................................24

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................28

*In re Global Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003) ................................................................28

*Gurfein v. Ameritrade, Inc.*,
    411 F. Supp. 2d 416 (S.D.N.Y. 2006) ................................................................17

*Harrison v. Enventure Capital Group, Inc.*,
    666 F. Supp. 473 (W.D.N.Y. 1987)....................................................................30

*Harrison v. Rubenstein*,
    2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) ...................................................30, 31

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................................26

*Leemon v. Burns,*
      175 F. Supp. 2d 551 (S.D.N.Y. 2001) ............................................................ 17

*In re Livent, Inc. Sec. Litig.,*
      78 F. Supp. 2d 194 (S.D.N.Y. 1999) ......................................... 19, 21, 22, 23

*In re Livent, Inc. Sec. Litig.,*
      148 F. Supp. 2d 331 (S.D.N.Y. 2001) ................................. 4, 19, 21, 22, 25

*In re Marsh & Mclennan Cos. Sec. Litig.,*
      501 F.Supp.2d 452 (S.D.N.Y. 2006) .......................................................*passim*

*Medis Investor Group v. Medis Technologies, Ltd.,*
      586 F. Supp. 2d 136 (S.D.N.Y. 2008)
      aff'd, 328 F. App'x 754 (2d Cir. 2009) ........................................................ 18

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
      272 F. Supp. 2d 243 (S.D.N.Y. 2003) .......................................................... 29

*In re Merrill Lynch Sec. Litig.,*
      2009 U.S. Dist. LEXIS 61129 (S.D.N.Y. Mar. 3, 2009) ............................... 26

*Mizzaro v. Home Depot, Inc.,*
      544 F.3d 1230 (11th Cir. 2008) .................................................................... 16

*In re Morgan Stanley Tech. Fund Sec. Litig.,*
      2009 WL 256005 (S.D.N.Y Feb. 2, 2009) .................................................... 29

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.,*
      660 F.2d 9 (2d Cir. 1981) ............................................................................. 28

*Novak v. Kasaks,*
      216 F.3d 300 (2d Cir. 2000) ................................................................... 17, 18

*Pinter v. Dahl,*
      486 U.S. 622 (1988) ...................................................................................... 29

*Rich v. Maidstone Fin., Inc.,*
      2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) ................................................ 17

*Rombach v. Chang,*
      355 F.3d 164 (2d Cir. 2004) ......................................................................... 26

*Ross v. Walton,*
      2009 WL 3754136 (D.D.C. Nov. 4, 2009) .................................................... 22

*San Lendro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d ;801 (2d Cir. 1996) ...................................................................................................24

*Santa Fe Indus., Inc. v. Green* ,
  430 U.S. 462 (1977) ...............................................................................................................25

*S. Cherry Street, LLC v. Hennessee Group LLC*,
  573 F.3d 98 (2d Cir. 2009) .....................................................................................................15

*Schoenhaut v. Am. Sensors, Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997) ..........................................................................................26

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ..................................................................................................30

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ....................................................................................................16

*In re Sierra Wireless, Inc. Sec. Litig.*,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007) .....................................................................................24

*Stark Trading v. Falconbridge Ltd.*,
  552 F.3d 568 (7th Cir. 2009) ...................................................................................................28

*Steed Fin. LDC v. Laser Advisers, Inc.*,
  258 F. Supp. 2d 272 (S.D.N.Y. 2003) .....................................................................................30

*Steinberg v. Ericsson LM Tel. Co.*,
  2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) .........................................................................30

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3rd Cir. 2006) ...................................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................................5, 15, 20

*Weiss v. Priceline.com, Inc.*,
  330 F. App'x 230 (2d Cir. 2009) ..............................................................................................20

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
  2009 WL 2779119 (2d Cir. Sep. 3, 2009) ......................................................................4, 18, 21

*Wilson v. Saintine Exploration & Drilling Corp.*,
  872 F.2d 1124 (2d Cir. 1989) ..................................................................................................29

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003) ................................................................. 22

*In re WorldCom, Inc. Sec. Litig.*,
   2003 WL 23174761 (S.D.N.Y. Dec. 3, 2003) ........................................... 4, 19, 20

*In re Yukos Oil Co. Sec. Litig.*,
   2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ...................................................... 31

*Zirkin v. Quanta Capital Holdings Ltd.*,
   2009 WL 185940 (S.D.N.Y. Jan. 23, 2009) ........................................................ 26

**Statutes and Rules:**

15 U.S.C. § 77k ................................................................................. 25, 26, 27, 28

15 U.S.C. § 77l ............................................................................ 25, 26, 27, 28, 29

15 U.S.C. § 77o ................................................................................................. 30

15 U.S.C. § 78j .................................................................................................. 14

15 U.S.C. § 78t .................................................................................................. 30

15 U.S.C. § 78u-4 ......................................................................................... 15, 16

Fed. R. Civ. P. 8 ........................................................................................... 14, 15

Fed. R. Civ. P. 9 ......................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................ 1, 3

Fed. R. Civ. P. 56 .............................................................................................. 16

**Other Authorities:**

SEC Commissioner Harvey J. Goldschmid, *Post-Enron America: An SEC Perspective*
   (Dec. 2, 2002) .................................................................................................. 14

Michael R. Young, *Accounting Irregularities and Financial Fraud: A Corporate
   Governance Guide* (3d ed. 2006) ...................................................................... 12

Defendants, former directors of Satyam Computer Services Ltd. ("Satyam" or the "Company"), submit this memorandum in support of their motion to dismiss the claims asserted against them in the Consolidated Class Action Complaint (the "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act ("PSLRA").[1] The Complaint alleges an elaborate and carefully concealed fraud by Satyam's management directed against Satyam's Directors (as well as its shareholders): but the Complaint does not plead any facts that even suggest that any Director was ever involved in, aware of, ignored or benefited from any such wrongdoing.

## PRELIMINARY STATEMENT

Satyam, headquartered in Hyderabad, is an Indian information technology company. Its stock is traded on the National Stock Exchange of India and the Bombay Stock Exchange; only its ADSs are traded in the U.S., on the New York Stock Exchange. On January 7, 2009, Satyam's founder and Chairman of the Board of Directors, B. Ramalinga Raju ("B.R. Raju"), sent a letter of resignation to the Company's Board, confessing to a $1 billion fraud that he had carefully orchestrated and concealed with the help of other senior officers over a period of years, by booking phony revenue, creating false invoices, falsifying and forging bank statements and concealing liabilities. The Board promptly and publicly disclosed the letter. Indian regulatory authorities have conducted extensive investigations; and B.R. Raju and two other Satyam executives, as well as two of the Company's outside auditors, have been jailed.

---

[1] The moving directors are Mangalam Srinivasan and Ram Mynampati; and in the event their motion to quash service is denied, M. Rammohan Rao, T.R. Prasad and V.S. Raju. Two other directors, Krishna G. Palepu and Vinod K. Dham, also are moving to dismiss. All such defendants are referred to collectively as "the Directors." All Directors join in the arguments in this brief (although Messrs. Dham and Mynampati are named only in the Counts asserting claims under the Securities Act of 1933). Messrs. Palepu and Dham are submitting additional briefs raising arguments that are unique to them.

A spate of securities fraud class actions were promptly filed. Defendants include Satyam, B.R. Raju and two other senior executives, certain other B.R. Raju-affiliated entities, Price Waterhouse, PricewaterhouseCoopers Pvt. Ltd, and Lovelock & Lewes (whom plaintiffs collectively define as "PwC India"), PricewaterhouseCoopers International Limited, and the Directors. Plaintiffs assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

The bulk of the 120-page Complaint is devoted to describing, in considerable detail, a fraud that B.R. Raju and other officers orchestrated and concealed. For example, it alleges that Satyam's management created 7,561 false invoices representing non-existent business contracts; "maintained two sets of books, one reflecting the sales figures inflated by the false invoices and the other reflecting the true sales figures"; and inflated income by forging "bank statements, bank confirmation letters, and letters describing nonexistent fund transfers for the various banks at which Satyam held accounts." Compl. ¶¶ 85, 90, 92. To conceal the hole in Satyam's balance sheet, B.R. Raju put money back into Satyam through carefully-disguised loans, designating the funds as "cash proceeds" in payment of the phony invoices, thereby understating Satyam's liabilities. *Id.* ¶ 6. The Complaint further alleges that either two of the outside auditors were complicit in the fraud or that the fraud was so well-concealed that it escaped detection by those auditors and their firm.

But the pleading as to the Directors is starkly different and patently insufficient. Although the Complaint contains conclusory, boilerplate allegations that all defendants knowingly misrepresented Satyam's financial condition, plaintiffs are seeking to hold liable five of the Directors -- not all of whom even were on the Board throughout the alleged five year class

period, but who served on the Audit Committee at some time in the Class Period -- for fraud

under Rule 10b-5, simply by virtue of their status as directors and/or Audit Committee members.

Plaintiffs do not allege that any of the Directors drafted or signed any of the allegedly false or

misleading Annual Reports on Form 20-F or quarterly reports on Form 6-K; Directors Prasad

and Raju did not sign the registration statements, either.  And plaintiffs fail to plead any specific

facts demonstrating that any Director ever had any role in, knew of, benefited from or was on

notice of (but recklessly ignored) the fraud.  Indeed, while plaintiffs allege that they reviewed

"hundreds" of witness statements about the fraud (Compl. ¶ 64), they fail to reference even one

witness who connects any Director in any way to the fraud.

   The Complaint (¶¶ 167, 168) also cites the Company's publicly disclosed

documents, which specifically delineate the limited oversight role of its Audit Committee

members: they do not create, prepare, conduct audits or engage in forensic examinations of, the

Company's books and records; and they are entitled to rely on management and the outside

auditors.  It is a public record fact that Satyam's auditors gave "clean opinions," every year; and

no facts are (or could be) pled that the Audit Committee was ever apprised of any wrongdoing.

   In such circumstances, all claims against the Directors must be dismissed for

failure to state a claim under Rule 12(b)(6) or to satisfy the requirements of the PSLRA and Rule

9(b).  There certainly are no facts giving rise to a strong, cogent or compelling inference of

scienter, much less one that a reasonable person "would" -- and not merely "could" -- conclude

was at least as strong as the inference of non-fraudulent conduct.

   As one court held, even before *Tellabs*, in dismissing securities fraud claims

against outside directors but not management, in similar circumstances: the "same allegations

that serve substantially to satisfy the pleading requirements as against [the company's

management] -- namely, the double accounting system . . . weigh against a 'strong inference'"

that the directors "were aware of the fraud, since the double system of accounting books and

records" that management "meticulously crafted left no 'paper trail or transaction trail.'" *In re*

*Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001).  Other courts have similarly

dismissed 10(b) claims against directors and audit committee members arising out of accounting

fraud, including where officers of those companies are serving lengthy prison sentences for their

fraud. *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.,* 258 F. Supp. 2d 576, 627-32

(S.D. Tex. 2003); *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 23174761 (S.D.N.Y. Dec. 3, 2003);

*Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, 2007 WL 2615928, at *5 (S.D.N.Y. Sept.

10, 2007).  Indeed, the Second Circuit recently affirmed the dismissal of § 10(b) claims against a

company's outside auditor itself, precisely because plaintiff's allegations of fraud depicted "a

tightly-held secret only a few managers knew of," making it "more plausible" and "more

compelling" to conclude that the auditor was a victim of the fraud, rather than that it "recklessly

failed to discover" the fraud. *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 2009 WL 2779119, at

*2 (2d Cir. Sept. 3, 2009).

       The facts (as opposed to characterizations and legal conclusions) in the Complaint

here, and the documents on which it purports to be based, such as B.R. Raju's resignation letter -

- which plaintiffs purport to quote, but from which they excise his point-blank statement that the

Directors were *not* aware of or involved in any wrongdoing -- give rise to only one plausible

inference:  that management deceived the Directors through an elaborate fraud in which the

outside auditors either were complicit or which those auditors failed to uncover or report.  In

such circumstances, the Exchange Act claims must be dismissed.  Point I.

Moreover, the only plaintiff (Adams) who has alleged Securities Act claims (and who purportedly represents two sub-classes of employees who exercised options to acquire Satyam securities) based on a registration statement filed in 2007, has failed to plead facts stating a claim or establishing standing. In addition, where, as here, Sections 11 and 12 claims are grounded in the same averments of fraud on which the Exchange Act claims are based, heightened pleading standards apply to those claims as well -- and compel their dismissal, too. Point II.A-B. Adams' Section 12 claims also fail because he pleads no fact showing that any Directors sold any securities within the meaning of the statute. Point II.C.

Finally, claims for secondary liability against the Directors as "control persons" under § 15 of the Securities Act and § 20(a) of the Exchange Act fail: plaintiffs have not pled facts that, if true, would show that the Directors were either control persons of Satyam or "culpable participants" in wrongdoing. Point III.

## STATEMENT OF FACTS[2]

### The Parties

#### A.     Plaintiffs

Public Employees' Retirement System of Mississippi, Mineworkers' Pension Scheme, SKAGEN AS and Sampension KP Livsforsikring A/S, are investment funds that allegedly purchased Satyam shares and ADSs between January 6, 2004 and January 6, 2009 (the

---

[2] The facts are taken from the well-pled factual allegations of the Complaint and documents attached or referenced therein, as well as documents of which the Court may take judicial notice, such as those filed with the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). On this motion, the Court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). But courts are not required to assume the veracity of "'legal conclusion[s] couched as . . . factual allegation[s],'" or to draw unreasonable inferences from plaintiffs' mere conclusions, characterizations and spin. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The exhibits ("Ex. __") cited herein are attached to the accompanying Affidavit of Margarita Platkov.

"Class Period"). Compl. ¶¶ 17-20. Plaintiff Brian Adams ("Adams") alleges that he is a "former employee of Satyam who received and exercised Satyam options." Compl. ¶ 21. Adams purports to bring claims under the Securities Act and/or Exchange Act on behalf of employees who acquired options through one of five employee option plans that were in place at different times and pursuant to different registration statements, and who exercised the options to purchase shares and/or ADSs. Compl. ¶¶ 250-254, 325, 342, 351. Adams does not plead any facts showing: [i] what options he acquired or when; [ii] whether or when (or at what strike or share price) he exercised any or all such options; or [iii] whether (or when) he held or sold any securities, or if he thereby suffered a loss.

### B. Defendants

#### 1. Satyam

Satyam is incorporated and headquartered in India, and provides "global IT and business process outsourcing services . . . to clients throughout the world." Compl. ¶ 22. While plaintiffs liken Satyam to WorldCom, Enron, Global Crossing and Parmalat, Satyam has never filed for bankruptcy and remains publicly owned.

#### 2. The Officer Defendants

Three defendant "Officers," incarcerated in India since January 2009, are:

(1)    B.R. Raju, a pioneer of the information technology industry in India, founded Satyam in 1987 and was Chairman of the Board throughout the Class Period. Compl. ¶ 25. B.R. Raju and the Raju family were among the most respected in India. B.R. Raju won several awards and honors, including Ernst & Young Entrepreneur of the Year for Services in 1999, Dataquest IT Man of the Year in 2000, CNBC's Asian Business Leader - Corporate Citizen of the Year award in 2002 and the E&Y Entrepreneur of the Year Award in 2007. Ex. 1 at 58.

(2)    B.R. Raju's brother, Byrraju Rama Raju ("Rama Raju"), was Satyam's Managing Director and CEO throughout the Class Period. Compl. ¶ 26.

(3)    Vadlamani Srinivas was Chief Financial Officer throughout the Class Period and was "a member of the Institute of Charter Accountants of India." Compl. ¶ 28.

Plaintiffs plead that B.R. Raju and Rama Raju -- *not* the Directors -- "had *direct operational control* over *all* aspects of the Company's affairs at *all* relevant times." Compl. ¶¶ 25, 26 (emphasis added). The Complaint's detailed facts about the creation, orchestration and concealment of the fraud so confirm. Plaintiffs also allege that other Satyam executives, who are not named as defendants, were "recruited by the Officers to execute the mechanics of the Satyam fraud at their direction." Compl. ¶¶ 58-61. The Rajus -- not the Directors -- allegedly benefited from the fraud through stock sales and dividends, and by diverting to themselves (i) salaries that had been allocated to nonexistent employees who they placed on the Company payroll and (ii) Company funds, to invest in secret land deals. Compl. ¶¶ 110-115, 97-106.

### 3.  The Maytas Defendants

B.R. Raju's confession was precipitated by the cancellation of Satyam's proposed acquisition of two B.R. Raju-controlled real estate entities, Maytas Infra and Maytas Properties, allegedly advanced by B.R. Raju in an effort to conceal the fraud in December 2008 (Compl. ¶¶ 8, 32, 36, 72).

### 4.  PricewaterhouseCoopers LLP

Defendant PricewaterhouseCoopers–India, an affiliate of widely respected defendant PricewaterhouseCoopers International, was engaged as outside auditor, to "provide independent auditing . . . services, including the examination and/or review of Satyam's . . . financial statements." Compl. ¶ 38. Two PwC partners (S. Gopalakrishnan and Srinivas Talluri) affiliated with Price Waterhouse who allegedly "were primarily responsible for conducting Satyam's outside audits," are not named as defendants (the "Audit Partners"), but are in jail. Compl. ¶ 62. The Complaint asserts that India's Central Bureau of Investigation ("CBI") "concluded that these partners were complicit in the Satyam fraud." Compl. ¶¶ 62, 65.

### 5.    The Directors

Unlike the Officers who allegedly directed, participated in and profited from the fraud, the Complaint conspicuously does not plead any facts showing (nor does it even assert) that the Directors knew of, participated in or benefited from the fraud in any way.  As is evident from the Complaint, not all of the Directors were on the Audit Committee, or even on the Board itself, for the entire Class Period.  The Complaint (¶¶ 46-50) names five former directors who at one time or another were members of the Audit Committee of the Board (the "Audit Committee Defendants"):

(1)    Mangalam Srinivasan ("Srinivasan") was appointed to the Board in 1991.  She was one of the first women to be invited as a fellow to Harvard University's Center for International Affairs and has been an advisor to and a distinguished fellow of the Harvard University Kennedy School of Business; an adviser to Indira Gandhi in the 1980s; and a consultant to the United Nations on corporate social responsibility.  She resigned, on December 25, 2008, after the Board called off the proposed Maytas acquisition -- and before B.R. Raju disclosed his fraud.  Compl. ¶ 46.

(2)    Krishna G. Palepu was appointed to the Board in 2003 and was a member of the Audit Committee only from July 2003 through July 2005.  Dr. Palepu is Professor of Business Administration at the Harvard Business School, where he also holds the title of Senior Associate Dean, Director of Research.  Dr. Palepu resigned on December 29, 2008.  Compl. ¶ 47.

(3)    M. Rammohan Rao, was appointed to the Board in 2005 and was a member of the Audit Committee from 2006 through 2008.  He was the Dean of the Indian School of Business and also taught at the N.Y.U.'s Stern School of Business.  He resigned from the Satyam board on December 29, 2008.  Compl. ¶ 48.

(4)    T.R. Prasad, who was appointed to the Board in 2007 and was a member of the Audit Committee in 2007 and 2008, served as the Cabinet Secretary and Defense Secretary of the Government of India and was a member of the Finance Commission of India.  Mr. Prasad ceased to be a member of the Board on January 9, 2009.  Compl. ¶ 49.

(5)    Defendant V.S. Raju was appointed to the Board in April 2007 and was a member of the Audit Committee in 2007 and 2008.  He is a Former Director at the Indian Institute of Technology–Delhi; Dean and Professor at the Indian Institute of Technology–Madras; and was a Member of the Telecom Regulatory Authority of

India. Mr. Raju ceased to be a member of the Board on January 9, 2009. Compl. ¶ 50. (He is not related to B.R. Raju.)

The Complaint (¶¶ 52-53) also names two other Directors as defendants (Messrs. Dham and Mynampati, who joined the Board in 2003 and 2006, respectively), but solely as to the Securities Act claims, as neither was ever on the Audit Committee. Ex. 1 at 58.

**The Officers' Fraudulent Scheme**

On January 7, 2009, Satyam's founder and Chairman of the Board, B.R. Raju, sent a letter of resignation to the Board of Directors, containing his confession that he had orchestrated a massive financial fraud by systematically overstating the Company's profits and understating its liabilities through the creation of thousands of phony invoices, forgery of bank statements, keeping two sets of books and disabling computers. Approximately $1 billion of assets on Satyam's balance sheet were non-existent. (Compl. ¶ 74, Ex. E). The letter expressly exculpated the Board: "None of the board members, past or present, had any knowledge" of any wrongdoing. Compl. Ex. E ¶ 4. Satyam and its Board promptly disclosed the letter. Ex. 2. The price of Satyam's stock and ADSs promptly dropped. Compl. ¶ 75.

The Complaint details at length the roles played by the Officers and their non-defendant confederates -- but no Director is mentioned by name even once in the more than 50 paragraphs describing the fraud. Compl. ¶¶ 58-61, 65-115. Thus, even crediting plaintiffs' version of the facts, the Directors never knew of or participated in any scheme; never prepared or signed a Form 20-F or 6-K; never knowingly or recklessly made or participated in making any false or misleading statements; and never took a nickel of unauthorized funds. And plaintiffs' conclusory allegations that the Directors supposedly "should have, and but for the recklessness . . . would have, been able to detect the fraud" (Compl. ¶ 170(a)) are contradicted by the detailed

*fact* allegations that (i) the Officers went to extraordinary lengths to conceal their fraud from the Directors, and (ii) PwC India never informed the Directors of it.  Compl. ¶ 65.

### A.  The Fabricated Invoices, Deleted Records and Two Sets of Books

- To inflate Satyam's income, the Officers directed the Assistant Manager of Finance, Srisailam Chetkuru, to create hundreds of millions of dollars of false invoices for "non-existent customer projects" and contracts.  Compl. ¶¶ 68, 85.

- With the help of employees, Chetkuru created more than 7,500 false invoices. Compl. ¶ 85.  He then "took steps to cover up the falsification of invoices" by "instruct[ing] Satyam technical experts to manipulate the source code, or programming, of Satyam's invoice management system to create a mechanism that would permit his employees to hide the fake invoices they created from discovery by other users" and "assur[ing] that it would be difficult for anyone to discover the phony invoices."  *Id.* ¶ 86.  He also "instructed subordinates to delete any electronic records that could prove the falsification of invoices and to reverse certain entries in the inventory system."  *Id.*

- The Officers "maintained two sets of books, one reflecting the sales figures inflated by false invoices and the other reflecting the true sales figures."  Compl. ¶ 90.

- "Defendant [CFO] Srinivas created minutes showing that a Trust Meeting was held to authorize the allotment" of shares to employees "who assisted in the creation of fake invoices" when in fact "no such meeting ever occurred."  Compl. ¶ 88.

- The Officers put thousands of "ghost employees" on the company's books, and the salaries of those employees were funneled to the Rajus through "*secret* accounts."  Compl. ¶ 69 (emphasis added).

### B.  The Officers Forged Bank Documents to Conceal the Fabricated Invoices

- The Officers "created sham earnings by falsifying invoices" and "caused receipts of deposit and numerous other bank documents reflecting fraudulent deposits by Satyam to be forged and maintained in the Company's records."  Compl. ¶ 91.

- The Officers falsified "numerous other bank documents reflecting fraudulent deposits" (Compl. ¶ 91) by directing Vice President of Finance, Ramakrishna, to prepare "forged documents, including Fixed Deposit Receipts ("FDRs"), bank statements, bank confirmation letters, and letters describing non-existent fund transfers for the various banks at which Satyam held accounts."  *Id.* ¶ 92.

**C.    Secret Related-Party Loans To Further Conceal The Fraud**

- The Officers "secured hundreds of millions of dollars in loans" that were never "properly designat[ed] . . . as loans" but were instead booked as "cash proceeds" on financial statements, thereby understating Satyam's liabilities. Compl. ¶¶ 107-109; *id.* ¶ 6. These "*secret* loans to Satyam" were arranged by the Officers "through intermediaries they controlled." *Id.* ¶ 107 (emphasis added). The Officers also "*secretly* caused Satyam to repay approximately $40 million of these loans." *Id.* ¶ 109 (emphasis added).

- The "secret related party loans were routed through a series of cover companies established in the names of Defendants Ramalinga Raju and Rama Raju." Compl. ¶ 70.

**D.    Money Laundering Through Real Estate Transactions**

- "Between 1999 and 2008, members of the Raju family created a network" of 327 "secret companies . . . in furtherance of a scheme to use Satyam cash to acquire large tracts of land . . . for the personal benefit of the Raju family." Compl. ¶ 97.

- "Defendants Ramalinga Raju, Rama Raju, certain members of the Raju family, and their instrumentality, Defendant Maytas Infra," were "perpetrating this massive fraud, using fabricated invoices, forged bank documents, and undisclosed related party loans." Compl. ¶ 110.

- Another of Raju's brothers thereafter instructed his aide "to stash[]" documents related to the *secret* real estate deals "in six places" keeping "the keys of the safes containing the documents with him and constantly moving the documents around to avoid detection." Compl. ¶ 100.

**The Regulatory Investigations**

After B.R. Raju sent his resignation letter, several Indian government agencies, including the CBI and the Serious Fraud Investigation Office ("SFIO"), probed the situation. The Complaint repeatedly refers to these investigations (Compl. ¶¶ 64, 95, 98) -- but it does not and cannot allege that the CBI or SFIO charged any Director with any involvement in the fraud. Plaintiffs apparently could not so plead, as the SFIO -- consistent with B.R. Raju's letter -- reportedly concluded in its 14,000 page report, following a three-month investigation, that the Directors were not involved in or aware of the accounting fraud and, in fact, "were kept in the dark" by B.R. Raju and other top executives. Ex. 3.

**The Allegations As To The Audit Committee**

The Complaint simply asserts conclusory, boilerplate characterizations as to the Audit Committee's supposedly "reckless discharge of their duties." *See* Compl. ¶ 51. Yet even the pleadings concede (as they must) that the Audit Committee's role is oversight, including over the outside auditors who actually conduct audits and issue opinions on the financial statements and internal controls. Compl. ¶¶ 167, 168. As one commentator has noted: "[T]he audit committee's function is only one of oversight. Its mission is to oversee the system, not to actually run it. Running the system is, and as a practical matter has to be, the responsibility of the CEO, CFO, and those that report to them."[3]

Satyam publicly disclosed that management -- not the Audit Committee -- was responsible (i) for preparing the financial statements, in conformity with generally accepted accounting principles ("GAAP"), and (ii) "for establishing and maintaining adequate internal control over financial reporting."[4] The outside auditors' reports expressly confirm that they -- not the Audit Committee -- are responsible to plan and perform audits pursuant to GAAP and to obtain a reasonable assurance that the financial statements are free of material misstatements.[5] An Audit Committee certainly does not conduct forensic examinations to detect whether documents have been counterfeited or computer systems disabled. Rather, it is entitled to rely on

---

[3] Michael R. Young, Accounting Irregularities and Financial Fraud: A Corporate Governance Guide at 81 (3d ed. 2006).

[4] Ex. 1 at 86, 87; Ex. 4 at 69.

[5] Ex. 1 at F-2; Ex. 5 at F-2.

the independent outside auditor to perform the audit, as well as on the representations of management.[6]

Plaintiffs do not plead any facts (as opposed to conclusory characterizations) establishing that the Audit Committee did not perform such duties, much less acted so recklessly as to rise to the level of scienter. Nothing is pled controverting the publicly disclosed fact that the Audit Committee reviewed the quarterly financial statements, the performance of statutory and internal auditors and the adequacy of the internal control statements. Apart from B.R. Raju's resignation letter (which exonerates the Directors, including those on the Audit Committee), the only other contemporaneous documents cited in the Complaint are unidentified "management letters" from PwC, supposedly setting out "hundreds of internal control deficiencies in 2007 and 2008." Compl. ¶ 170(c). But the contents of these letters are not quoted in the Complaint; and none of the deficiencies (let alone their materiality) are identified, much less connected to the wrongdoing by management here alleged. Id. More important, the Complaint does not allege that the Committee failed to meet regularly with PwC India (the author of such letters) -- or that PwC India ever advised the Audit Committee of the fraud (or even material errors in the financial statements or material weaknesses in internal controls). And plaintiffs cannot even ask this Court to plausibly infer such advice (whether in meetings or management letters), because plaintiffs expressly plead that PwC India did not detect the fraud -- or alternatively, that two audit partners were complicit in the fraud. Compl. ¶¶ 62, 126. Either of such fact scenarios would make any suggestion that the Audit Committee was told of, or could have discovered, the

---

[6]  Indeed, Satyam publicly disclosed (as permitted for a "foreign private issuer") that none of the Audit Committee members was a "financial expert" within the meaning of Sarbanes-Oxley. Ex. 1 at 87; Ex. 4 at 69.

elaborate, well-concealed fraud here utterly implausible (if not absurd).[7] As a former

Commissioner of the SEC noted: even "[a]n active audit committee will not, when acting alone,

be able to catch thieves in most circumstances."[8]

## ARGUMENT

## I.    PLAINTIFFS' § 10(b) CLAIMS AGAINST THE AUDIT COMMITTEE DEFENDANTS SHOULD BE DISMISSED

Plaintiffs allege that the Audit Committee Defendants violated § 10(b) and Rule

10b-5.[9] The essence of such a claim is *scienter:* innocent error or negligence (even gross

negligence) does not suffice. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 207 (U.S. 1976);

*Furher v. Ericsson LM Tel. Co.*, 2009 WL 3228895, at *1 (2d Cir. Oct. 8, 2009) (citing

*Hochfelder*). To state a claim, plaintiffs must plead facts showing that *each* defendant (1) made

misstatements or omissions of material fact; (2) with scienter; (3) in connection with the

purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance

was the proximate cause of their injury. *ECA & Local 134 IBEW Joint Pension Trust v. JP

Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). As to these defendants, the Complaint

here fails to satisfy Rule 8, Rule 9(b) or the PSLRA.

### A.    The Complaint Fails to Satisfy Rule 8 as to the § 10(b) Claim Against the Audit Committee Defendants

A complaint must plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint cannot survive

---

[7] Indeed, the Public Company Advisory Oversight Board reportedly examined the PwC audit of Satyam and apparently did not raise any issue of significance. Ex. 6.

[8] SEC Commissioner Harvey J. Goldschmid, *Post-Enron America: An SEC Perspective* (Dec. 2, 2002) (www.sec.gov/news/speech/spch120202hjg.htm).

[9] 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

dismissal under Rule 8(a)(2) where it "pleads facts that are 'merely consistent with' a defendant's liability" but "'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 557). Here, the facts pled show *no* knowledge, awareness, participation in or even notice of any fraud as to any Audit Committee Defendant. And plaintiffs plead that the outside auditor either failed to detect or was complicit in the fraud. An inference of scienter is thus implausible.

### B.    Standards for Pleading Scienter Under Rule 9(b) and the PSLRA

The § 10(b) claims against the Audit Committee Defendants should be dismissed because the Complaint fails to plead scienter with the requisite particularity. For each misstatement alleged -- and as to each defendant -- plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "[L]abels and conclusions" are not enough. *Twombly,* 550 U.S. at 555.

In *Tellabs,* the Supreme Court explained that for an inference "[t]o qualify as 'strong,' [it] must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[10] This requires a "comparative evaluation," under which courts consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs,* 551 U.S. at 314. Most important, "a complaint will survive . . . only if a reasonable person would" -- not just "could" -- "deem the inference of scienter cogent and at least as compelling as any opposing inference [of non fraudulent intent] one could draw from the facts alleged." *Id.* at 315, 323.[11]

---

[10] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007); *see also Furher,* 2009 WL 3228895, at *1.

[11] *See S. Cherry Street, LLC v. Hennessee Group LLC,* 573 F.3d 98, 110-11 (2d Cir. 2009) ("To meet the 'strong inference' standard, it is not sufficient to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent,' for that gauge

Scienter can be established by pleading particularized facts "to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. In this case, "[w]hat is lacking from all of [plaintiffs'] allegations are particularized facts to support the inference that the [Directors] acted recklessly or with fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994).

C.    **The Complaint Fails to Satisfy the PSLRA or Rule 9(b)**

Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." The PSLRA requires that a complaint "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiffs, however, do not allege that the Audit Committee Defendants made any misstatements at all (either by signing or drafting), as to any of the allegedly false or misleading Annual Reports on Form 20-F or quarterly reports on Form 6-K; and Messrs. Prasad and Raju did not sign the registration statements, either. This alone requires dismissal of the claims against them.[12]

---

'does not capture the stricter demand Congress sought to convey in" the PSLRA); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239 (11th Cir. 2008) ("Notably, this test is not the same as the standard we employ for summary judgment under Fed. R. Civ. P. 56, because it asks what a reasonable person *would* think, not what a reasonable person *could* think") (emphasis by the Court).

[12] *See, e.g., In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 18 (D.D.C. 2000) (dismissing 10(b) claims against outside directors based on alleged false and misleading statements contained *inter alia* in Forms 20-F and 6-K, where "plaintiffs have not alleged any specific facts illustrating the involvement of these defendants in the drafting, reviewing, or dissemination of [the company's] group published statements"); *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 479 (S.D.N.Y. 2006) (dismissing 10(b) allegations against "Independent Directors that are grounded on unsigned documents" because "[p]laintiffs fail to allege with particularity that the Independent Directors were sufficiently involved in the day-to-day operations" of the company or "drafting of company statements to attribute statements in unsigned documents to the Independent Directors").

Further, "[a] complaint may not simply 'clump[] defendants together in vague allegations' to meet the pleading requirements."[13] Plaintiffs disregard these requirements and simply lump all of the Audit Committee Defendants with the Officers, without specifying what, if anything, each Audit Committee Defendant supposedly did as to each Form 20-F or 6-K or other misstatements; and what each of them supposedly knew about the fraud, including how, where and when they learned about it. *See, e.g.*, Compl. ¶¶ 178-200. In addition, plaintiffs' undifferentiated reference to "Audit Committee Defendants" (*see e.g.*, Compl. ¶¶ 79, 166, 170) further ignores the fact that different defendant directors were not on the Audit Committee -- or even the Board -- for the entire Class Period. How, for example, could a director like Mr. Prasad, who did not join the Board until 2007, be liable for a fraud in 2004 through 2006?[14]

### D. No Facts are Pled Showing a Motive and Opportunity to Commit Fraud by Each (or Any) Audit Committee Defendant

"In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, plaintiff must allege that [the defendant] 'benefited in some concrete and personal way from the purported fraud.'" *ECA*, 553 F.3d at 198 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000)). No such "concrete" benefits are pled here. Plaintiffs nevertheless urge the Court to infer fraud because "the Satyam scandal is India's Enron" (Compl. ¶ 75). But § 10(b) claims against Enron's audit committee were dismissed -- even before *Tellabs* increased the burden on plaintiffs -- precisely because (as here) no facts were pled showing that Enron's

---

[13] *Rich v. Maidstone Fin., Inc.*, 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001) (citation omitted).

[14] *See, e.g., Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006) (complaint "'may not rely upon blanket references to acts or omissions by all of the defendants'" because each defendant is "'entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged'") (citation omitted); *Leemon v. Burns*, 175 F. Supp. 2d 551, 556 (S.D.N.Y. 2001).

outside directors knew of or "personally benefited" from the fraud. *In re Enron Corp. Sec.,*

*Derivative & ERISA Litig.,* 258 F. Supp. 2d 576, 628 (S.D. Tex. 2003). *See also infra* Point E.

**E.      Plaintiffs Plead No Facts Providing Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness**

To plead recklessness, plaintiffs must allege facts demonstrating conduct that is

"highly unreasonable and which represents an extreme departure from the standards of ordinary

care . . . to the extent that the danger was either known to the defendant or so obvious that the

defendant must have been aware of it."[15]  That is, plaintiff must plead facts establishing "a state

of mind 'approximating actual intent, and not merely a heightened form of negligence.'"  *Medis*

*Investor Group v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 142 (S.D.N.Y. 2008) (citing *Novak*,

216 F.3d at 312), *aff'd*, 328 F. App'x 754 (2d Cir. 2009).  Where plaintiffs allege that behavior

was reckless (as opposed to knowingly fraudulent), "the strength of the circumstantial allegations

must be correspondingly greater."  *ECA*, 553 F.3d at 198 (citation omitted).

**1.      Scienter Cannot Be Inferred From Audit Committee Membership**

Plaintiffs allege, *ipse dixit*, that the Audit Committee, on which only certain

Directors served (and even then, at different times), possessed or had access to unspecified

information that supposedly should have "caused them to unearth and stop the Satyam fraud."

Compl. ¶¶ 169, 166.  But no such information is pled; and the fraud was not "unearthed."

Rather, it was revealed only after B.R. Raju voluntarily confessed -- and expressly disclaimed

any knowledge by (and thus exonerated) the Directors. *Compare* Compl. ¶ 73 *with id.*, Ex. E.

Even where accounting scandals have culminated in corporate bankruptcies, and

lengthy prison sentences for management, courts repeatedly have rejected membership on an

---

[15] *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 464 (S.D.N.Y. 2008) (citation omitted), *aff'd sub nom W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 2009 WL 2779119 (2d Cir. Sep. 3, 2009); *see also Furher*, 2009 WL 3228895, at *1.

audit committee as a basis for inferring scienter. *See, e.g., Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, 2007 WL 2615928, at *5 (S.D.N.Y. Sep. 10, 2007); *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 23174761, at *4 (S.D.N.Y. Dec. 3, 2003); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 627 (S.D. Tex. 2003).

Scienter also may not be inferred from recitations that the Audit Committee is responsible for "[o]verse[ing] the Company's financial reporting process" and "the adequacy" of its "internal control with management." Compl. ¶ 168. If that were the law, any claim against an audit committee member could survive dismissal simply by reciting such duties -- thereby creating an exception that would swallow the rule of *Tellabs* (and even *Iqbal*), and rendering the PSLRA and Rule 9(b) meaningless. There is no such exception, as evidenced by the numerous decisions dismissing fraud claims against audit committee members, but not company officers.[16]

In *WorldCom*, for example, the court held that plaintiffs could not plead scienter against outside directors by mere reference to their membership on the audit committee, general oversight responsibilities, or certification of false financial statements:

> The Lead Plaintiff has not pointed to any specific obligation imposed on the Audit Committee Defendants that they ignored such that it would be fair to infer that they either knew of the fraud or must have been aware of it. There is no allegation, for instance, that the Audit Committee Defendants did not communicate and meet with Internal Audit, or that they never received or reviewed information about the auditing work performed by Internal Audit. Instead, the Amended Complaint describes what the Audit Committee Defendants might have learned if they had done a better job or if they had been more aggressive or diligent. Section 10(b), however, does not impose liability for negligence or impose obligations *ex post facto* . . . .

---

[16] *See, e.g., In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999) and 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001); *Marsh & Mclennan*, 501 F. Supp. 2d at 488; *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006).

2003 WL 23174761, at *5-6.  The Complaint here suffers from the same deficiencies.  Given the

pleading of facts showing fraud only by management; the facts pled about PwC (failure to detect

or complicity in the fraud); B.R. Raju's disclaimer of any Directors' knowledge; and the absence

of any facts showing that the Audit Committee failed to perform the duties delegated to it, there

is no basis for even plausibly inferring, under *Iqbal*, that these Directors acted with extreme

recklessness approaching a willful disregard of the fraud.  And, applying *Tellabs*, a reasonable

person would *not* conclude that the inference of scienter is either compelling or at least as strong

as the inference of non-fraudulent conduct (*i.e.*, that the Directors were deceived).[17]

### 2.    The Facts Pled as to Both the Officers and PwC India Negate Any Inference of the Audit Committee Defendants' Scienter

The Complaint (*e.g.*, ¶ 90) alleges an extraordinarily complex and well-concealed

fraud *on* the Audit Committee by the Officers.  But plaintiffs further plead that either PwC India

failed to detect and report the fraud -- or (indeed, relying on the Indian CBI report) that there was

also allegedly a "well-knit criminal conspiracy" between Satyam and two audit partners who

have been jailed since January 2009.  *See, e.g.,* Compl. ¶¶ 62, 65, 126.  Such allegations confirm

a fraud on (and controvert scienter by) the Audit Committee -- whether by the inadvertence or

complicity of the outside audit firm that the Committee engaged and relied upon.

Here, then, as in *Livent*, while allegations about a massive accounting fraud and a

"double accounting system" satisfied the pleading requirements as against management, they

"work against the 'strong inference' that the Directors would have been aware of the fraud: the

---

[17] *See Weiss v. Priceline.com, Inc.*, 330 F. App'x 230, 231 (2d Cir. 2009) (affirming dismissal where inference of scienter was "not 'as compelling as [the] opposing" and "more natural" inference of non-fraudulent intent) (citing *Tellabs*, 551 U.S. at 308); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007) (affirming dismissal where "there [was] a 'plausible nonculpable explanation[ ]' for the defendants' actions that [was] more likely than any inference that the defendants" acted with scienter) (quoting *Tellabs*, 550 U.S. at 323).

double system left no 'paper or transaction trail'" and thus supports the inference that "the

Directors relied on [PwC] to perform the audit and on the representations of management." *In re*

*Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 220 (S.D.N.Y. 1999), and *In re Livent. Inc. Sec.*

*Litig.,* 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001). And if such pleadings were insufficient before

*Tellabs, a fortiori,* they fall far short now.

      Section 10(b) claims were dismissed even as against an outside auditor in *Doral*

because the more plausible inference from the pleadings was deception of the auditor by the

issuer, which massively overstated its income through "'secret side agreements' [that were]

concealed from anyone but management" and "engaged in 'a deliberate practice of conscious

misconduct at the highest levels of [its] management . . . 'designed to surreptitiously mask the

true terms and conditions of transactions.'" *In re Doral Fin. Corp. Sec. Litig.,* 563 F. Supp. 2d

461, 464 (S.D.N.Y. 2008).

> [I]n view of the Complaint's own allegations about the secretive
> and manipulative manner in which Doral accomplished its fraud, *it
> is impossible* to draw a strong inference of PwC's scienter from
> either the length or extent of the fraud, or both, *because the
> competing inference that PwC was also tricked by Doral is far
> more compelling* . . . . [Thus,] on the face of the Complaint itself,
> the inference that PwC was a victim of Doral's fraud is far more
> compelling than the inference that PwC acted with scienter.

*Id.* at 466-67 (emphasis added). The Second Circuit affirmed the dismissal and held:

> [T]he opposing inference-that Doral concealed its fraud from
> Pricewaterhouse, just as it concealed its fraud from investors-is
> objectively more compelling than plaintiffs' allegations of
> recklessness . . . . [I]t seems more plausible that Doral's managers
> concealed them from Pricewaterhouse than that Pricewaterhouse
> recklessly failed to discover them.

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 2009 WL 2779119, at *3 (2d Cir. Sep. 3, 2009). This

holding applies with equal force here, where the Directors on the Audit Committee engaged the

outside auditors to do the necessary auditing and reporting *to* the Committee. Regardless of

whether the auditors were also innocently duped (Compl. ¶ 86), or were negligent, reckless or even (as plaintiffs allege) knowingly complicit -- the "competing inference" that the Audit Committee Defendants "were deceived is stronger than the inference that they were reckless." *Id.* at *3.[18]

### 3.    Neither the Magnitude of the Fraud, Nor the Amount of PwC India's Fees, Support a Strong Inference of Scienter

Plaintiffs allege that recklessness should be inferred from the sheer magnitude of the fraud. Compl. ¶ 170(a). But "the magnitude of the fraud alone cannot suffice to impute the requisite inference of knowledge of recklessness" to audit committee members. *Livent*, 78 F. Supp. 2d at 217; *see also Livent*, 148 F. Supp. 2d at 371. "Allowing an inference of scienter based on the magnitude of the fraud would eviscerate the principle that accounting errors alone cannot justify a finding of scienter." *Fidel v. Faley,* 392 F.3d 220, 231 (6th Cir. 1990). Even in *WorldCom*, involving a multi-billion dollar fraud that, unlike here, culminated in corporate bankruptcy, fraud claims against audit committee members were dismissed because "[t]he magnitude of the alleged fraud is not sufficient, standing alone, to create liability." *In re WorldCom, Inc. Sec. Litig.,* 294 F. Supp. 2d 392, 418 (S.D.N.Y. 2003).[19]

---

[18] For perhaps the most recent example of a court dismissing Section 10(b) claims in similar circumstances, see *Ross v. Walton*, 2009 WL 3754136 (D.D.C. Nov. 4, 2009). The court there held insufficient allegations of parent company scienter (as to revenue that was fraudulently inflated by management of a wholly-owned subsidiary), despite, *inter alia*: the parent knowing of government investigations into fraudulent lending activities, including by the U.S. Attorney and a grand jury (which ultimately led to a conviction of the Executive Vice-President of the subsidiary), and by the SBA's Office of Inspector General; and letters to the parent's Board of Directors from an investment firm concerning fraudulent activities at the subsidiary.

[19] *See also Marsh & Mclennan*, 501 F. Supp. 2d at 483; *In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.*, 503 F. Supp. 2d 25, 41 (D.D.C. 2007) ("plaintiffs' argument that the magnitude of the fraud is sufficient itself for an inference that the Audit Committee defendants acted with scienter is plainly contradictory to the purposes of the PSLRA and is, at best, an oversimplification of the scienter concept.").

Plaintiffs also allege that the amount of auditor fees -- less than a $1 million in each of 2007 and 2008, and an additional $300,000 in each year for "other related services" (Compl. ¶¶ 125, 127) -- should have raised a "red flag."  Compl. ¶ 170(b).  But the size of an audit fee simply does not suggest there was "a *quid-pro-quo* for the auditor's willingness to certify the Company's false and misleading financial statements" (*id.*): as one of the largest companies in India, and with ever-growing domestic and worldwide operations, one would expect Satyam to have significant and increasing audit expenses.  The Directors are not aware of any authority holding that the amount of the auditor's annual fee is a sign of fraud.  To the contrary, see *Doral*, 563 F. Supp. 2d at 466 (PwC's receipt of $6 million in audit fees shows only that "PwC was Doral's auditor, a fact which is wholly insufficient to show PwC's scienter"); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1285-86 & n. 17 (M.D. Fla. 2009) (dismissing allegation that "[s]kyrocketing [a]udit [f]ees" of $7.3 million in one year were sufficient "to support an inference of scienter": "[t]he passage of Sarbanes-Oxley in 2002 increased outside auditors' obligations (and legal exposure) causing auditors to charge higher fees." (citations omitted)).

### 4.    Pleading of Management Letters Does Not Demonstrate Fraud

Unable to identify any document or information that the Audit Committee Defendants possessed that revealed the fraud, plaintiffs allege that PwC India raised issues concerning "hundreds of internal control deficiencies in Management Letters addressed to the Company dated May 10, 2007 and August 8, 2008."  Compl. ¶ 170(c).  But (putting aside that such assertion is meaningless as to a class period going back to 2004) the Complaint does not identify any deficiencies set out in either management letter, or plead facts showing that any deficiencies in either letter were material to Satyam's financial statements or indeed, had any

relationship to the wrongdoing alleged here.[20]  Inferring scienter from mere allegations that

directors received reports without identifying the deficiencies, or who received the reports or

when, and how they contradicted contemporaneous public statements, "would result in

inferences of scienter being available in [every] case." *In re CP Ships Ltd. Sec. Litig.*, 506 F.

Supp. 2d 1161, 1168 (M.D. Fla. 2007).  Access to unidentified information, even if the type of

document is identified, "lack[s] the requisite particularity" and rests on "speculations." *Garfield

v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006).[21]  Perhaps most important, there is

no pleading of any fact showing that PwC ever told the Audit Committee that there were any

such material weaknesses, by letter or otherwise -- and to the contrary, PwC India issued "clean"

annual opinions on Satyam's financial statements (Compl. ¶ 177), that did not reference any

material weaknesses in Satyam's controls.  The more compelling inference from such facts --

especially in the context of the further express and contradictory pleading that PwC India either

did not know of, or was complicit in, the fraud -- is that the Directors had no knowledge or

notice of the fraud from the auditors.

---

[20] It is not unusual for management letters to detail scores of deficiencies, immaterial accounting
errors, and areas in which internal systems and controls, including in particular company offices
or groups, can be improved -- but it does not follow that such matters were material to the
corporate financial statements, much less relevant to the claims pled.  In addition, the Complaint
alleges that these letters were addressed to the Company (*i.e.*, management) -- and does not plead
that, or when, the Audit Committee Defendants received them.

[21] *Accord*, *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 373 (S.D.N.Y. 2007)
("plaintiffs cannot simply allege that confidential . . . reports contradicted contemporaneous
public statements") (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip
Morris Cos.*, 75 F.3d 801, 812-13 (2d Cir.1996)); *Feasby v. Industri-Matematik Int'l Corp.*, 2003
WL 22976327, at *5-6 (S.D.N.Y. Dec. 19, 2003) (references to unidentified "internal corporate
documents" and improper revenue recognition are insufficient); *In re Enron Corp. Sec.,
Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 629 (S.D.Tex. 2003) ("Lead Plaintiff has not
provided any particular facts that were presented to and that led or should have led an Outside
Director to know or recklessly disregard that there was fraudulent accounting at Enron").

### 5.    Fraud Cannot Be Inferred From the Proposed Maytas Acquisition

Plaintiffs allege that scienter can be inferred from a proposal to acquire the Maytas companies for $1.3 billion when they supposedly were worth only $225 million. Compl. ¶¶ 79, 170(d). Plaintiffs assert that B.R. Raju proposed the acquisition to "cover up the fraud by allowing Satyam to acquire real assets for its non-existent cash." Compl. ¶ 36. But plaintiffs do not plead any facts as to what information was provided at the Board meeting at which the transaction was considered (as such a transaction obviously requires approval by the full Board, not the Audit Committee), let alone that the Board approved the transaction with knowledge of any such disparity. Moreover, even if it had been consummated (which it was not), approval would amount to, at most, non-actionable mismanagement -- not fraud. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476-79 (1977) (no cause of action under Rule 10b-5 for corporate acts that amount to common law mismanagement or breach of fiduciary duty).[22] In any event, an acquisition proposed in December 2008 (less than a month before B.R. Raju's resignation letter) would not have put anyone on notice of the financial fraud dating back to 2004 that is alleged here.

## II.    PLAINTIFF'S SECTIONS 11 AND 12 CLAIMS SHOULD BE DISMISSED

### A.    Heightened Pleading Requirements Apply to the §§ 11 and 12 Claims.

Section 11 violations may give rise to liability (subject to certain defenses) for material misrepresentations and omissions in a registration statement, on the part of a director who signs such document. 15 U.S.C. § 77k. Section 12(a)(2) provides that a person who "offers or sells a security . . . by means of a prospectus or oral communication" that contains an untrue

---

[22] Allegations challenging transactions as "economically irrational[]" demonstrate negligence, not fraud, and are insufficient to plead scienter. *Livent*, 148 F. Supp. 2d at 371; *see also Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("The Securities laws do not guarantee sound business practices.").

statement of a material fact "shall be liable . . . to the person purchasing such security from him."
15 U.S.C. § 77 l(a) (2).

Scienter is not, *per se*, an element of a Section 11 or 12(a) claim. However,
Adams (who is the only plaintiff asserting such claims) also asserts a § 10(b) claim: he relies on
the exact same allegations for his §§ 11 and 12 claims; and he incorporates therein all of the
alleged willful misconduct underlying the § 10(b) claims (Compl. ¶¶ 340, 351). As a matter of
law, then, the Complaint must satisfy heightened pleading standards: for it is the substance, and
not the label, of the claims that controls; and these requirements apply to "all averments of fraud,
not just to claims labeled 'fraud.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)
(heightened pleading standards "apply with equal force to 'averments of fraud' set forth in aid of
Section 11 and Section 12(a)(2) claims that are grounded in fraud"). *Accord, Caiafa v. Sea
Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (affirming dismissal of Securities Act
claims); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 795 (S.D.N.Y. 1997) (Jones, J.)
("while fraud is not an element of §§ 11 or 12(a)(2) claims, plaintiffs nonetheless have alleged
fraudulent intent . . . . [I]t seems only fair that if plaintiffs have pled fraud, they must comply
with the requirements of Rule 9(b).").[23]

Adams purports to "disclaim" any "intentional misconduct" by the Directors with
respect to his Securities Act claims (*see* Compl. ¶¶ 324, 341) -- but he cannot have it both ways,
after devoting nearly 100 pages of his Complaint to fraud charges, and then relying on the same

---

[23] *Accord, Zirkin v. Quanta Capital Holdings Ltd.*, 2009 WL 185940, 1 at *2 (S.D.N.Y. Jan. 23,
2009) ("Rule 9(b) applies to fraud claims brought under Section 11 or Section 12(a)(2)") (citing
*Rombach*, 355 F.3d at 169)); *In re Merrill Lynch Sec. Litig.*, 2009 U.S. Dist. LEXIS 61129, at
*11 (Mem. Order) (S.D.N.Y. Mar. 3, 2009) (Sections 11 and 12 claims subject to heightened
pleading standards because, "on any fair reading, much of the 'wording and imputations of the
complaint are classically associated with fraud'") (citing *Rombach*, at 172)); *In re JP Morgan
Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (dismissing Section 11 claims).

alleged misconduct for both the §§ 10(b) and 11 and 12 claims. "The insertion of a simple disclaimer of fraud," as Adams attempts here, "'is insufficient to divorce the claims from their fraudulent underpinnings'" because "'plaintiffs cannot so facilely put the fraud genie back in the bottle.'" *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (citations omitted).[24] The same pleading deficiencies that require dismissal of Adams' § 10(b) claims thus require dismissal of his §§ 11 and 12 claims.

### B.    Adams Does Not Plead Facts Showing Section 11 Standing or Stating Such a Claim

Only Adams asserts claims under §§ 11 and 12.[25] He purports to represent "all current or former employees who received and exercised options to acquire Satyam ADSs through the Associate RSU (ADS) Option Plan pursuant to or traceable to a false and misleading Form S-8 filed with the SEC on January 12, 2007 and the Associate Ordinary Option Plan-RSU filed with the SEC on Form 20-F on April 30, 2007." Compl. ¶¶ 325, 342. But he does not plead facts sufficient to state a claim or establish his standing.

First, Adams has not pled facts showing that he acquired ADSs, or when he acquired them. (His certification in support of his request to be lead plaintiff does not refer to ADSs -- only to purchases of "stock." Ex. 7. ) Adams also does not plead when he was granted options, what the options were for (ADSs and/or stock) or when he exercised the options -- and if

---

[24] *See also Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (affirming dismissal of § 12 claim: "a conclusory disclaimer cannot alter the substance of plaintiffs' allegations, which sound in fraud"); *Marsh & Mclennan*, 501 F. Supp. 2d at 492 ("Allowing plaintiffs to allege fraud over nine-hundred paragraphs and then withdraw those claims for eight paragraphs in order to state a Section 11 claim eviscerates Rule 9(b)'s mandate to 'safeguard a defendant's reputation from improvident charges of wrongdoing.'") (citation omitted).

[25] The claims are asserted against three of the five Audit Committee Defendants (Srinivasan, Palepu and Rao), and two other Directors (Mynampati and Dham) (Compl. Counts IX and X). Audit Committee Defendants Raju and Prasad are not alleged to have violated §§ 11 or 12.

he did, whether or if (or when) he sold the stock at a loss. Putting those issues aside, plaintiff

never pleads what the strike price was -- and the Court thus cannot infer, much less plausibly

conclude, that he suffered any loss at all. *See Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568

(7th Cir. 2009) (affirming dismissal of Section 11 claim because plaintiffs failed to plead a sale

of securities at a loss: "[t]he complaint's silence is deafening. Even notice pleading requires

pleading the elements of a tort, and one element of the section 11 tort is sale at a loss"). In

addition, the bulk of his purchases, even of stock, do not occur until late 2007 and mid-2008.

Ex. 7. A claim of reliance on a January 2007 Form S-8 thus is not plausible.[26] Finally, Adams

does not plead facts showing that he purchased ordinary shares under the Associate Ordinary

Option Plan-RSU filed in April 30, 2007. Thus, he does not have standing to assert claims on

behalf of those who purchased ordinary shares.[27] These omissions require dismissal of all his

Securities Act claims, as well as his § 10(b) claim.

### C. The Section 12 Claim Fails Because No Sale or Solicitation is Pled

Adams' § 12 claims must be dismissed for failure to plead facts showing that any

director "offered "or "sold" a security.[28] Liability under § 12(a)(2) is limited to those who (1)

"pass[] title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[]

---

[26] *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207-08 (S.D.N.Y. 2003) (a claim under Section 11 "inheres in the faulty registration statement that put the shares in question on the market; it is on the basis of the flaw in the underlying registration that section 11 dispenses with the requirements of scienter and, for those who purchase soon enough after the registration statement, reliance.").

[27] *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that 'a class representative must be part of the class and possess the same interest and suffer the same injury' as the class members'") (citations omitted); *see also Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17 (2d Cir. 1981).

[28] As with the § 11 claim, plaintiff does not allege that Audit Committee members Raju and Prasad violated § 12.

the purchase . . . motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl,* 486 U.S. 622, 642, 647 (1988); *accord In re Morgan Stanley Tech. Fund Sec. Litig.,* 2009 WL 256005, at * 6 (S.D.N.Y Feb. 2, 2009) (Jones, J.). The buyer-direct seller relationship is "not unlike traditional contractual privity." *Pinter*, 486 U.S. at 642.

One who is not a direct seller may be a solicitor seller "within the meaning of *Pinter* if they solicited the sales in question for a financial gain." *Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir. 1989); *Morgan Stanley,* 2009 WL 256005, at *6. The focus is on "the defendant's relationship with the plaintiff-purchaser." *Pinter*, 486 U.S. at 651. A "solicitor seller" is a person "such as brokers who might act on the seller's behalf for a profit." *Wilson*, 872 F.2d at 1126.

Adams' claims about a "sale" rest on nothing more than such conclusory and lumping boilerplate, devoid of facts, as: "Defendants . . . transferred title of Satyam securities to him" and "solicited the purchase of Satyam ordinary shares and/or ADSs." Compl. ¶ 347. Not only does Adams fail to plead facts showing when the options were granted to him, or that he exercised them and suffered a loss, he also fails to allege when, by whom or how (if at all) he even was solicited. *Id.* There is no allegation of any "direct relationship" between plaintiffs and any director. *Id.*[29] Nor is any fact pled, showing that any Directors were motivated "by a desire to serve [their] own financial interests." *Morgan Stanley,* 2009 WL 256005, at *6 (citing *Pinter*, 486 U.S. at 647). Putting aside that it was Satyam, the company, that granted employee stock

---

[29] *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) (dismissing § 12(a)(2) claim "because plaintiff has not sufficiently alleged that she purchased the mutual fund shares directly from any of the Defendants.").

options (not the Directors) -- indeed, the mere grant of stock options to employees entails no

solicitation at all -- this does not suffice as to any Director.

## III.    PLAINTIFFS' CONTROL PERSON CLAIMS SHOULD BE DISMISSED

Plaintiffs assert claims against the Audit Committee Defendants as "control

persons" under § 20(a) of the Exchange Act, 15 U.S.C § 78t(a) (Compl. Count V).  Plaintiffs also

assert a claim under Section 15 of the Securities Act, 15 U.S.C. § 77o, against Directors

Srinivasan, Palepu, Rao, Mynampati and Dham (though not against Prasad and Raju) (Compl.

Count XI).  "To establish a prima facie case of control person liability, a plaintiff must show (1)

a primary violation by the controlled person, (2) control of the primary violator by the defendant,

and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled

person's fraud."[30]  As that analysis applies under both the Securities Act and the Exchange Act,

all control person allegations fail.[31]

### A.    No Control Is Alleged

Control entails "'the power to direct or cause the direction of the management and

policies of a person, whether through the ownership of voting securities, by contract, or

---

[30] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) *(quoting SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).  "Culpable participation" must be alleged in addition to control.  *See, e.g., In re Authentidate Holding Corp. Sec. Litig.,* 2009 WL 755360, at * 2 (S.D.N.Y. Mar. 23, 2009), *app. docketed,* No. 09-1751 (2d Cir. Apr. 24, 2009); *Steinberg v. Ericsson LM Tel. Co.,* 2008 WL 5170640, at * 3 (S.D.N.Y. Dec. 10, 2008), *aff'd sub nom. Fuhrer v. Ericsson LM Tel. Co.*, 2009 WL 3228895 (2d Cir. Oct. 8, 2009); *Steed Fin. LDC v. Laser Advisers, Inc.,* 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (Jones, J.).

[31] *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) ("there is no basis for assuming that interpretation of control person liability pursuant to section 20(a) of the 1934 Act . . . should differ from that pursuant to section 15 of the 1933 Act"); *Marsh & Mclennan*, 501 F. Supp. 2d at 493.  Indeed, the facts pled affirmatively show that the Directors "had no knowledge of or reasonable ground to believe in the existence of the" fraud.  15 U.S.C.A. § 77o.  *See* Compl. Ex. E ¶ 4 (B.R. Raju letter), expressly so stating, and the pleading of elaborate concealment of the fraud.

otherwise.'" *Harrison v. Rubenstein,* 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007 (citation omitted). Such power "must be actual," de facto power: officer, director or even Audit Committee status alone does not suffice. *Id.*; *In re Livent, Inc. Sec. Litig.,* 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999).

But here, the control person claims are based on nothing more than defendants' status as Directors. *See* Compl. ¶¶ 297, 354. (Indeed, Messrs. Prasad and Raju apparently are alleged to have been in control years before they joined the Board.) But the facts pled show total control of the company (and its books, records and employees), and the conduct at issue, by only the Officers.

**B.    There Are No Fact Allegations Showing Culpable Participation**

Heightened pleading requirements apply to all control person claims where the claims sound in fraud, including Securities Act claims.[32] Plaintiffs here have not pled "particularized facts as to any Director's 'culpable participation' in the fraud." *Livent*, 78 F. Supp. 2d at 222. Absent "detailed allegations regarding the state of mind of the 'control person'" the claims must be dismissed. *Harrison*, 2007 WL 582955 at *19. As all of plaintiffs' scienter allegations against the Directors fail as a matter of law, their boilerplate recitals of "culpable participation" necessarily fail.[33]

_____

[32] *See, e.g., In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *23 (S.D.N.Y. Oct. 25, 2006) ("the PSLRA requires that, like scienter, the 'culpable participation' element of control person liability must be pled with particularity") (citations omitted); *Harrison*, 2007 WL 582955, at *19 (citing *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597 at *6 (S.D.N.Y. 2002)) (same); *Marsh & Mclennan*, 501 F. Supp. 2d at 494 (dismissing Section 15 control person claims because no "strong inference of scienter").

[33] The Directors further rely upon and expressly adopt and incorporate by reference the discussion and citation to authorities regarding culpable participation and control in Point I of the Memorandum of Defendant PricewaterhouseCoopers International Limited In Support Of Its Motion to Dismiss the Consolidated Class Action Complaint.

**CONCLUSION**

For all these reasons, the Directors respectfully request that this Court dismiss this

Complaint in its entirety.[34]

Dated: New York, New York
November 16, 2009

/s/ Irwin H. Warren
Irwin H. Warren (IW-1168)
Miranda S. Schiller (MS-9456)
Margarita Platkov (MP-1615)
Evert J. Christensen (Admitted in DE only)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Defendants Mangalam
Srinivasan and Ram Mynampati

---

[34] The Directors also have moved to dismiss the claims of the MPERS Sub-Class and the IOS Sub-Class, for lack of subject matter jurisdiction. The Directors rely upon and expressly adopt and incorporate by reference the arguments on those issues that appear in Point I (pp. 14-24) of the Memorandum of Law of Defendant Satyam Computer Services Limited to Dismiss in Part the Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief May Be Granted and to Dismiss the Complaint in its Entirety Under the Doctrine of *Forum Non Conveniens*.