UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**SATYAM COMPUTER SERVICES LTD. SECURITIES LITIGATION**<br>**This document applies to:   All Cases** | 09 MD 2027 (BSJ)<br>(Consolidated Action)<br>ECF Case |

**JOINT SUPPLEMENTAL MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO
DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
<u>AND THE ABERDEEN FIRST AMENDED COMPLAINT</u>**

| **JONES DAY**<br>222 E. 41st Street<br>New York, NY 10017<br>(212) 326-3939<br>*Attorneys for Defendant Satyam Computer Services Ltd.* | **WEIL, GOTSHAL & MANGES LLP**<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8000<br>*Attorneys for Defendants Mangalam Srinivasan, Ram Mynampati, M. Rammohan Rao, T.R. Prasad and V.S. Raju* | **MAYER BROWN LLP**<br>71 S. Wacker Drive<br>Chicago, Il 60606<br>(312) 782-0600<br>*Attorneys for Defendant PricewaterhouseCoopers International Limited* |
|---|---|---|
| **WILMERHALE LLP**<br>399 Park Avenue<br>New York, NY 10022<br>(212) 230-8800<br>*Attorneys for Defendants PricewaterhouseCoopers Private Limited, Price Waterhouse and Lovelock & Lewes* | **DEBEVOISE & PLIMPTON LLP**<br>919 Third Avenue<br>New York, NY 10022<br>(212) 909-6000<br>*Attorneys for Defendant Krishna G. Palepu* | **COOLEY LLP**<br>101 California Street, 5th Floor<br>San Francisco, CA 94111<br>(415) 693-2088<br>*Attorneys for Defendant Vinod K. Dham* |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 4

I. SECTION 10(b) DOES NOT APPLY TO TRANSACTIONS IN SATYAM ORDINARY SHARES ........ 4

II. ADAMS DOES NOT PLEAD FACTS STATING A SECURITIES ACT OR EXCHANGE ACT CLAIM, IN LIGHT OF *MORRISON* ........ 8

A. Adams Does Not Plead Facts Showing That He Ever Acquired Any ADSs Pursuant to the ADS *RSU* Option Plan (or Ordinary Shares Under Any Option Plan), Much Less in Any Transaction Giving Rise to a Securities Act or Exchange Act Claim After *Morrison* ........ 11

B. Adams Does Not Plead That He Acquired Ordinary Shares Pursuant to Any Option Plan or ADSs Pursuant to the *ASOP* ADS Option Plan on a U.S. Exchange or in Any Other “Domestic Transaction” Under Morrison, and Therefore Does Not State an Exchange Act Claim ........ 13

CONCLUSION ........ 15

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ................................................................................................... 8

*Cornwell v. Credit Suisse Group,*
    08 CV 3758, 2010 WL 3069597 (S.D.N.Y. July 27, 2010), *reconsideration denied,*
    2010 WL 3291800 (Aug. 11, 2010) ........................................................................ 6, 14

*In re Banco Santander Securities-Optimal Litig.,*
    09 MD 02073, 09 CV 20215, 2010 WL 3036990 (S.D. Fla. July 30, 2010) ............... 7

*In re Initial Pub. Offering Sec. Litig.,*
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ......................................................................... 11

*In re Nat'l Austl. Bank Sec. Litig.,*
    03 CV 6537, 2006, WL 3844465 (S.D.N.Y. Oct. 25, 2006), *aff'd sub nom. Morrison
    v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *aff'd on other grounds*, 130 S.
    Ct. 2869 (2010) ........................................................................................................ 8, 11

*Morrison v. National Australia Bank Ltd.,*
    130 S. Ct. 2869 (2010) ......................................................................................... passim

*Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens CVC Tur Limitada,*
    09 CV 23248, 2010 WL 3119908 (S.D. Fla. Aug. 6, 2010) ........................................ 7

*Sgalambo v. McKenzie,*
    09 CV 10087, 2010 WL 3119349 (S.D.N.Y. Aug. 6, 2010) ..................................... 7, 9

*Stackhouse v. Toyota Motor Co.,*
    10 CV 0922, 2010 U.S. Dist. LEXIS 79837 (C.D. Cal. July 16, 2010) ............. 7, 14, 15

Pursuant to the Court's Stipulated Order of August 14, 2010, Defendants Satyam Computer Services Ltd., PricewaterhouseCoopers International Limited, PriceWaterhouse, PricewaterhouseCoopers Private Limited, Lovelock & Lewes, Managalam Srinivasan, Ram Mynampati, M. Rammohan Rao, T. R. Prasad, V. S. Raju, Krishna G. Palepu and Vinod K. Dham (collectively, "Defendants") submit this supplemental memorandum in further support of their motions to dismiss the Consolidated Class Action Complaint filed by the Lead Plaintiffs in the putative class action (the "Putative Class Action") and the First Amended Complaint filed by Aberdeen Claims Administration, Inc. (the "Aberdeen Action") in light of the Supreme Court's recent decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).

## PRELIMINARY STATEMENT[1]

*Morrison* affirmed the dismissal of securities claims, pursuant to Rule 12(b)(6), on the ground that the federal securities laws do not apply extraterritorially to transactions taking place in foreign countries and on foreign exchanges. This supplemental brief addresses the impact of *Morrison* on claims brought by two types of plaintiffs in these cases: (i) United States purchasers who acquired Satyam ordinary shares through transactions effected on Indian securities exchanges (the "Indian Exchange Purchasers"); and (ii) a former Satyam employee who allegedly acquired ordinary shares and ADSs directly from Satyam in India through the exercise of options granted under one or more of Satyam's five employee option plans (the "Employee Options Plaintiff"). The Indian Exchange Purchasers consist of: Lead Plaintiff Public Employees' Retirement System of Mississippi ("MPERS"), purportedly suing on behalf of the

---

[1] Reference is made in this supplemental memorandum to Satyam's opening brief in the Putative Class Action (the "Satyam Class Action Br.") and Satyam's opening brief in the Aberdeen Action (the "Satyam Aberdeen Action Br.").

"MPERS Sub-Class" in the Putative Class Action;[2] and seven (of the twenty) investors (the "Aberdeen Indian Stock Investors") who purportedly assigned their claims to trusts administered by plaintiff Aberdeen Claims Administrator, Inc. ("Aberdeen") in the Aberdeen Action.[3]  The Employee Options Plaintiff is Brian F. Adams, a former Satyam employee, who asserts claims based on exercises of options, but does not plead facts showing that he acquired any securities (ordinary shares or ADSs) in any transaction on any securities exchange, much less a domestic one, or in any other "domestic transaction," so as to avoid dismissal pursuant to Rule 12(b)(6) under *Morrison*.  Adams nevertheless purports to represent two sub-groups in the Putative Class Action: the "IOS Sub-Class";[4] and employees who exercised options and thereby acquired ADSs directly from Satyam (the "ADS Employees Sub-Class").[5]

In their opening briefs, each of the Defendants argued that claims by the Indian Exchange Purchasers and the Employee Options Plaintiff (to the extent asserted against such Defendants) should be dismissed on a variety of grounds, including, *inter alia*, failure to plead facts sufficient to state all elements of the securities laws claims asserted, and because transactions in the securities of an Indian company on Indian securities exchanges lacked the requisite nexus to the

---

[2] The "MPERS Sub-Class" is an alleged sub-class of persons who are United States purchasers of Satyam ordinary shares on Indian securities exchanges.  (*See* Satyam Class Action Br. at 1; Consol. Class Action Compl. ¶ 17.)

[3] The "Aberdeen Indian Stock Investors" are: (i) First Trust/Aberdeen Emerging Opportunity Fund; (ii) Aberdeen Emerging Markets Fund Institutional Fund; (iii) Aberdeen Asia Pacific excluding Japan Fund; (iv) Aberdeen Emerging Markets Equity Fund; (v) Aberdeen Asia Pacific including Japan Fund; (vi) Halliburton Company Employee Benefit Master Trust; and (vii) Thrivent Partner Worldwide Allocation Fund.  (*See* Satyam Aberdeen Action Br. at 8; Aberdeen Am. Compl. ¶¶ 25, 27(n)-(t), 29.)

[4] The "IOS Sub-Class" is an alleged sub-class of individuals who exercised employee stock options and thereby acquired ordinary shares directly from Satyam.  Such shares also are listed and traded only on Indian securities exchanges.  (*See* Satyam Class Action Br. at 1; Consol. Class Action Compl. ¶ 249-53.)  As set forth herein, however, Adams does not plead facts showing that he ever exercised any options to acquire ordinary shares.

[5] The "ADS Employees Sub-Class" is an alleged sub-class of individuals who exercised employee stock options and thereby acquired American Depository Shares ("ADSs") directly from Satyam.  (Consol. Class Action Compl. ¶ 249-53.)  Satyam ADSs also are listed and traded on the New York Stock Exchange.  As set forth herein, however, Adams does not plead facts showing that his transactions whereby he acquired ADSs from Satyam were "domestic transactions" within the meaning of *Morrison*.

United States to warrant the application of the United States securities laws, even if the investors were United States residents. On June 24, 2010, the Supreme Court issued its long-awaited decision in *Morrison*, where the Court established the "transactional test," and held unequivocally that "Section 10(b) reaches the use of a manipulative or deceptive device only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Morrison*, 130 S. Ct. at 2888.

As demonstrated below, the Exchange Act claims asserted by the Indian Exchange Purchasers are squarely precluded by *Morrison*, because they involve the purchase of securities through transactions on Indian securities exchanges; and as such, they must be dismissed with prejudice. *See* Point I, *infra*. Similarly, Adams' Exchange Act claims and claims under the Securities Act (to which *Morrison*'s holding equally applies, *see* 130 S. Ct. at 2885) must be dismissed because Adams does not plead facts showing either: (i) any transactions by which he ever acquired any securities as to which he asserts Securities Act claims; or (ii) that the securities transactions whereby he exercised options and acquired ADSs or ordinary shares from Satyam were effected on a United States securities exchange or in any other domestic transaction under *Morrison*.[6] *See* Point II, *infra*.

---

[6] Defendants do not seek dismissal, pursuant to *Morrison*, of the Section 10(b) claims asserted in the Putative Class Action by Lead Plaintiffs Mineworkers Pension Fund, SKAGEN A/S and Sampension KP Livsforsikring A/S, who purchased Satyam ADSs on the New York Stock Exchange. Similarly, Defendants do not seek dismissal, pursuant to *Morrison*, of the Section 10(b) claims of the thirteen investors in the Aberdeen Action who purchased Satyam ADSs on the New York Stock Exchange. However, Defendants preserve all other grounds on which they have sought dismissal of these claims.

# ARGUMENT

## I. SECTION 10(b) DOES NOT APPLY TO TRANSACTIONS IN SATYAM ORDINARY SHARES

In *Morrison*, the Supreme Court held that Section 10(b) applies only to "transactions in securities listed on domestic exchanges and domestic transactions in other securities." *Morrison*, 130 S. Ct. at 2884. With the adoption of this "transactional" test, the Supreme Court overturned decades of Second Circuit authority requiring an analysis of the facts under the "conduct" and "effects" (or "admixture") tests to determine whether a court had subject matter jurisdiction over transnational securities fraud claims.[7] In rejecting these tests in favor of the "transactional" test, the Court employed the presumption against extraterritorial application of statutes; according to the Court, "when a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 130 S. Ct. at 2878. As a result, the Court found that because "there is no affirmative indication in the Exchange Act that § 10(b) applies extraterritorially, . . . we conclude that it does not." *Id.* at 2883.

The Court also reasoned that the transactional test addressed concerns that the Exchange Act may interfere or be inconsistent with the applicable laws of the countries where the relevant foreign exchanges are located. *Id.* at 2885-86. Citing to complaints of interference raised in the *amicus* briefs filed by numerous foreign nations and international organizations, the Court stated:

> [W]e reject the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad . . . . The probability of incompatibility with the applicable laws of other countries is so obvious that if Congress intended such foreign application it would have addressed the subject of conflicts with foreign laws and procedures. . . . Like the United States, foreign

---

[7] The Supreme Court further held that the applicable scope of Section 10(b) goes to the merits of the claim and is not an issue of subject matter jurisdiction. *Morrison*, 130 S. Ct. at 2877.

- 4 -

>countries regulate their domestic securities exchanges and
>securities transactions occurring within their territorial jurisdiction.
>And the regulation of other countries often differs from ours as to
>what constitutes fraud, what disclosures must be made, what
>damages are recoverable, what discovery is available in litigation,
>what individual actions may be joined in a single suit, what
>attorney's fees are recoverable, and many other matters.

*Id.* at 2885 (internal quotation marks and citations omitted).

Applying the transactional test, the Court explained that "Section 10(b) reaches the use of a manipulative or deceptive device only in connection with the purchase or sale of a security *listed on an American stock exchange*, and the purchase or sale of any other security *in the United States*." *Morrison*, 130 S. Ct. at 2888 (emphasis added).[8] This rule applies regardless of the place of residence of the investors.[9] The sole determinant is where the purchase or sale occurred.

Recent decisions, including decisions from this District, confirm that, under *Morrison*'s transactional test, the place of residence of the investor is simply not relevant. Thus, even if plaintiffs could allege that there were certain domestic aspects of their acquisition of Satyam

---

[8] Although *Morrison* involved Section 10(b) claims brought by foreign investors who purchased stock in defendant National Australia Bank on a foreign exchange, the bright-line rule laid out in *Morrison*, by its terms, precludes all Section 10(b) claims that are based on transactions on foreign exchanges, regardless of the residency of the plaintiff-investors. Numerous courts already have so held. *See* pp. 5-7, *infra*.

[9] The fact that American investors cannot bring claims under Section 10(b) for securities purchased on foreign exchanges, or otherwise in a non-domestic transaction, is confirmed by Justice Stevens' discussion of hypothetical examples in his concurrence:

>Imagine, for example, an American investor who buys shares in a company
>listed only on an overseas exchange. That company has a major American
>subsidiary with executives based in New York City; and it was in New York
>City that the executives masterminded and implemented a massive deception
>which artificially inflated the stock price – and which will, upon its disclosure,
>cause the price to plummet. Or, imagine that those same executives go
>knocking on doors in Manhattan and convince an unsophisticated retiree, on the
>basis of material misrepresentations, to invest her life savings in the company's
>doomed securities. Both of these investors would, under the Court's new test,
>be barred from seeking relief under § 10(b).

*Morrison*, 130 S. Ct. at 2895 (Stevens, J., concurring in judgment).

securities, it still would not bring their claims within the reach of the federal securities laws. In *Cornwell v. Credit Suisse Group*, 08 CV 3758, 2010 WL 3069597 (S.D.N.Y. July 27, 2010), *reconsideration denied*, 2010 WL 3291800 (Aug. 11, 2010) (Marrero, J.), the Court specifically addressed the impact of *Morrison* on Section 10(b) claims brought by American residents who purchased shares in defendant Credit Suisse on a foreign exchange. *Id.* at *1. The plaintiffs in *Cornwell* argued that *Morrison* did not preclude United States residents from bringing Section 10(b) claims when they bought securities on foreign exchanges if there were certain domestic "aspects" to the transaction. *Id.* In rejecting this argument, the Court stated:

> In essence, Plaintiffs would exclude from operation of the new test transactions in securities traded only on exchanges abroad if the purchase or sale involves American parties, or if some aspects or contacts of such foreign transactions occur in the United States. But insofar as this proposition superimposes an exclusion based strictly on the American connection of the purchaser or seller, it simply amounts to a restoration of the core element of the effect test. Similarly, to carve out of the new rule a purchase or sale of securities on a foreign exchange because some acts that ultimately result in the execution of the transaction abroad take place in the United States amounts to nothing more than the reinstatement of the conduct test.

*Id.* at *3. Recognizing that *Morrison* "roundly (and derisively) buried" (*id.* at *2) both the conduct and effects tests in favor of "a new bright-line transactional rule" (*id.* at *3), the Court stated:

> As this Court reads *Morrison*, the conduct and effect analysis as applied to § 10(b) extraterritoriality disputes is now dead letter. Plaintiffs' cosmetic touch-ups will not give the corpse a new life. The standard the *Morrison* Court promulgated to govern the application of § 10(b) in transnational securities purchases and sales does not leave open any of the back doors, loopholes or wiggle room to accommodate the distinctions Plaintiffs urge to overcome the decisive force of that ruling on their § 10(b) claims here.

*Id.* at *2.

Similarly, in *Sgalambo v. McKenzie*, 09 CV 10087, 2010 WL 3119349 (S.D.N.Y. Aug. 6, 2010) (Scheindlin, J.), the Court held, with respect to Section 10(b) claims, that *Morrison* "forecloses *any* potential class members who purchased . . . stock on a foreign exchange . . . from recovering in this action." *Id.* at *17 (emphasis added). Courts from other districts have also rejected arguments by plaintiffs who seek to save their Section 10(b) claims based upon foreign transactions by highlighting the American residency of the relevant investors or other American aspects of those transactions. *See Stackhouse v. Toyota Motor Co.*, 10 CV 0922, 2010 U.S. Dist. LEXIS 79837, at *1,*4-5 (C.D. Cal. July 16, 2010) (refusing to appoint as lead plaintiff a United States institutional investor who purchased the defendant's shares on a foreign exchange because a "fair reading of Morrison excludes" such United States investors' section 10(b) claims); *In re Banco Santander Securities-Optimal Litig.*, 09 MD 02073, 09 CV 20215, 2010 WL 3036990, at *6 (S.D. Fla. July 30, 2010) (rejecting argument of foreign investors who purchased shares abroad that *Morrison* does not preclude their Section 10(b) claims due to their intent to ultimately acquire United States securities); *see also Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens CVC Tur Limitada*, 09 CV 23248, 2010 WL 3119908, at *3 (S.D. Fla. Aug. 6, 2010) (holding that the alleged United States closing of a foreign transaction is insufficient to state a Section 10(b) claim under the transactional test of *Morrison*).

The claims of the Indian Exchange Purchasers all run afoul of *Morrison*. No facts are pled showing a transaction on a United States exchange or any other domestic transaction. MPERS and its putative Sub-Class are investors resident in the United States who purchased Satyam's ordinary shares in India on Indian securities exchanges. (Consol. Class Action Compl. ¶ 17; Satyam Class Action Br. at 1, 12.) Similarly, the seven Aberdeen Indian Stock Investors in the Aberdeen Action are described as investors who purchased Satyam ordinary shares on

Indian securities exchanges.   (Aberdeen Am. Compl. ¶ 27(n)-(t).)   None of these purchases of Satyam ordinary shares was a "transaction[] in securities listed on domestic exchanges [or a] domestic transaction[] in other securities."   *Morrison*, 130 S. Ct. at 2884.   Consequently, in light of *Morrison*, the Section 10(b) claims (and the related "control person" claims under Section 20(a)) of these groups of investors must be dismissed.   Their transactions in Satyam ordinary shares, which trade only on public securities exchanges in India, fail the transactional test, and therefore, these plaintiffs cannot state a claim under Section 10(b).

## II.   ADAMS DOES NOT PLEAD FACTS STATING A SECURITIES ACT OR EXCHANGE ACT CLAIM, IN LIGHT OF *MORRISON*

The claims asserted by Adams for alleged violations of the Securities Act (as to two of Satyam's five employee option plans) and the Exchange Act (as to all five of those option plans) are not viable in light of *Morrison*, wholly apart from the grounds already raised in the Defendants' motions to dismiss.[10]

Adams pleads only that he "is a former employee of Satyam who received and exercised options at artificially inflated prices during the Class Period pursuant to *one* of the Company's stock option plans."   (Consol. Class Action Compl. ¶ 21) (emphasis added).   But Adams nowhere pleads *which* plan; and he does not plead facts showing that he acquired any ordinary shares or ADSs in any transaction on any United States securities exchange, or in any domestic transaction.[11]   Nevertheless, Adams purports to represent employees who allegedly acquired

---

[10]   Adams' Securities Act claims   are alleged against five of the former director defendants (Srinivasan, Rao, Mynampati, Palepu and Dham); the outside auditor defendants (Price Waterhouse, PricewaterhouseCoopers Pvt. Ltd, and Lovelock & Lewes); and the officer defendants.   (Consol. Class Action Compl. Counts IX, X, and XI).

[11]   *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (complaint cannot survive dismissal where it "pleads facts that are 'merely consistent with' a defendant's liability" but "stops short of the line between possibility and plausibility of 'entitlement to relief.'") (citation omitted); *see also In re Nat'l Austl. Bank Sec. Litig.*, 03 Civ. 6537, 2006 WL 3844465, at *8-9 (S.D.N.Y. Oct. 25, 2006) (Jones, J.) (dismissing claims for failure to plead facts showing damages [no appeal taken] and failure to plead facts establishing subject matter jurisdiction), *aff'd sub nom.*

ordinary shares (the alleged IOS Sub-Class) and ADSs (the alleged ADS Employees Sub-Class) directly from Satyam through the exercise of options.  For the sake of clarity, the following summarizes those option plans, and Adams' claims and pleadings as to each:

(i) <u>Associate Stock Option Plan</u> (Consol. Class Action Compl. ¶¶ 250(a), 252).  This is an ordinary share plan adopted by Satyam in 1998.  Adams asserts only an Exchange Act claim – not a Securities Act claim – under this plan.  However, he does not plead any fact showing that he ever received or exercised any such options.  Adams could not, as he pleads that he only exercised options under *one* plan.  (*Id.* ¶ 21).  And according to Adams' Exercise Notices, that plan was the *ASOP* ADS Option Plan (defined below).  *See* Declaration of Mahesh Venkatakrishnan ("Venkatakrishnan Decl."), Exs. 1 to 10 (the "Exercise Notices").[12]

(ii) <u>Associate Stock Option Plan B</u> (Consol. Class Action Compl. ¶¶ 250(b), 252).  This, too, is an ordinary share plan adopted by Satyam in 1999.  Adams asserts only an Exchange Act claim – not a Securities Act claim – under this plan.  However, he does not plead that he ever exercised any such options and acquired ordinary shares, because he cannot in light of his Exercise Notices.  *See id.* ¶ 21; Venkatakrishnan Decl. Exs. 1 to 10.

(iii) <u>Associate Stock Option Plan ADS (the "*ASOP* ADS Option Plan")</u> (Consol. Class Action Compl. ¶¶ 250(c), 252).  This is an ADS plan adopted by Satyam in 1999.

---

(continued…)

*Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *aff'd on other grounds*, 130 S. Ct. 2869 (2010) (failure to plead facts stating a claim).

[12] The Exercise Notices make clear that Adams only exercised options granted pursuant to the *ASOP* ADS Option Plan (defined herein) and thereby acquired Satyam ADSs.  Specifically, each Exercise Notice (i) is entitled "*Associate Stock Option Plan* (ADS)" and (ii) contains an acknowledgment by Adams that he "has received, read and understood the *ASOP* (ADS) and the Option Agreement . . . and agrees to abide by and be bound by their terms and conditions."  *See* Venkatakrishnan Decl. Exs. 1 to 10 (Adams' Exercise Notices, at p.1 and ¶ 2 (emphasis added)).  This Court may properly consider Adams' own Exercise Notices on a motion to dismiss, without converting the motion to one for summary judgment.  *See, e.g.*, *Sgalambo*, 2010 WL 3119349, at *5 n.68 (a court may consider "any documents possessed by or known to the plaintiff and upon which it relied in bringing the suit") (citing *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

Adams asserts only an Exchange Act claim – not a Securities Act claim – under this plan. According to his Exercise Notices, this is the *only* option plan under which Adams exercised options to acquire Satyam ADSs.   *See* Consol. Class Action Compl. ¶ 21; Venkatakrishnan Decl. Exs. 1 to 10.   But Adams' ADS acquisitions certainly were not in transactions on the NYSE; and he does not (and as set forth below in Point II.B, cannot) plead facts showing that these acquisitions were "domestic transactions," under *Morrison*, in light of the nature and structure of each option exercise and the resulting ADS issuance and acquisition, as set forth in the Exercise Notices.

(iv)    Associate Stock Option Plan–RSUs (ADS) (the "ADS *RSU* Option Plan") (Consol. Class Action Compl. ¶¶ 250(d), 252, 325, 342).   This is an ADS plan adopted by Satyam in 2006.[13]   Adams purports to assert Securities Act, as well as Exchange Act, claims under this plan.   However, Adams does not plead any facts showing that he ever exercised any RSU options, or thereby acquired any ADSs (much less where, how or at what strike price), for he never did exercise any options granted under this plan, according to his Exercise Notices. *See id.* ¶ 21; Venkatakrishnan Decl. Exs. 1 to 10.

(v)    Associate Stock Option Plan–RSUs (the "*RSU* Ordinary Option Plan, and together with the ADS *RSU* Option Plan, the "*RSU* Option Plans") (Consol. Class Action Compl. ¶¶ 250(e), 252, 325, 342).   This is an ordinary share plan adopted by Satyam in 2006.[14] Adams asserts Securities Act, as well as Exchange Act, claims under this plan.   However, Adams does not plead any facts showing that he was even granted, much less that he exercised, any RSU options issued under this plan (or that he thereby acquired any ordinary shares): he

---

[13]    The ADS *RSU* Option Plan was filed as an exhibit to Satyam's registration statement, dated January 12, 2007, and filed with the SEC on Form S-8.   (Consol. Class Action Compl. ¶ 250(d).)

[14]    The Ordinary *RSU* Option Plan was filed as an exhibit to Satyam's Annual Report dated April 30, 2007 and filed with the SEC on Form 20-F.   (Consol. Class Action Compl. ¶ 250(e).)

cannot so plead, in light of his Exercise Notices.   See id. ¶ 21; Venkatakrishnan Decl. Exs. 1 to 10.

As set forth below, Adams' claims all fail.

**A.      Adams Does Not Plead Facts Showing That He Ever Acquired Any ADSs Pursuant to the ADS *RSU* Option Plan (or Ordinary Shares Under Any Option Plan), Much Less in Any Transaction Giving Rise to a Securities Act or Exchange Act Claim After *Morrison***

Adams purports to assert (i) Securities Act claims as to alleged acquisitions of both ordinary shares and ADSs, supposedly pursuant to exercises of options under the *RSU* Option Plans; and (ii) Exchange Act claims as to ordinary shares and ADSs acquired by supposed exercise of options under all five option plans, including the *ASOP* ADS Option Plan.

First, with respect to his Securities Act claims – which relate *only* to the *RSU* Option Plans – Adams conspicuously does not plead a single fact showing:   (i) that (or when) he received any RSU options, much less under which *RSU* Option Plan; and (ii) where or how (or at what strike prices) he supposedly exercised any RSU options,[15] so as to state a Securities Act claim as to such plans.[16]   Such failure to plead facts is fatal, for *Morrison*'s reach is not limited to claims under the Exchange Act.   After holding that it is only "transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies,"

---

[15]   Adams must plead at what option strike price he acquired any securities, so as to provide some predicate for a plausible, and not just speculative, claim of damages.   As this Court stated in dismissing plaintiff Morrison's claims, "[p]ecuniary loss is an essential element of a Rule 10b-5 claim for money damages."   *Nat'l Austl. Bank*, 2006 WL 3844465, at *9.   A plaintiff likewise cannot state a Securities Act claim if he has no damages.   *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003).   Here, for example, Adams did not exercise any RSU options; and Adams exercised the options granted under the *ASOP* ADS Option Plan (to acquire ADSs) at strike prices ranging from $3.78 to $13.45 per ADS, according to Adams' own Exercise Notices (Venkatakrishnan Decl. Exs. 1 to 10).   Adams subsequently sold many of the ADSs at prices ranging from $21.96 to $26.67 per ADS.   See Declaration of Brian F. Adams, dated January 14, 2010, at ¶ 6 (Docket No. 126).

[16]   Adams' artful pleading does *not* say he acquired any ADSs by exercising options granted under the ADS *RSU* Option Plan.   Rather, he pleads only that he supposedly relied on information in Satyam's Form S-8 filed *for* the ADS *RSU* Option Plan (presumably when exercising options that he received only under the prior *ASOP* (*i.e.*, non-RSU) ADS Option Plan (Consol. Class Action Compl. ¶¶ 325, 348) – as to which he does *not* assert a Securities Act claim.   (*Id.* ¶ 250(c).)

the Supreme Court stated that "[t]he *same focus on domestic transactions* is evident in the Securities Act of 1933." *Morrison*, 130 S. Ct. at 2284-85 (emphasis added).   Here, Adams does not meet his threshold burden to plead facts showing that he ever acquired Satyam securities by exercising options granted pursuant to the *RSU* Option Plans at all, much less in a transaction on a U.S. exchange or in some other "domestic transaction."   Such failures require dismissal. Moreover, dismissal of the Securities Act claims should be with prejudice, for Adams could not plead the requisite facts to state a claim, as demonstrated by (i) Adams' pleading that he only "exercised options . . . pursuant to *one* of the" employee stock option plans, and (ii) the Exercise Notices that Adams delivered to Satyam (in India), which make clear that the "one" plan pursuant to which he exercised options was the *ASOP* ADS Option Plan (as to which Adams asserts only Exchange Act, not Securities Act, claims).

Second, with respect to his Exchange Act claims, Adams asserts claims under all five of Satyam's five employee option plans.   But again, he never pleads any facts showing: (i) pursuant to which *one* (Consol. Class Action Compl. ¶ 21) of those five plans *he* – as opposed to other Satyam employees – actually received and exercised options (as noted, he only exercised options, and thereby acquired ADSs, pursuant to the *ASOP* ADS Option Plan); and (ii) whether such exercises and acquisitions of securities occurred either on a United States securities exchange or in some other "domestic transaction" in the United States.   Thus, he does not meet his burden to plead facts plausibly showing that he engaged in any transaction covered by the Exchange Act, after *Morrison*.   Dismissal of Adams' Exchange Act claims therefore is required.[17]

---

[17]   In light of the Exercise Notices, dismissal should be with prejudice, and any effort by Adams to seek leave to amend to plead such facts should be denied, as futile.   Moreover, leave to amend should be denied because of Adams' steadfast refusal to provide the requisite facts, despite repeated requests by the Director Defendants' counsel that he do so.   Specifically, in an effort to avoid possibly unnecessary motion practice, counsel

> B. **Adams Does Not Plead That He Acquired Ordinary Shares Pursuant to Any Option Plan or ADSs Pursuant to the *ASOP* ADS Option Plan on a U.S. Exchange or in Any Other "Domestic Transaction" Under *Morrison*, and Therefore Does Not State an Exchange Act Claim**

As already noted, Adams does not plead that he ever exercised any option for or thereby acquired Satyam ordinary shares, such that he could state a claim (or represent the putative IOS Sub-Class of persons who acquired ordinary shares pursuant to the employee option plans). But even if he had, the exercise of an option to acquire ordinary shares, which would have to be issued by Satyam *in India* (and which are traded only on the Indian exchanges), could not be a "domestic transaction" under *Morrison* and its progeny.

The same conclusion applies to Adams' Exchange Act claims based on his acquisition of ADSs directly from Satyam through his exercise of options granted pursuant to the *ASOP* ADS Option Plan. As set forth above, such claims must be dismissed because he has not met his burden of pleading facts establishing numerous elements thereof, including that any transactions by which he exercised options and thereby acquired ADSs were on a United States securities exchange or were otherwise "domestic transactions" under *Morrison*.

The Supreme Court in *Morrison* expressly "reject[ed] the notion that the Exchange Act reaches conduct in this country affecting exchanges *or transactions abroad*." 130 S. Ct. at 2885 (emphasis added). Accordingly, *Morrison* and the district court decisions that already have addressed federal securities law claims by applying its holding, make clear that where, as here, a U.S. resident engages in a transaction effected abroad to acquire securities, such a

---

(continued…)

for the Director Defendants wrote to Adams' counsel on July 12, and again on August 6, 2010, pointing out the shortcomings in his pleadings, in light of *Morrison*, and requesting that Adams provide facts sufficient to enable the Director Defendants to determine what options Adams received and exercised, pursuant to which plan, and whether Adams thereby engaged (and suffered a loss) in any on-exchange or other "domestic transactions" in any Satyam securities. By letter dated July 16, 2010, counsel for Adams refused to provide any such information. *See* Declaration of Evert J. Christensen, filed contemporaneously herewith, Exs. 1-3.

transaction is *not* a "domestic transaction" under the federal securities laws.  *Morrison*, 130 S. Ct. at 2884; *see also Cornwell*, 2010 WL 3069597, at *3 ("§ 10(b) would not apply to transactions involving . . . a purchase or sale [by a U.S. resident] of securities, foreign or domestic, which occurs outside the United States").  As another court stated, the "better" view of such transactions by a U.S. resident is that "the actual 'transaction' takes place between two brokers/traders in the foreign county and the ultimate purchasers and sellers are irrelevant." *Toyota*, 2010 U.S. Dist. LEXIS 79837, at *2, n.1.

Here, Adams does not (and cannot) plead facts showing that he acquired ADSs on a United States securities exchange or in any other "domestic transaction" under *Morrison*.  The Exercise Notices that Adams delivered to Satyam in order to exercise the options granted to him under the *ASOP* ADS Option Plan (and thereby to acquire ADSs) establish that the securities transactions occurred *in India*:

- Adams delivered the Exercise Notices to the Satyam "Stock Option team," at Satyam's offices in India.  *See* Venkatakrishnan Decl. Exs. 1 to 10 (Adams' Exercise Notices), at p. 1, showing delivery address in Secunderabad, India;

- Adams paid the exercise prices to acquire the ADSs via a wire transfer to Satyam in India.  *See id.* at ¶¶ 1, 10;

- The ADSs had to be "issued" by Satyam (as evidenced by the appropriate entry on the books of Satyam) before they became effective, and before the employee exercising the options had any rights with respect to those ADSs.  *See id.* at ¶ 3.  No facts are pled indicating that such book entry and "issuance" by Satyam occurred anywhere but Satyam's offices in India;[18]

- Any dispute concerning the options that Adams sought to exercise by the Exercise Notices would be submitted to Satyam's compensation committee for a binding decision.  *See id.* at ¶ 6.  No facts are pled to show that Satyam's compensation committee was located anywhere but in India; and

---

[18] The ADSs, once issued by Satyam in India, were to be "advised for holding in electronic form (non-physical form)" in Adams' E*Trade account.  *See id.* (Adams' Exercise Notices, at ¶ 1 (p. 2)).

- The Exercise Notices provide that they are to be "governed by and construed in accordance with the laws of India." *See id.* at ¶ 7.

The Satyam *ASOP* ADS Option Plan 2000 Equity Incentive ASOP (ADS), itself likewise provides (at Section 9): "An Option (ADS) shall be deemed exercised *when SATYAM receives*: (i) written or electronic notice of exercise (in accordance with the Option (ADS) Agreement) from the person entitled to exercise the Option (ADS), and (ii) full payment for the ADSs"; but that no rights in favor of the person exercising the option exist "until the ADSs are issued." *See* Christensen Decl. Ex. 4 (emphasis added).

Under such circumstances, it is indeed as if Adams "figuratively traveled" to India to "complete the transaction." *Toyota*, 2010 U.S. Dist. LEXIS 79837, at*2. Adams therefore cannot state a securities law claim with respect to his acquisition of ADSs pursuant to the exercise of options granted under the *ASOP* ADS Option Plan – the only plan pursuant to which he exercised options – because he did not acquire them on a United States securities exchange or otherwise in a "domestic transaction," under *Morrison*. And such dismissal should be with prejudice, for Adams could not plead a "domestic transaction," given the nature and structure of the issuance of securities upon options exercise under that plan.

## CONCLUSION

For all the foregoing reasons, and those set forth in Defendants' motions to dismiss, Defendants' respectfully request that this Court dismiss the Consolidated Class Action Complaint and the Aberdeen Amended Complaint in their entirety.

Dated: New York, New York
       August 25, 2010

By:

/s/ Mahesh Venkatakrishnan
Geoffrey S. Stewart
David L. Carden
Jayant W. Tambe
Laura W. Sawyer
Mahesh Venkatakrishnan
JONES DAY
222 E. 41st Street
New York, NY 10017
Tel: (212) 326-3939

*Counsel for Defendant Satyam Computer Services Ltd.*

/s/ Irwin H. Warren
Irwin H. Warren
Miranda S. Schiller
Margarita Platkov
Evert J. Christensen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

*Counsel for Defendants Mangalam Srinivasan, Ram Mynampati, M. Rammohan Rao, T.R. Prasad and V.S. Raju*

/s/ Fraser L. Hunter
Fraser L. Hunter
Charu A. Chandrasekhar
WILMERHALE LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800

*Counsel for Defendants PricewaterhouseCoopers Private Limited, Price Waterhouse and Lovelock & Lewes*

/s/ Stanley J. Parzen
Stanley J. Parzen
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Il 60606
Tel: (312) 782-0600

*Counsel for Defendant Pricewaterhouse Coopers International Limited*

/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson
919 Third Avenue
DEBEVOISE & PLIMPTON LLP
New York, NY 10022
Tel: (212) 909-6000

*Counsel for Defendant Krishna G. Palepu*

/s Gordon C. Atkinson
Gordon C. Atkinson
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Tel: (415) 693-2088

*Counsel for Defendant Vinod K. Dham*

## CERTIFICATE OF SERVICE

I, Mahesh Venkatakrishnan, hereby certify that on August 25, 2010, a copy of the foregoing document was filed electronically and served by mail to anyone unable to accept electronic filing.   Notice of this filing will be sent by email to all parties by cooperation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF system.

Dated: August 25, 2010
New York, New York

By: /s/ Mahesh Venkatakrishnan
Mahesh Venkatakrishnan

**Attorney for Defendant Satyam Computer Services Ltd.**