UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**SATYAM COMPUTER SERVICES LTD.**<br>**SECURITIES LITIGATION**<br>**This document applies to: All Cases** | 09 MD 2027 (BSJ)<br>(Consolidated Action)<br>ECF Case |

**JOINT SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO
DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
<u>AND THE ABERDEEN FIRST AMENDED COMPLAINT</u>**

| **JONES DAY**<br>222 E. 41st Street<br>New York, NY 10017<br>(212) 326-3939<br>*Attorneys for Defendant*<br>*Satyam Computer*<br>*Services Ltd.* | **WEIL, GOTSHAL & MANGES**<br>**LLP**<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8000<br>*Attorneys for Defendants Mangalam*<br>*Srinivasan, Ram Mynampati, M.*<br>*Rammohan Rao, T.R. Prasad*<br>*and V.S. Raju* | **MAYER BROWN LLP**<br>71 S. Wacker Drive<br>Chicago, Il 60606<br>(312) 782-0600<br>*Attorneys for Defendant*<br>*PricewaterhouseCoopers*<br>*International Limited* |
|---|---|---|
| **WILMERHALE LLP**<br>399 Park Avenue<br>New York, NY 10022<br>(212) 230-8800<br>*Attorneys for Defendants*<br>*Pricewaterhousecoopers*<br>*Private Limited, Price*<br>*Waterhouse and*<br>*Lovelock & Lewes* | **DEBEVOISE & PLIMPTON LLP**<br>919 Third Avenue<br>New York, NY 10022<br>(212) 909-6000<br>*Attorneys for Defendant*<br>*Krishna G. Palepu* | **COOLEY LLP**<br>101 California Street, 5th<br>Floor<br>San Francisco, CA 94111<br>(415) 693-2088<br>*Attorneys for Defendant*<br>*Vinod K. Dham* |

**TABLE OF CONTENTS**

                                                                               **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I.      EXCHANGE ACT CLAIMS BROUGHT BY U.S.-RESIDENT PLAINTIFFS WHO PURCHASED SATYAM ORDINARY SHARES ON INDIAN STOCK EXCHANGES SHOULD BE DISMISSED UNDER *MORRISON* ....................................2

          A.      Transactions in Satyam Ordinary Shares on Indian Stock Exchanges Are Not "Domestic Transactions" ......................................................................................2

          B.      Lead Plaintiffs' "Listing" Theory is a Meritless Attempt to End Run Around *Morrison* and Should Be Rejected ..............................................................3

II.     ADAMS DOES NOT PLEAD FACTS STATING EITHER A SECURITIES ACT OR AN EXCHANGE ACT CLAIM UNDER *MORRISON* ......................................6

          A.      Adams' Silence Confirms That He Does Not and Could Not Plead Facts Showing That He Purchased Either ADSs or Ordinary Shares Under Four of the Five Employee Option Plans ...........................................................................6

          B.      Lead Plaintiffs Do Not Dispute That Adams Purchased His ADSs Directly From Satyam in India and Not On An Exchange ......................................................7

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**CASES:** **PAGE(S):**

*Cornwell v. Credit Suisse Group*,
   08 CV 3758, 2010 WL 3069597 (S.D.N.Y. July 27, 2010), *reconsid. denied*, (Aug.
   11, 2010), *certification for appeal denied*, 2010 WL 3825695, (Aug. 20, 2010)..............3, 4, 7

*Farnham v. Windle,*
   918 F.2d 47 (7th Cir. 1990) ..................................................................................................6

*In re Alstom SA Sec. Litig.*,
   03 CV 6595, 2010 WL 3718863 (S.D.N.Y. Sept. 14, 2010) ........................................3, 5, 7, 9

*In re Société Générale Sec. Litig.*,
   08 CV 2495, slip op. (S.D.N.Y. Sept. 29, 2010) ...............................................................3, 5, 9

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008).................................................................................6

*Morrison v. Nat'l Australia Bank*,
   130 S. Ct. 2869 (2010)............................................................................................... passim

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
   08 CV 1968, slip op. (S.D.N.Y. Oct. 4, 2010).....................................................................3, 8

*Schoenbaum v. Firstbrook*,
   405 F.2d 200 (2d Cir. 1968)..............................................................................................9, 10

*Sgalambo v. McKenzie*,
   09 CV 10087, 2010 WL 3119349 (S.D.N.Y. Aug. 6, 2010) ................................................3, 9

*Stackhouse v. Toyota Motor Co.*,
   10 CV 0922, 2010 WL 3377409 (C.D. Cal. July 16, 2010) .....................................................3

**STATUTES**

Securities Act of 1933....................................................................................................................7

**OTHER AUTHORITIES**

17 C.F.R. 240.3b-1........................................................................................................................5

BLACK'S LAW DICTIONARY 1477 (9th ed. 2009) ...........................................................................5

Defendants respectfully submit this joint supplemental memorandum of law in reply to the opposition papers filed by Lead Plaintiffs and Aberdeen on September 27, 2010.[1]

## PRELIMINARY STATEMENT

Lead Plaintiffs and Aberdeen argue that *Morrison v. Nat'l Australia Bank*, 130 S. Ct. 2869 (2010), is limited to its facts (foreign purchasers, in so-called "foreign cubed" transactions) and thus, that the Exchange Act claims by U.S. residents who purchased Satyam's ordinary shares only on Indian stock exchanges are not precluded by *Morrison*. But this is not what *Morrison* says; and every court that has considered this argument -- which essentially seeks to reinstate the "conduct" and "effects" tests -- has rejected it, because *Morrison*'s bright-line "transactional test" focuses exclusively on the foreign location of the transaction, not the domestic identity of the purchaser. When a U.S. resident reaches into India to make a purchase, that simply is not a transaction subject to U.S. securities laws. Moreover, the fact that Satyam ordinary shares were "listed" on the NYSE for technical purposes in connection with Satyam's ADS program does not alter the conclusion that the purchase of ordinary shares in India is beyond the scope of the U.S. securities laws. This argument also has been rejected by all courts that have considered it, and it should likewise be rejected here. *See* Point I.

Plaintiff Adams (the only plaintiff who asserts Securities Act claims) fares no better. He does not dispute that he never purchased any ordinary shares at all. And of the five employee option plans with respect to which he purports to assert claims, he undisputedly only participated in one. The documents he executed under that plan, which govern all of his option exercises,

---

[1] *See* Lead Plaintiffs' Memorandum of Law In Opposition To The Joint Supplemental Memorandum of Law In Further Support Of Defendants' Motion To Dismiss ("Opp. Br."); Aberdeen Claims Administration Inc.'s Opposition to Defendants' Joint Supplemental Memorandum Regarding *Morrison v. National Australia Bank* ("Aberdeen Opp."). Capitalized terms not defined herein have the meanings ascribed to them in the Joint Supplemental Memorandum Of Law In Further Support Of Defendants' Motions To Dismiss The Consolidated Class Action Complaint And The Aberdeen First Amended Complaint ("Def. Br.").

explicitly establish that his purchases of ADSs were required to, and did, occur in transactions directly with Satyam in India.  His transactions thus did not occur on a U.S. exchange or in any other "domestic transaction," as *Morrison* requires.  Lead Plaintiffs and Adams do not even mention the documents, much less dispute these dispositive facts.  *See* Point II.

In short, whether the purchase of Satyam securities by U.S. residents occurred on Indian stock exchanges in Mumbai, or directly from Satyam in Hyderabad, the transactions occurred outside the United States, and are beyond the scope of the U.S. securities laws. [2]

## ARGUMENT

I. **EXCHANGE ACT CLAIMS BROUGHT BY U.S.-RESIDENT PLAINTIFFS WHO PURCHASED SATYAM ORDINARY SHARES ON INDIAN STOCK EXCHANGES SHOULD BE DISMISSED UNDER *MORRISON***

   A. **Transactions in Satyam Ordinary Shares on Indian Stock Exchanges Are Not "Domestic Transactions"**

There is no dispute that all the purchases of Satyam ordinary shares by the Indian Exchange Purchasers occurred only on Indian stock exchanges, not on a U.S. exchange.  Indeed, Lead Plaintiffs do not dispute that these investors had to obtain permission, in India, to engage in such Indian transactions.[3]  Lead Plaintiffs nevertheless argue that the purchases of ordinary shares on Indian exchanges should be deemed "domestic transactions," solely because the Indian Exchange Purchasers are U.S. residents.  Opp. Br. at 5-13.  In doing so, they ignore both the language and rationale of *Morrison* and the many post-*Morrison* cases that have "uniformly"

---

[2] Aberdeen adopts Lead Plaintiffs' arguments with respect to the Exchange Act claims of the Aberdeen Indian Stock Investors, who likewise purchased Satyam ordinary shares on Indian stock exchanges.  Aberdeen Opp. at 1-2.  These claims should also be dismissed, pursuant to *Morrison*, for the reasons set forth in Points I.A and B, herein.

[3] *See* Satyam Class Action Br. at 12.  As explained therein, in order to transact in Satyam's ordinary shares on the Indian exchanges, the Indian Exchange Purchasers went through the rigorous process of registering themselves with the Securities and Exchange Board of India ("SEBI") as Foreign Institutional Investors.  Under SEBI regulations, they also were required to appoint a "domestic custodian" in India to monitor their Indian investments, and a rupee-denominated Indian bank account where their Indian securities would be registered.  This not only underscores the Indian nature of their transactions, but also shows that the Indian Exchange Purchasers subjected themselves to Indian securities laws and regulations when they decided to invest in Satyam ordinary shares.

2

rejected this very argument, *Cornwell v. Credit Suisse Group*, 08 CV 3758, 2010 WL 3825695, at *1 (Aug. 20, 2010) (Marrero, J.), and instead rely on pre-*Morrison* cases, some dating back nearly a century. .

*Morrison*'s "transactional test" -- an unequivocal repudiation of the conduct and effects tests that Lead Plaintiffs implicitly seek to revive -- does not distinguish between U.S.-resident and foreign investors. *See Morrison*, 130 S. Ct. at 2884. Indeed, every court that has considered the argument advanced by Lead Plaintiffs has concluded that "[n]othing in *Morrison* or the text of the Exchange Act allows for an identity-based inquiry in determining the location of a transaction." *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 08 CV 1968, slip op. at 21-23 (S.D.N.Y. Oct. 4, 2010) (Koeltl, J.).[4] To the contrary, "[f]or purposes of determining whether a securities transaction is a 'domestic' transaction under *Morrison*, the country in which an investor happened to be located at the time that it placed its purchase order is immaterial." *Id.* at 23 (citation omitted). Accordingly, Lead Plaintiffs' claims with respect to such purchases are beyond the scope of § 10(b) and must be dismissed.

> **B.  Lead Plaintiffs' "Listing" Theory is a Meritless Attempt to End Run Around *Morrison* and Should Be Rejected**

Recognizing that purchases on Indian exchanges are not transactions "in the United States," Lead Plaintiffs attempt to satisfy the alternate test in *Morrison*, by arguing: (i) Satyam registered the ordinary shares underlying its NYSE-traded ADSs with the SEC; therefore (ii) all of Satyam's ordinary shares (even those that do not underlie the ADSs) are "listed" on the NYSE; and therefore (iii) the Indian Exchange Purchasers, by acquiring ordinary shares in

---

[4] *See also In re Alstom SA Sec. Litig.*, 03 CV 6595, 2010 WL 3718863, at *2 (S.D.N.Y. Sept. 14, 2010) (Marrero, J.); *Cornwell v. Credit Suisse Group*, 08 CV 3758, 2010 WL 3069597, at *1 (S.D.N.Y. July 27, 2010), *reconsid. denied* (Aug. 11, 2010), *certification for appeal denied*, 2010 WL 3825695, (Aug. 20, 2010) (Marrero, J.); *Sgalambo v. McKenzie*, 09 CV 10087, 2010 WL 3119349, at *17 (S.D.N.Y. Aug. 6, 2010) (Scheindlin, J.); *In re Société Générale Sec. Litig.*, 08 CV 2495, slip op. at 9 (S.D.N.Y. Sept. 29, 2010) (Berman, J.) (citing cases); *Stackhouse v. Toyota Motor Co.*, 10 CV 0922, 2010 WL 3377409, at *1 (C.D. Cal. July 16, 2010).

transactions on exchanges in India, purchased securities "listed on an American stock exchange." Opp. Br. at 14-16 (citing *Morrison*, 130 S. Ct. at 2884, 2888). This argument is a futile attempt to find some non-existent "back doors, loopholes or wiggle room" in *Morrison*. *Cornwell*, 2010 WL 3069597, at *2. It should be rejected.

Under this theory, the U.S. securities laws would apply to transactions anywhere in the world in a foreign company's shares, by any investor, so long as some of the company's shares were listed -- even if not traded -- on a U.S. exchange; and the U.S. securities laws thus would have even broader extraterritorial reach after *Morrison* than they did under the conduct and effects tests.[5] This argument should be rejected, as it would improperly expand the extraterritorial reach of the U.S. securities laws that *Morrison* sought to limit because of concern that such application could interfere with the local regulation of foreign exchanges. *See* 130 S. Ct. at 2885-86. Indeed, the Supreme Court implicitly rejected plaintiffs' argument in establishing the "transactional test" in *Morrison*. The Court held that plaintiffs who purchased ordinary shares of defendant National Australia Bank ("NAB") on the Australian Stock Exchange could not state a claim under the U.S. securities laws, even though NAB had registered both its ordinary shares and related ADSs for the purpose of listing the ADSs on the NYSE -- and NAB had submitted as part of the record, the cover page of its Form 20-F filed with the SEC, showing the registration of its ordinary shares.[6]

---

[5] *See also* Br. of *Amicus Curiae* NYSE Euronext In Support of Defendants' Mot. to Dismiss All Claims Based on Purchases of UBS Shares Outside the U.S., *In re UBS AG Sec. Litig.*, 07 CV 11225 (S.D.N.Y. filed Sept. 10, 2010) (docket entry no. 158), attached as Ex. A to the Supplemental Declaration of Mahesh Venkatakrishnan ("Venkatakrishnan Supp. Decl.") (arguing that the plaintiffs' "listing" theory not only was inconsistent with the plain meaning of *Morrison*, but also would have a "devastating effect" on the securities markets because foreign issuers that cross-list their securities on a United States exchange would thereby subject themselves to worldwide purchaser class actions in American courts).

[6] *See* Venkatakrishnan Supp. Decl. Ex. B (Supp. Joint App'x at SA-58, *Morrison*, No. 08-1191, 130 S. Ct. 2869). If the Supreme Court intended the "transactional test" to extend the protection of the U.S. securities laws to purchases

*Alstom* expressly rejected this very argument. *See* 2010 WL 3718863, at *2-3. Like Satyam, Alstom's ADSs traded on the NYSE; and its ordinary shares -- which traded only on a foreign exchange -- were listed on the NYSE for technical purposes in connection with that ADS program. *Id.* at *2. As here, the plaintiffs argued that because Alstom's ordinary shares were listed on the NYSE -- though not purchased there -- the listing "fulfill[ed] the letter of *Morrison*'s rule that federal securities fraud laws apply to transaction in securities 'listed on a domestic exchange.'" *Id.* Judge Marrero rejected this argument as being a "selective and overly-technical reading of *Morrison* that ignores the larger point of the decision." *Id.* "Though isolated clauses of the [*Morrison*] opinion may be read as requiring only that a security be 'listed' on a domestic exchange for its purchase anywhere in the world to be cognizable under the federal securities laws, those excerpts read in total context compel the opposite result." *Id.*

> [*Morrison*] makes clear that the Court was concerned with the territorial location where the purchase or sale was executed and the securities exchange laws that governed the transaction. *The "statute's solicitude" is directed at "transactions" and the statute seeks to regulate "transactions."* That the transactions themselves must occur on a domestic exchange to trigger application of § 10(b) reflects the most natural and elementary reading of *Morrison*. . . . Conversely, as this Court observed in *Cornwell*, *§ 10(b)'s focus would not encompass purchases and sales of covered securities that occur outside of the United States*.

*Id.* at *3 (citations omitted and emphasis added); *see also Société Générale*, slip op. at 9 (collecting and citing cases). *Alstom*'s holding is consistent with both: (i) the SEC's definition of "listed," which means "*admitted to full trading privileges*," 17 C.F.R. 240.3b-1 (emphasis added); and (ii) common meaning, set out in BLACK'S LAW DICTIONARY 1477 (9th ed. 2009) (defining "listed security" as "[a] security accepted for trading on a securities exchange."). As

---

(continued…)
on foreign exchanges where the class of securities also was listed on a U.S. exchange for technical purposes, it would have reversed the dismissal and reinstated the *Morrison* plaintiffs' claims. It did not.

the ordinary shares here, like the ordinary shares underlying Alstom's (and NAB's) ADSs, were merely listed in the U.S. for technical purposes but did not involve trading privileges, such securities were not "listed" at all within the meaning of *Morrison*.

## II. ADAMS DOES NOT PLEAD FACTS STATING EITHER A SECURITIES ACT OR AN EXCHANGE ACT CLAIM UNDER *MORRISON*

### A. Adams' Silence Confirms That He Does Not and Could Not Plead Facts Showing That He Purchased Either ADSs or Ordinary Shares Under Four of the Five Employee Option Plans

Lead Plaintiffs' argument that claims "of U.S.-resident employees who exercised options to acquire Satyam ordinary shares survive *Morrison* for the same reasons as . . . U.S.-resident investors who purchased and acquired Satyam's ordinary shares" (Opp. Br. at 21) fails under *Morrison* for the reasons set forth above with respect to the investor class. But equally important, Lead Plaintiffs do not address Adams' failure to plead any facts showing that he ever exercised options and purchased any ordinary shares at all, or ADSs under four of the five employee option plans with respect to which he purports to assert securities law claims. They likewise simply ignore the Exercise Notices signed by Adams, establishing that he exercised options only for ADSs, and only under one plan.[7] Indeed, it is undisputed that Adams never acquired any securities (even ADSs) under the RSU Option Plans -- the only plans under which he purports to assert any Securities Act claims. Such failures do not merely implicate standing, as Lead Plaintiffs suggest (at 20 n.23): they also mean that Adams fails to plead facts stating (i) any Securities Act claim at all; or (ii) any Exchange Act claim, whether based on any purchase of

---

[7] Adams' failure to address either this pleading deficiency or his Exercise Notices in response to defendants' motion to dismiss constitutes a waiver of any contrary argument, and a concession that he fails to state a claim as to the four plans under which he did not exercise options. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 275 n.16 (S.D.N.Y. 2008) ("Lead Plaintiffs may concede their failure to allege that [Defendants] acted with the requisite scienter, inasmuch as their opposition brief does not address these defendants' state of mind with respect to [the fraud]."); *Farnham v. Windle,* 918 F.2d 47, 51 (7th Cir. 1990) (affirming dismissal of complaint: where plaintiff "did not take advantage of his opportunity to brief these . . . theories to the district court in his memorandum in opposition to [defendant's] motion to dismiss," any argument that he could plead such facts is "waived.").

6

Satyam ordinary shares, or the purchase of ADSs under those four plans, and whether on a U.S. exchange or in some other "domestic transaction," as required by *Morrison*. *See* 130 S. Ct. at 2877, 2888 ("to ask what conduct § 10(b) reaches . . . is a merits question"; and "[t]he same focus on domestic transactions is evident in the Securities Act of 1933."). Thus, Adams' claims with respect to those plans must be dismissed. Def. Br. at 8-12.

### B. Lead Plaintiffs Do Not Dispute That Adams Purchased His ADSs Directly From Satyam in India and Not On An Exchange

Adams does not dispute that he acquired only ADSs; and only by exercising options granted only under one employee stock option plan -- the *ASOP* ADS Option Plan (the "Plan"). He also does not -- and could not -- dispute that he acquired his ADSs directly from Satyam in India by exercising such contractual rights in accordance with the Plan's requirements. *See* Def. Br. at 9-10. Because all of his purchases of ADSs under that Plan occurred solely outside the United States, his claims thereunder, asserted only under the Exchange Act, should be dismissed. *See Morrison*, 130 S. Ct. at 2884 (the Exchange Act's focus is "upon purchases and sales of securities *in the United States*") (emphasis added); *Alstom*, 2010 WL 3718863, at *3 ("§ 10(b)'s focus would not encompass purchases and sales of covered securities that occur outside of the United States"); *Cornwell*, 2010 WL 3069597, at *3 ("§ 10(b) would not apply to transactions involving . . . a purchase or sale [by a U.S. resident] of securities, foreign or domestic, which occurs outside the United States.").

Here, the operative contract consists of Adams' grant agreements, which incorporate the terms of the Plan, and the Exercise Notices.[8] That Lead Plaintiffs conspicuously ignore Adams' own agreement with Satyam is no surprise, for the terms thereof determine how, where and when

---

[8] *See* Venkatakrishnan Decl. Exs. 1 to 10 (Adams' Exercise Notices); Christensen Decl. Ex. 4 (the ASOP ADS Option Plan); Venkatakrishnan Supp. Decl. Exs. C-G (Notices of Stock Option Grant).

7

an ADS purchase by exercising options may occur -- and they establish that Adams' transactions pursuant to his option exercises indeed did take place in India.

Specifically, Lead Plaintiffs plead (Compl. ¶ 22) that Satyam is headquartered in India. Adams' Exercise Notices are addressed to Satyam's offices in India and state that the options "shall be deemed exercised *when SATYAM receives*: (i) written or electronic notice of exercise (in accordance with the Option (ADS) Agreement) from the person entitled to exercise the Option (ADS), *and* (ii) full payment for the ADSs"; and that no rights in favor of the person exercising the option (*i.e.*, Adams) exist "until the ADSs are issued." Def. Br. at 14-15 (emphasis added). The location of the purchase -- at Satyam's Indian headquarters -- is further confirmed by Adams' grant agreements which likewise provide: "This Option shall be deemed to be exercised *upon receipt by Satyam* of such Notice *accompanied by* the exercise price and payment [to Satyam] of any applicable withholding tax." (Emphasis added).[9] But even apart from this requirement, as a matter of law, "the mere act of electronically transmitting a purchase order from within the United States" is not sufficient to take the purchase "outside [the] rule" established in *Morrison*. *Swiss Reinsurance*, slip op. at 20.

Unable to dispute that Adams exercised his options and purchased ADSs only in transactions with Satyam in India, Lead Plaintiffs argue that they satisfy the first prong of *Morrison* -- the purchase of a "listed" (and traded) security -- not because Adams bought ADSs *on* a U.S. exchange, but because they supposedly need only allege that other securities of the *class* of the security (ADSs) purchased in India are "listed" (and traded) on the NYSE. In other words, Lead Plaintiffs argue, the off-exchange, direct-from-the-issuer place and manner in which *Adams* purchased *his* ADSs are irrelevant. *See, e.g.*, Opp. Br. at 22 and n.24. Not so. As

---

[9] *See* Venkatakrishnan Supp. Decl. Exs. C-G, at Section 2 (Notices of Stock Option Grant).

8

discussed above (at pp. 3-6), *Morrison* nowhere holds that the listing of a *class* of securities on a U.S. exchange brings every foreign transaction involving any security in that class within the scope of the U.S. securities laws -- even if, as here, it is a class traded on the U.S. exchange. To the contrary, as explained in *Alstom* and other cases discussed above, the locus of the transaction -- and not the listing of that class of security, or the location of the purchaser, in the U.S. -- is dispositive. *Alstom*, 2010 WL 3718863, at *3.

Lead Plaintiffs' argument was rejected in *Sgalambo*, where a Canadian issuer's common stock was listed *and traded* on both U.S. and Canadian exchanges. 2010 WL 3119349, at *17. The court dismissed the claims of plaintiffs who purchased the U.S.-listed securities, but on the Canadian exchange: because the purchases occurred in Canada, *Morrison* "forecloses any potential class members who purchased Canadian Superior common stock on a foreign exchange -- in this case, the Toronto Stock Exchange ("TSX") -- from recovering in this action." *Id.*[10] As *Sgalambo* and the other cases discussed herein demonstrate, the purchase of a security outside the U.S. is beyond the reach of the U.S. securities laws, even if the foreign issuer's securities of that class also are listed and traded on a U.S. exchange.

The purchase abroad of a security directly from a foreign company pursuant to an employee stock option agreement that requires that the transaction occur in India is no different: rather, it is the epitome of a foreign, non-domestic transaction. Here, all of Adams' purchases of ADSs occurred in off-exchange transactions directly with Satyam in India. *Morrison*'s discussion of *Schoenbaum v. Firstbrook* makes clear that § 10(b) does not reach such transactions, even if (as here) the company has a *class* of securities listed and traded on a U.S.

---

[10] In the most recent case involving ADSs that were traded in the U.S., although not on an exchange, the court held that *Morrison* compelled the dismissal of all of plaintiffs' § 10(b) claims, relating both to the purchase of stock on a foreign exchange and the acquisition of ADSs. *See Société Générale*, slip op. at 10-11.

9

exchange. Specifically, in repudiating the Second Circuit's creation of the "effects" test in *Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir. 1968), the Supreme Court effectively endorsed the district court's application in that case of the "presumption against extraterritoriality" in dismissing § 10(b) claims, which "involved the sale in Canada of the treasury shares of a Canadian corporation whose publicly traded shares (but not, of course, its treasury shares) were listed on both the American Stock Exchange and the Toronto Stock Exchange." *Morrison*, 130 S. Ct. at 2878 (citing *Schoenbaum v. Firstbrook*, 268 F. Supp. 385, 391-92 (S.D.N.Y. 1967)). "Invoking the presumption against extraterritoriality," the district court in *Schoenbaum* "held that § 10(b) was inapplicable (though it incorrectly viewed the defect as jurisdictional)." *Id. Morrison* thus establishes that § 10(b) does not reach the purchase of treasury shares directly from a foreign issuer, notwithstanding the fact that the foreign issuer has a class of those shares listed and traded on a U.S. exchange, precisely because, as here, that purchase occurred outside the U.S. Adams' contractual exercise of employee options to purchase ADSs of a class listed on the NYSE, but directly from Satyam in India, is directly analogous to buying treasury shares of a class listed in the U.S., but directly from the Canadian issuer. Like the treasury shares in *Schoenbaum* that were held by the company until they were issued to the purchaser, Satyam ADSs could not be issued to Adams until after he exercised his options (which required receipt of both notice and payment in India) and Satyam, in India, accepted such exercises. Adams therefore cannot state a securities law claim under *Morrison* with respect to the Plan.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' joint supplemental moving brief and their motions to dismiss, the Consolidated Class Action Complaint and the Aberdeen Amended Complaint should be dismissed in their entirety.

Dated: New York, New York
October 7, 2010

/s/ Mahesh Venkatakrishnan
Geoffrey S. Stewart
David L. Carden
Jayant W. Tambe
Laura W. Sawyer
Mahesh Venkatakrishnan
JONES DAY
222 E. 41st Street
New York, New York 10017
Tel: (212) 326-3939

*Counsel for Defendant Satyam Computer Services Ltd.*

/s/ Irwin H. Warren
Irwin H. Warren
Miranda S. Schiller
Margarita Platkov
Evert J. Christensen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000

*Counsel for Defendants Mangalam Srinivasan, Ram Mynampati, M. Rammohan Rao, T.R. Prasad and V.S. Raju*

/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000

*Counsel for Defendant Krishna G. Palepu*

/s/ Gordon C. Atkinson
Gordon C. Atkinson
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California 94111
Tel: (415) 693-2088

*Counsel for Defendant Vinod K. Dham*

/s/ Fraser L. Hunter
Fraser L. Hunter
Charu A. Chandrasekhar
WILMERHALE LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

*Counsel for Defendants Pricewaterhousecoopers Private Limited, Price Waterhouse and Lovelock & Lewes*

/s/ Stanley J. Parzen
Stanley J. Parzen
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600

*Counsel for Defendant Pricewaterhouse Coopers International Limited*

## CERTIFICATE OF SERVICE

I, Mahesh Venkatakrishnan, hereby certify that on October 7, 2010, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by email to all parties by cooperation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated: October 7, 2010
New York, New York

                                  By: /s/ Mahesh Venkatakrishnan
                                       Mahesh Venkatakrishnan

                                **Attorney for Defendant Satyam Computer Services Ltd.**