UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> SATYAM COMPUTER SERVICES LTD. SECURITIES LITIGATION <br><br> This Document Applies to:  All Cases | 09 MD 2027 (BSJ) <br> (Consolidated Action) <br><br> ECF Case |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THE CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO RULE 15(a)

BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP
Max W. Berger
Steven B. Singer
Bruce Bernstein
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer
Keith M. Fleischman
Mary S. Thomas
Deborah A. Elman
Ananda Chaudhuri
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501

BARROWAY TOPAZ KESSLER
   MELTZER & CHECK, LLP
David Kessler
Sean M. Handler
Sharan Nirmul
Christopher L. Nelson
Neena Verma
Joshua E. D'Ancona
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

LABATON SUCHAROW LLP
Joel H. Bernstein
Louis Gottlieb
Michael H. Rogers
Felicia Y. Mann
140 Broadway
New York, NY 10005
Tel:  (212) 907-0700
Fax:  (212) 818-0477

*Co-Lead Counsel for Lead Plaintiffs*

Lead Plaintiffs, Public Employees' Retirement System of Mississippi, Mineworkers' Pension Scheme, SKAGEN AS, and Sampension KP Livsforsikring A/S, respectfully submit this motion for leave to amend the Consolidated Class Action Complaint ("CAC") pursuant to Federal Rule of Civil Procedure 15(a).

## I.     PRELIMINARY STATEMENT

Lead Plaintiffs seek leave to file the Proposed First Amended Consolidated Class Action Complaint ("FAC") principally to add a new defendant in this matter, PricewaterhouseCoopers LLP ("PwC USA"), based on new information that Lead Plaintiffs obtained only within the last two months. The FAC will also include facts that have been publicly disclosed since the filing of CAC. These new allegations provide additional detail on the scope and scale of the securities fraud involving Satyam Computer Services Limited ("Satyam" or the "Company") as well as the roles occupied by the various entities that audited Satyam's fraudulent financial statements. The proposed FAC is attached hereto as Exhibit "A."

On September 13, 2010, Satyam voluntarily turned over to Lead Plaintiffs approximately 2,000 pages of non-public emails, exchanged among its auditors, relating to the Satyam audit, which it had previously produced to the Securities and Exchange Commission ("SEC"). These emails demonstrate that PwC USA and Defendant PricewaterhouseCoopers International Limited ("PwC International"): (1) directly and culpably participated in the audit of Satyam and (2) controlled Defendant Price Waterhouse, the entity that signed false and misleading Satyam audit reports and which operates through Defendant PwC Pvt. Ltd. and Defendant Lovelock & Lewes (collectively, "PwC India").

On September 29, 2010, Satyam filed with the SEC its audited financial results for the fiscal years ending March 31, 2009 and 2010 (the "September 29, 2010 Filing"), which were the first financial statements released by the Company in the over eighteen months since it first

1

disclosed its fraud.  The September 29, 2010 Filing also includes a statement of the results of an independent forensic investigation into the fraud, including a description of the "impact" of the fraud on Satyam's financial results and balance sheet from April 2002 through September 2008.  *See* FAC ¶¶ 305-18.  In the September 29, 2010 Filing Satyam also acknowledged that its internal controls were deficient throughout the Class Period and explained other continuing impacts of the fraud on its operations.  *See id*.

In February and November 2010, Dennis Nally ("Nally"), PwC International's global chairman, admitted in published media interviews that PwC International was at fault in PwC India's audit of Satyam.  *See* FAC ¶¶ 181-86  Additional new allegations are based on evidence introduced at the ongoing trial in India of Defendant Ramalinga Raju, Defendant Rama Raju, Defendant Srinivas Vadlamani, relevant non-parties G. Ramakrishna, Danthaluri Venkatapathy Raju and Srisailam Chetkuru, and former PwC employees S. Gopalakrishnan, and Srinivas Talluri, which includes testimony by several bankers that corroborates the allegations in the CAC.  *See* FAC ¶¶ 100, 225-28.  This trial began on or about November 8, 2010.

As set forth below, based on these and other significant facts, the FAC adds a claim against a new defendant, PwC USA, under Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), for controlling Defendant PwC India. *See* FAC Count VIII.  Furthermore, the FAC provides additional detail on the relationship between PwC International and PwC India and the deficiencies in PwC's audits of Satyam, including Satyam's admissions concerning the scope of fraud at the Company.  *See* FAC § V.B.   In light of the information that more clearly delineates the PwC entities' responsibilities in connection with the Satyam audits, Plaintiffs have also voluntarily withdrawn the claim under Rule 10b-5 and Section 10(b) of the Exchange Act

against PwC International that was asserted in the CAC under a theory of *respondeat superior* for the actions of PwC India.

Finally, the FAC adds as a named plaintiff the International Brotherhood of Electrical Workers Local Union #237 ("IBEW"), a union pension fund based in Niagara Falls, New York that purchased Satyam ADSs on the NYSE during the Class Period. *See* FAC ¶ 21.

## II.     PROCEDURAL HISTORY AND PROPOSED AMENDMENTS

### A.     Procedural History

On July 17, 2009, Lead Plaintiffs filed the CAC, alleging that Defendants fraudulently overstated material aspects of Satyam's performance and financial condition over a period of at least seven years, ending on January 7, 2009. On that date, Ramalinga Raju, the Company's founder and chairman, confessed to a massive fraud in an open letter to the Company's Board of Directors. The CAC also alleged that Satyam's independent auditor, PwC India, fraudulently certified that the Company's financial reports were free from material misstatements while, at the same time, knowingly or recklessly disregarded the ongoing, massive accounting fraud that was taking place at Satyam. *See* CAC at Count VI (bringing a claim against PwC India under Rule 10b-5 and Section 10(b) of the Exchange Act). The CAC further alleged that PwC India acted as an agent of PwC International when it committed securities fraud (CAC at Count VI),[1] and that PwC International was a control person of PwC India during the Class Period. *See* CAC at Count VII (bringing a claim against PwC International under Section 20(a) of the Exchange Act).

---

[1] Lead Plaintiffs brought a claim for violations of Section 10(b) and Rule 10b-5 against PwC International under a theory of *respondeat superior*. This is the claim that is eliminated in the FAC based upon new information regarding the scope of activities performed in connection with the Satyam audits.

On November 9, 2009, Defendants (including Satyam, PwC International, and PwC India) filed five motions to dismiss the CAC. A week later, the Director Defendants[2] and Defendant Vinod K. Dham filed two additional motions to dismiss. On December 16, 2009, Maytas Infras filed its motion to dismiss, and on March 22, 2010, Maytas Properties filed three motions to dismiss. These twelve motions sought to dismiss the CAC on the grounds of (i) lack of subject matter jurisdiction, (ii) *forum non conveniens*, (iii) failure to demonstrate *respondeat superior* as to PwC International, (iv) failure to state a claim under sections 11 and 12(a)(2) of the Securities Act, and (v) failure to state a claim under sections 10(b) and 20(a) of the Exchange Act.[3] These motions were fully briefed as of April 23, 2010.

Following the Supreme Court's opinion in *Morrison v. National Australia Bank Ltd.*, -- U.S. --, 130 S. Ct. 2869 (2010), the defendants moved to dismiss all claims in the FAC asserted on behalf of United States investors who purchased Satyam shares on the Indian stock exchange. These motions were fully briefed as of October 7, 2010.

### B. New Evidence Demonstrates that PwC USA Controlled PwC India and Culpably Participated in PwC India's False and Misleading Statements

The FAC adds PwC USA, the United States member firm of PwC International, as a Defendant. Among the documents Satyam recently produced are hundreds of emails exchanged between PwC USA, PwC GCMG (an entity wholly owned and managed by PwC USA), and PwC India reflecting and elaborating PwC USA's critical role in preparing and approving Satyam financial statements filed with the SEC. These communications show that PwC USA PwC India and PwC GCMG worked collaboratively to review and finalize each of Satyam's

---

[2] The "Director Defendants" are named in the FAC at Section III.G.
[3] Defendant Satyam did not move for a Rule 12(b)(6) dismissal on substantive grounds. Instead, it moved to dismiss only on subject matter jurisdiction, loss causation (solely for claims brought by U.S. residents who purchased Satyam ordinary shares in India) and on *forum non conveniens* grounds.

annual reports filed with the SEC on Form 20-F, which Satyam has admitted were fraudulent. *See* FAC §§ V.A-B, VIII.A.[4]

Other emails further demonstrate PwC USA's ultimate control over the publication of Satyam's financial statements with the SEC. For example, emails show that PwC USA was required to sign off on PwC India's audit under U.S. Generally Accepted Accounting Principles ("GAAP") before these financial statements could be published in the United States. *See* FAC ¶¶ 157-58. In this capacity, PwC USA implemented a Designated Reviewer Program for the Satyam engagement, a level of review required by Generally Accepted Accounting Standards ("GAAS") for auditing a foreign issuers' financial statements under U.S. GAAP. *See* FAC ¶ 158. While this protocol required adherence to strict procedures and protocols the emails reflect that PwC USA failed in this critical audit function, ignoring or failing to follow up on obvious signs of fraud and capitulating to artificial deadlines imposed by Satyam. *See* FAC § V.G. Still other emails demonstrate PwC USA's inadequate direction over testing procedures used by PwC India in the Satyam audit, thereby violating GAAS (including AU §§ 311, 330). *See id.*

    **C.**    **Recently Disclosed Information Further Strengthens Claims and Supports Additional Allegations Against Previously Named Defendants**

        **1.**    **Additional Facts Demonstrate PwC International's Control Over PwC India's Audit of Satyam's Financial Statements**

As alleged in the CAC, Defendant PwC International controlled Defendant PwC India. The emails recently produced by Satyam, as well as media reports since the filing of the CAC, strengthen these allegations. This new information includes statements by PwC International's global chairman, Nally, in which he attributes culpability to PwC International for PwC India's

---

[4] Numerous employees of PwC Global Capital Markets Group, LLC ("PwC GCMG"), a unit of PwC USA, participated in and reviewed the Satyam audit. According to PwC GCMG's Operating Agreement, PwC USA exclusively managed PwC GCMG's business and affairs.

fraudulent audit, stating: "[i]t is unfortunate that Satyam happened under our watch," and PwC's "job is to make sure we are doing everything and we have done a number of things in India to ensure that this would not happen again." *See* FAC ¶¶ 182-84.

### 2. The September 29, 2010 Filing Further Demonstrates that Satyam's Financial Statements Were False During the Class Period

The September 29, 2010 Filing, Satyam's first financial release since January 2009, provides significant new information relating to Satyam's financial improprieties during the Class Period, setting forth the Company's financial results for the fiscal years ended March 31, 2009 and 2010 as well as the results of the Company's forensic investigation into the Satyam fraud. Among other things, the September 29, 2010 Filing admits to misstatements of material facts and concedes that as of March 31, 2009, material internal control deficiencies existed in connection with Satyam's financial reporting. *See* FAC ¶¶ 304, 311. The September 29, 2010 Filing further discloses that the Company and many of its former officers, directors, and auditors are being investigated and/or prosecuted by a number of government agencies, including India's Central Bureau of Investigation, Serious Fraud Investigation Office, Securities and Exchange Board of India, the Enforcement Directorate, and the SEC. *See* FAC ¶ 313. The Company has also disclosed that it had received a Wells Notice from the SEC, has been actively cooperating in the SEC's investigation since 2009, and expects that it will be subject to an SEC civil enforcement action for securities fraud. *See* FAC ¶ 314.

## III. ARGUMENT

### A. This Court Should Permit Amendment Under The Liberal Policies For Amending Under Fed. R. Civ. 15(a)

The Federal Rules of Civil Procedure provide that after a response to a pleading is filed, a party "may amend the party's pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P.

15(a). The Supreme Court has stated clearly that absent undue delay, bad faith, undue prejudice, or futility, the "mandate" to freely grant leave to amend "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also AEP Energy Servs Gas Holding Co. v. Bank of America, N.A.*, Nos. 08-CV-4196, 08-CV-4671, 2010 WL 4261227, at *22 (2d Cir. Oct. 29, 2010) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith"). In particular, given the PSLRA's strict pleading standards, courts have found it appropriate to grant leave to amend liberally so that plaintiffs bringing federal securities fraud suits have due opportunity to allege their claims. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (noting the "importance of adherence to liberal amendment standards in the context of complicated pleading rules of PSLRA"); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (same). The decision to grant leave to amend is within the sound discretion of the trial court. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281-82 (S.D.N.Y. 2010) ("it is within the sound discretion of the court whether to grant leave to amend") (citation omitted).

Rule 15(a) applies to amendments that add factual allegations and parties. *See In re Worldcom, Inc. Sec. Litig.*, 02-CV-3288, 2003 WL 22831008, at *2 (S.D.N.Y. Dec. 1, 2003) (Cote, J.) (after denying motion to dismiss, court granted leave to amend the complaint so that, in an "abundance of caution," plaintiffs could add subsidiaries of named underwriter defendants; defendants who opposed the application could "not [] identify any prejudice that may exist from the amendment"); *see also Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96-97

7

(S.D.N.Y. 2010) (granting leave to amend to add a named plaintiff and defendant while class certification was *sub judice*).[5]

### 1. Defendants Will Not Suffer Any Prejudice

Any party opposing leave to amend bears the burden to establish that it would be "prejudice[d]" by the proposed amended complaint. *See Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). Defendants cannot satisfy this burden here. The Second Circuit instructs, "[i]n determining what constitutes 'prejudice,'" courts should "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Lead Plaintiffs' addition of PwC USA as a Section 20(a) defendant and their additional factual allegations, while likely requiring additional limited briefing in this case for the PwC Entities in connection with the Rule 12(b)(6) and *forum non conveniens* motions to dismiss, does not impose on these parties an "undue prejudice." *See A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (no prejudice when amended complaint added parties, possibly prolonging discovery and also holding that opponents' assertions "that an amendment will require the expenditure of additional time, effort, or money do[es] not constitute 'undue prejudice.'"). Indeed, one of the claims in this case, the Section 10(b) claim against PwC International, has been dropped, thereby actually narrowing the issues for resolution in this case.

---

[5] When "deciding whether to allow joinder [of parties under Rule 21], courts adhere to the same standard of liberality afforded to motions to amend under Rule 15." *Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (citation omitted).

Any delay in the resolution of the litigation will be immaterial, likely adding a few months of additional briefing to a case that has already been pending for almost two years. Because discovery has not yet commenced, any delay caused by the filing of the FAC would be minimal. Courts in this district have granted leave to amend at a similar, or later, procedural stages. *See, e.g., Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*, 06-CV-5246, 2007 WL 950134, at *5 (S.D.N.Y. Mar. 28, 2007) (granting leave to amend prior to discovery); *Versace, Inc.*, 87 F. Supp. 2d at 299 (granting leave to amend during discovery).

The proposed amendments make significant, but relatively narrow changes to the scope of the case and the nature of Lead Plaintiffs' claims, thus likely allowing all but the PwC Entities to avoid having to rebrief any challenges to the complaint for failure to state a claim. Notably, with the respect to the new facts from the September 29, 2010 Filing amounting to admissions by Satyam that its previous financial statements were materially misleading, none of the Defendants previously disputed Lead Plaintiffs' allegations that Satyam's financial statements were materially false and misleading.

With respect to any changes to the existing briefing on Defendants' motions to dismiss for *forum non conveniens*, the addition of a new United States based defendant which is clearly in the possession of, and has access to, a slew of critical evidence in this case, will likely result in additional briefing on the merits of Defendants' previous arguments. Nevertheless, the addition of this defendant and the additional limited briefing on the *forum non conveniens* motions cannot be said to be unduly prejudicial to any party. *A.V. by Versace, Inc.,* 87 F. Supp. 2d at 299 ("that an amendment will require the expenditure of additional time, effort, or money do[es] not constitute 'undue prejudice.'").

### 2. There Has Been No Undue Delay or Bad Faith in Seeking Amendment

Defendants cannot show that Lead Plaintiffs' decision to seek amendment at this time reflects "undue delay" or "bad faith." *Block*, 988 F.2d at 350. In fact, to the contrary, Lead Plaintiffs have acted expeditiously to draft the FAC and file this motion. As set forth above, the core, additional facts cited in the proposed FAC was not known to Lead Plaintiffs until September 2010 when Satyam voluntary turned over the emails that largely form the basis for the amendment. Courts have consistently granted leave to amend under scenarios where far more time has elapsed between learning new information and seeking to allege it in an amended pleading. *See In re Horizon Cruises Litig.*, 101 F. Supp. 2d 204, 215 (S.D.N.Y. 2000) (permitting leave to amend more than twenty months after depositions that revealed the facts on which the new claims were based); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 232 F.R.D. 169, 172 (S.D.N.Y. 2004) (although "Plaintiff could have submitted its proposed amendments somewhat earlier in the litigation," court granted leave to amend, holding that "the delay was not inordinate in the context of this litigation [and] the Court does not perceive great prejudice to Defendants" where discovery was not far progressed and the added claims closely related to those already pled).

## **CONCLUSION**

Wherefore, for the reasons set forth above, Lead Plaintiffs respectfully request that the Court grant leave to amend.

DATED:  December 14, 2010

                                      Respectfully submitted,

| BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP | GRANT & EISENHOFER P.A. |
|---|---|
| s/ Steven B. Singer<br>Max W. Berger<br>Steven B. Singer<br>Bruce Bernstein<br>1285 Avenue of the Americas, 38th Floor<br>New York, NY 10019<br>Tel.: (212) 554-1400<br>Fax: (212) 554-1444 | s/ Keith M. Fleischman<br>Jay W. Eisenhofer<br>Keith M. Fleischman<br>Mary S. Thomas<br>Deborah A. Elman<br>485 Lexington Avenue, 29th Floor<br>New York, NY 10017<br>Tel.: (646) 722-8500<br>Fax: (646) 722-8501 |
| BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP | LABATON SUCHAROW LLP |
| s/ David Kessler<br>David Kessler<br>Sharan Nirmul<br>Christopher L. Nelson<br>Neena Verma<br>Joshua E. D'Ancona<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Tel.:  (610) 667-7706<br>Fax:  (610) 667-7056 | s/ Joel H. Bernstein<br>Joel H. Bernstein<br>Louis Gottlieb<br>Michael H. Rogers<br>Felicia Y. Mann<br>140 Broadway<br>New York, NY 10005<br>Tel.:  (212) 907-0700<br>Fax:  (212) 818-0477 |

*Co-Lead Counsel for Lead Plaintiffs*

11