UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SATYAM COMPUTER SERVICES LTD.
SECURITIES LITIGATION

This Document Applies to: All Cases

09 MD 2027 (BSJ)
(Consolidated Action)

**MEMORANDUM OF LAW IN SUPPORT OF THE DIRECTOR DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT PURSUANT TO *MORRISON*__**

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Defendants Mangalam
Srinivasan, Ram Mynampati, V.S. Raju,
T.R. Prasad and M. Rammohan Rao

**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, California 94111
Tel: (415) 693-2000
Fax: (415) 693-2222

Attorneys for Defendant Vinod K. Dham

**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendant Krishna G. Palepu

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 3

    A.    Satyam's Securities .................................................................................................. 3

    B.    MPERS' Purchases of Satyam Ordinary Shares ..................................................... 3

    C.    Adams' Employee Option Exercises and Acquisition of Satyam ADSs ................ 3

        1.    The Terms of Adams' Employee Option Contracts .................................. 3

        2.    Adams' Claims Regarding the Exercise of Options Granted Pursuant to Satyam's Five Employee Option Plans .................................. 5

ARGUMENT .................................................................................................................................. 7

I.    MPERS FAILS TO STATE A CLAIM WITH RESPECT TO PURCHASES OF SATYAM ORDINARY SHARES ON INDIAN EXCHANGES ..................................... 7

II.    ADAMS DOES NOT PLEAD FACTS STATING A SECURITIES ACT OR EXCHANGE ACT CLAIM, IN LIGHT OF *MORRISON* ................................................. 8

    A.    Adams Does Not Plead Facts Showing That He Acquired Any Satyam Securities Pursuant to the *RSU* Option Plans, or Ordinary Shares Pursuant to the ASOP Ordinary Plans, Much Less in a Transaction Giving Rise to Securities Law Claims After *Morrison* .................................................................. 8

        1.    Adams Did Not Purchase Any Securities At All Under the *RSU* Option Plans, or the ASOP Ordinary Plans ............................................... 8

        2.    Any Hypothetical Securities Transactions by Adams Pursuant to the *RSU* Option or ASOP Ordinary Plans Would Have Had to Occur in India, Not the U.S ....................................................................... 9

    B.    Adams Does Not Plead Facts Showing That He Acquired ADSs Pursuant to the ASOP *ADS* Plan in a Transaction Giving Rise to an Exchange Act Claim After *Morrison* ....................................................................................... 10

    C.    Neither Adams's Residence Nor Any Steps Taken In the U.S. To Initiate The Option Exercise In India Change The Locus Of The Transaction ............... 11

    D.    That Adams Purchased the Same Class of Security As Is Listed and Traded on the NYSE Does Not Change the Locus of the Transaction ................ 13

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010)..................................................................................8, 11

*ATSI Commc'ns v. Shaar Fund.*,
   493 F.3d 87 (2d Cir. 2007)......................................................................................................4

*Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings, Ltd.*,
   2011 WL 1211511 (D. Colo. Mar. 31, 2007) ...............................................................10, 11, 12

*Cornwell v. Credit Suisse Group*,
   729 F. Supp. 2d 620 (S.D.N.Y. 2010)..................................................................................8, 12

*In re Elan Corp. Sec. Litig.*,
   2011 WL 1442328 (S.D.N.Y. Mar. 18, 2011) ............................................................................7

*Elliott Assocs. v. Porsche Automobil Holding SE*,
   2010 WL 5463846 (S.D.N.Y. Dec. 30, 2010) ............................................................................8

*Horvath v. Banco Commercial Portugues, S.A.*,
   2011 WL 666410 (S.D.N.Y. Feb. 15, 2011)...............................................................................7

*Morrison v. Nat'l Austl. Bank Ltd.*,
   130 S. Ct. 2869 (2010).......................................................................................................passim

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002).......................................................................................................2

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*,
   2010 WL 3860397 (S.D.N.Y. Oct. 4, 2010)..........................................................................8, 12

*In re Royal Bank of Scot. Group PLC Sec. Litig.*,
   2011 WL 167749 (S.D.N.Y. Jan. 11, 2011) .....................................................................7, 9, 12

*Schoenbaum v. Firstbrook*,
   268 F. Supp. 385 (S.D.N.Y. 1967) ...........................................................................................13

*Schoenbaum v. Firstbrook*,
   405 F.2d 200 (2d Cir. 1968).....................................................................................................13

*Sgalambo v. McKenzie*,
   739 F. Supp. 2d 453 (S.D.N.Y. 2010).............................................................................3, 8, 13

*In re Societe Generale Sec. Litig.*,
   2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010).......................................................................8, 12

## TABLE OF AUTHORITIES

**Page(s)**

*Stackhouse v. Toyota Motor Co.*,
    2010 WL 3377409 (C.D. Cal. July 16, 2010) ........................................................................... 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
    2011 WL 590915 (S.D.N.Y. Feb. 17, 2011) ............................................................................... 7

**Statutes and Rules**:

17 C.F.R. 240.3b-1 ............................................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 1

**Other Authorities**:

*Am. Depositary Receipts*,
    Exchange Act Release No. 6894,
    1991 WL 294145 (May 23, 1991) ............................................................................................. 2

BLACK'S LAW DICTIONARY 1477 (9th ed. 2009) ............................................................................ 8

Defendants, former directors of Satyam Computer Services Ltd. ("Satyam"), submit this memorandum in support of their motion to dismiss the First Amended Consolidated Class Action Complaint ("FACC") pursuant to the Supreme Court decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010), and Fed. R. Civ. P. 12(b)(6), as to all plaintiffs other than those who purchased Satyam ADSs on the New York Stock Exchange ("NYSE").[1]

## PRELIMINARY STATEMENT

The Director Defendants previously moved to dismiss the original Consolidated Class Action Complaint in light of *Morrison*. The FACC conspicuously fails to plead any facts that overcome the *Morrison* shortcomings that the Director Defendants previously identified.

First, *Morrison* compels dismissal of all claims asserted by Lead Plaintiff Public Employees' Retirement System of Mississippi ("MPERS") on behalf of itself and a purported class of U.S. investors who purchased Satyam ordinary shares on Indian exchanges, because such purchases are not within the scope of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act").[2] Satyam is an Indian company, headquartered in Hyderabad. Its ordinary shares are traded only on the National Stock Exchange of India ("NSE") and the Bombay Stock Exchange ("BSE"). Every court in this District that has addressed whether § 10(b) claims by U.S. investors who purchased shares on foreign exchanges may be maintained after *Morrison* has concluded that they may not. Mere domestic presence of the plaintiff is not enough to bring

---

[1] Pursuant to agreement of the parties, the *Morrison* issues are being briefed separately from remaining issues under the securities laws. *See* Letter from Steven B. Singer, Esq., to the Court, dated March 2, 2011.

[2] The Director Defendants do not seek dismissal, pursuant to *Morrison*, of the Exchange Act claims asserted by Lead Plaintiffs Mineworkers Pension Fund, SKAGEN A/S and Sampension KP Livforsikring A/S, who allege that they purchased Satyam ADSs on the NYSE.

the purchase of foreign-exchange-traded securities within the ambit of the U.S. securities laws: rather, the locus of the securities transaction (in this case, India) is dispositive.  *See* Point I.

*Morrison* likewise compels dismissal of plaintiff Brian Adams' claims on behalf of himself and two purported subclasses of Satyam employees: one consisting of U.S. employees who supposedly exercised employee options to acquire ordinary shares; and the other consisting of U.S. and non-U.S. employees who exercised employee options to acquire ADSs.[3]  Adams asserts claims under the Exchange Act and, as to two of Satyam's five employee option plans, the Securities Act of 1933 (the "Securities Act").  (Adams' claims are the only Securities Act claims in this action.)  *Morrison* applies equally to all of those claims.  *See* 130 S. Ct. at 2885.  Adams' claims relating to Satyam ordinary shares must be dismissed because he does not (and cannot) plead that he ever exercised options to acquire any such shares, much less where.  His claims relating to ADSs must be dismissed because the transactions by which he exercised his options and acquired ADSs took place in India, in one-on-one acquisitions directly from Satyam, and were not a "purchase or sale of any . . . security *in the United States*," as required by *Morrison* (emphasis added).  Indeed, Adams again ignores his own documentation, previously put before this Court on the Director Defendants' prior motion, which clearly establishes that any purchases pursuant to the employee option plans occurred in India.  *See* Point II.

---

[3] An "ADS" (American Depositary Share) "is the security that represents an ownership interest in [a foreign issuer's] deposited securities (in much the same way a share of stock represents an ownership interest in a corporation)."  *Am. Depositary Receipts*, Exchange Act Release No. 6894, 1991 WL 294145, at *2 n.5 (May 23, 1991).  The ADS is represented by an ADR (American Depositary Receipt), which is "a receipt that is issued by a depositary bank that represents a specified amount of a foreign security that has been deposited with a foreign branch or agent of the depositary, known as the custodian."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002).  Essentially, the ADR is "the physical certificate that evidences ADSs (in much the same way a stock certificate evidences shares of stock)."  *Am. Depositary Receipts*, 1991 WL 294145, at *2 n.5.  For simplicity, we here refer only to "ADSs."

## STATEMENT OF FACTS

### A.  Satyam's Securities

Satyam is a company "organized under the laws of the Republic of India."  FACC ¶ 24.  Its ordinary shares are listed and traded on Indian stock exchanges (the NSE and the BSE); and its ADSs are traded on the New York Stock Exchange ("NYSE").  *Id.* ¶ 26.

### B.  MPERS' Purchases of Satyam Ordinary Shares

MPERS "is a retirement system that manages billions of dollars for the benefit of the current and retired employees of the State of Mississippi."  FACC ¶ 17.  During the class period, MPERS only "purchased Satyam ordinary shares on Indian stock exchanges."  *Id.*

### C.  Adams' Employee Option Exercises and Acquisition of Satyam ADSs

Adams claims to be a former Satyam employee who was "a participant both in Satyam's Associate RSU (ADS) Option Plan and its Associate Ordinary Option Plan-RSU Plan."  FACC ¶ 22.  Adams asserts that, during the Class Period, he "and the other Sub-Class members . . . acquired Satyam options through at least *one* of the Company's employee option plans."  But Adams concedes that he personally acquired only ADSs (*id.* ¶¶ 23, 342); and he nowhere pleads that (or where or how) he exercised the employee options to acquire his ADSs.

#### 1.  The Terms of Adams' Employee Option Contracts

The operative documents governing Adams' employee options are: (i) the option plans; (ii) his Notices of Stock Option Grant (the "Grant Agreements"), which incorporate the terms of the applicable employee option plan; and (iii) his Exercise Notices, entitled "*Associate Stock Option Plan* ["ASOP"] (ADS)."  *See* Declaration of Evert J. Christensen, Jr. ("Christensen Decl."), Exs. A to E (Grant Agreements) and Exs. F to O (Exercise Notices).[4]  The Satyam

---

[4] The Court may take judicial notice of Adams' own Exercise Notices without converting this motion to one for summary judgment.  *See, e.g.*, *Sgalambo v. McKenzie*, 739 F. Supp. 2d 453,

ASOP *ADS* Plan (described below) provides (at Section 9): "An Option (ADS) shall be deemed exercised *when SATYAM receives*: (i) written or electronic notice of exercise (in accordance with the Option (ADS) Agreement) from the person entitled to exercise the Option (ADS), and (ii) full payment for the ADSs"; but that no rights in favor of the person exercising the option exist "until the ADSs are issued." *See* Christensen Decl. Ex. P (emphasis added).

The Exercise Notices reflect that the only options exercised by Adams were granted pursuant to the ASOP *ADS* Plan. The Exercise Notices also contain Adams' acknowledgment that he "has received, read and understood the ASOP (ADS) and the Option Agreement . . . and agrees to abide by and be bound by their terms and conditions." *See* Christensen Decl. Exs. F to O (Exercise Notices, at p.1 and ¶ 2). Both the Exercise Notices and the payments that Adams delivered to Satyam, in India, in order to exercise those options further establish that the transactions whereby he exercised such options (and acquired Satyam ADSs) indeed occurred *in India*:

- Adams delivered the Exercise Notices to the Satyam "Stock Option team," at Satyam's offices in India. *See* Christensen Decl. Exs. F to O (Exercise Notices), at p. 1, showing delivery address in Secunderabad, India;

- Adams paid the exercise prices to acquire the ADSs via a wire transfer to Satyam in India. *See id.*, at ¶¶ 1, 10;

- The ADSs had to be "issued" by Satyam (as evidenced by appropriate entry on the books of Satyam) before they became effective, and before the employee exercising the options had any rights with respect to those ADSs. *See id.*, at ¶ 3.

---

470 (S.D.N.Y. 2010) (a court may consider any "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit") (citing *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Adams necessarily knows of and relies on his own documentation as to his rights, and exercises of same, under the Satyam employee option plans. Adams quite properly did not even question the propriety of the Court considering these documents on defendants' prior *Morrison* motion.

> No facts are pled indicating that such book entry and "issuance" by Satyam occurred anywhere but Satyam's offices in India;[5]

- Any dispute concerning any options that Adams sought to exercise would be submitted to Satyam's compensation committee for a binding decision. *See id.*, at ¶ 6. No facts are pled to show that Satyam's compensation committee was located anywhere but in India; and

- The Exercise Notices provide that they are to be "governed by and construed in accordance with the laws of India." *See id.* at ¶ 7.

In short, the transactions by which ADSs were purchased, sold and paid for by Adams, by exercise of employee options, had to -- and did -- take place in India.

### 2. Adams' Claims Regarding the Exercise of Options Granted Pursuant to Satyam's Five Employee Option Plans

For the sake of clarity, the following summarizes each of the five Satyam employee option plans, and Adams' claims and pleadings as to each. Adams did not controvert any of these facts or documents in response to defendants' prior motion to dismiss; and nothing in his subsequently-filed FACC controverts these facts.

(i) <u>Associate Stock Option Plan</u> (FACC ¶¶ 340(a), 342). This is an ordinary share plan adopted by Satyam in 1998. Adams asserts only Exchange Act claims -- not Securities Act claims -- under this plan. However, he does not plead any fact showing that he was ever granted or exercised any options to acquire ordinary shares. Adams could not, as he pleads that he exercised options under *one* plan, and acquired only Satyam ADSs. *Id.* ¶¶ 22, 23, 342. Adams' Exercise Notices confirm that the one plan was the *ASOP* ADS Plan. *See* Christensen Decl., Exs. F to O.

(ii) <u>Associate Stock Option Plan B (together with the Associate Stock Option Plan, the "ASOP Ordinary Plans")</u> (FACC ¶¶ 340(b), 342). This, too, is an ordinary share plan

---

[5] The ADSs, once issued by Satyam in India, were to be "advised for holding in electronic form (non-physical form)" in Adams' E*Trade account. *See* Christensen Decl. Exs. F to O (Exercise Notices), at ¶ 1 (p. 2).

adopted by Satyam in 1999.  Adams asserts only Exchange Act claims.  However, as Adams acknowledges in the FACC, and as demonstrated by the Exercise Notices, he never exercised options or acquired any ordinary shares under this plan, either.  *See id.* ¶¶ 22, 23, 342; Christensen Decl. Exs. F to O.

        (iii)    <u>Associate Stock Option Plan ADS (the "ASOP *ADS* Plan")</u> (FACC ¶¶ 340(c), 342).  This is an ADS plan adopted by Satyam in 1999.  Adams asserts only Exchange Act claims -- not Securities Act claims -- under this plan.  According to his Exercise Notices, this is the *only* option plan under which Adams exercised options.  *See id.* ¶¶ 22, 23, 342; Christensen Decl. Exs. F to O.  But when Adams exercised his options under this plan, he did not purchase ADSs on the NYSE or in any other transaction in the U.S.; rather, as described above, and as required by the operative contracts, the exercise of employee options and acquisition of ADSs were effected, paid for and consummated at Satyam headquarters in India.

        (iv)    <u>Associate Stock Option Plan–RSUs (ADS) (the "*RSU* ADS Plan")</u> (FACC ¶¶ 340(d), 342, 420, 437).  This is an ADS plan adopted by Satyam in 2006.[6]  Adams purports to assert Securities Act, as well as Exchange Act, claims under this plan.  But Adams does not plead any facts showing that he ever exercised any such RSU options, or thereby acquired any ADSs.  In fact, according to his own Exercise Notices and the FACC, Adams never exercised any options under this plan.  *See id.* ¶¶ 22, 342; Christensen Decl. Exs. F to O.

        (v)    <u>Associate Stock Option Plan–RSUs (the "*RSU* Ordinary Plan," and together with the *RSU* ADS Plan, the "*RSU* Option Plans")</u> (FACC ¶¶ 340(e), 342, 420, 437).  This is an ordinary share plan adopted by Satyam in 2006, as to which Adams asserts Securities Act and Exchange Act claims.  However, Adams does not and cannot plead facts showing that he

---

[6] The ADS RSU Option Plan was filed as an exhibit to Satyam's registration statement, dated January 12, 2007, and filed with the SEC on Form S-8.  FACC ¶ 340(d).

was even granted, much less that he exercised, RSU options issued under this plan, or thereby acquired ordinary shares.  *See id.* ¶¶ 22, 23, 342; Christensen Decl. Exs. F to O.[7]

## ARGUMENT

### I.   MPERS FAILS TO STATE A CLAIM WITH RESPECT TO PURCHASES OF SATYAM ORDINARY SHARES ON INDIAN EXCHANGES

MPERS purchased only Satyam ordinary shares, and did so only on Indian exchanges (FACC ¶ 17): it therefore does not -- and cannot -- state a claim under the U.S. securities laws.  "[T]he focus of the Exchange Act is . . . upon purchases and sales of securities *in the United States*."  *Morrison*, 130 S. Ct. at 2884 (emphasis added).  Accordingly, under *Morrison*'s "transactional test," the securities laws apply "only in connection with the purchase or sale of a security *listed on an American stock exchange*, and the purchase or sale of any other security *in the United States*."  *Id.* at 2888 (emphasis added).

Ten courts in this District have considered the extra-territorial application of the U.S. securities laws since *Morrison*, and every one has concluded that the mere domestic presence or residence of the plaintiff is not enough: rather, it is the locus of plaintiff's transaction that is dispositive.[8]  All of these courts therefore dismissed the securities law claims of U.S. investors who purchased securities on foreign exchanges, or in other transactions that were predominantly foreign.  *See In re Elan Corp. Sec. Litig.*, 2011 WL 1442328, at *1 (S.D.N.Y. Mar. 18, 2011); *In re Vivendi Universal, S.A. Sec. Litig.*, 2011 WL 590915, at *12 (S.D.N.Y. Feb. 17, 2011); *Horvath v. Banco Commercial Portugues, S.A.*, 2011 WL 666410, at *3 (S.D.N.Y. Feb. 15, 2011); *In re Royal Bank of Scot. Group PLC Sec. Litig.*, 2011 WL 167749, at *7-8 (S.D.N.Y.

---

[7] Putting aside that Adams never acquired securities under the *RSU* Ordinary Plan, even if he had, this plan was filed as an exhibit to Satyam's annual report, dated April 30, 2007 and filed with the SEC on Form 20-F.  FACC ¶ 340(e).  An annual report is *not* a registration statement, and therefore cannot serve as the basis for a Securities Act claim.

[8] We also are aware of no case in any other jurisdiction holding to the contrary.

Jan. 11, 2011); *Elliot Assocs. v. Porsche Automobil Holding SE*, 2010 WL 5463846, at *4-7 (S.D.N.Y. Dec. 30, 2010); *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*, 2010 WL 3860397, at *6-10 (S.D.N.Y. Oct. 4, 2010); *In re Societe Generale Sec. Litig.*, 2010 WL 3910286, at *4-6 (S.D.N.Y. Sept. 29, 2010); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010); *Sgalambo*, 739 F. Supp. 2d at 487; *Cornwell v. Credit Suisse Group*, 729 F. Supp. 2d 620, 623-24 (S.D.N.Y. 2010).[9]

Here, MPERS' own pleading makes clear that its purchases of Satyam ordinary shares occurred only on Indian exchanges.  FACC ¶ 17.  Such claims therefore must be dismissed for failure to state a claim under *Morrison* and its progeny.

## II. ADAMS DOES NOT PLEAD FACTS STATING A SECURITIES ACT OR EXCHANGE ACT CLAIM, IN LIGHT OF *MORRISON*

### A. Adams Does Not Plead Facts Showing That He Acquired Any Satyam Securities Pursuant to the *RSU* Option Plans, or Ordinary Shares Pursuant to the ASOP Ordinary Plans, Much Less in a Transaction Giving Rise to Securities Law Claims After *Morrison*

#### 1. Adams Did Not Purchase Any Securities At All Under the *RSU* Option Plans, or the ASOP Ordinary Plans

Adams asserts securities law claims with respect to both ordinary share and ADS employee options, granted pursuant to (i) the *RSU* Option Plans, as well as (ii) the ASOP Ordinary Plans.  Adams, however, does not meet his threshold burden to plead facts showing that he ever acquired any Satyam securities at all by exercising options granted pursuant to any of

---

[9] The fact that Satyam ordinary shares, though not purchased in the U.S., were "registered" with the SEC for technical purposes in connection with the listing of Satyam ADSs on the NYSE does not mean that the entire class of ordinary shares was "listed" on a U.S. exchange for purposes of *Morrison*.  This argument has been rejected in both *Alstom* and *Vivendi*.  Moreover, the result in those cases is buttressed by both: (i) the SEC's definition of "listed," which means "*admitted to full trading privileges*," 17 C.F.R. 240.3b-1 (emphasis added); and (ii) common meaning, as set out in BLACK'S LAW DICTIONARY 1477 (9th ed. 2009) (defining "listed security" as "[a] security accepted for trading on a securities exchange").

those plans, much less in a "domestic transaction," under *Morrison*. Such failures require dismissal. Moreover, dismissal of such claims should be with prejudice, for Adams could not plead the requisite facts to state a claim under such plans, as demonstrated by his Exercise Notices and his pleading acknowledging that he exercised options granted under only one plan -- the ASOP *ADS* Plan. All of Adams' Securities Act claims (asserted only as to the *RSU* Option Plans) therefore must be dismissed, because no such claims are asserted regarding the ASOP *ADS* Plan, under which he did acquire ADSs.

### 2. Any Hypothetical Securities Transactions by Adams Pursuant to the *RSU* Option or ASOP Ordinary Plans Would Have Had to Occur in India, Not the U.S.

Even if Adams had pled that he had been granted and exercised options under the *RSU* Option Plans or the ASOP Ordinary Plans, he nonetheless could not state any securities law claims, for *Morrison* is not limited to Exchange Act claims. After holding that it is only "transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies," the Supreme Court stated that "[t]he same focus on domestic transactions is evident in the Securities Act of 1933." *Morrison*, 130 S. Ct. at 2884-85; *accord*, *Royal Bank of Scot.*, 2011 WL 167749, at *9 ("[u]nder *Morrison*, the Securities Act, like the Exchange Act, does not have extraterritorial reach") (citation omitted). Thus, even if Adams had pled (although he cannot) that he exercised options under the *RSU* Option Plans or the ASOP Ordinary Plans, these could not be "domestic transactions" under *Morrison* and its progeny -- for the reasons set forth in Section II.B -- in light of the fact that any such option exercise must have occurred in India, as required by the employee option contracts.

### B.   Adams Does Not Plead Facts Showing That He Acquired ADSs Pursuant to the *ASOP* ADS Plan in a Transaction Giving Rise to an Exchange Act Claim After *Morrison*

Adams asserts Exchange Act claims with respect to ordinary shares and ADSs that were granted under all five employee option plans. But as noted above, Adams does not plead facts demonstrating that he ever acquired Satyam ordinary shares, much less in a domestic transaction under *Morrison*; and the Exercise Notices demonstrate, and the FACC acknowledges, that Adams acquired no ordinary shares at all. Rather, Adams acquired only ADSs, and by the exercise of employee options granted under only one plan -- the ASOP *ADS* Plan. FACC ¶ 22, 23, 342; Christensen Decl. Exs. F to O. Adams also fails to plead facts demonstrating where his option exercises pursuant to the ASOP *ADS* Plan occurred. This omission is conspicuous because defendants moved to dismiss Adams' prior complaint on precisely the same grounds as the instant motion: he therefore was on notice that defendants would move again, pursuant to *Morrison*, to dismiss his claims, but he did nothing to cure his pleading deficiencies. Nor could he: the contracts governing his employee options (and requiring that transactions to exercise such options had to take place and be paid for in India), and his exercise documents, are dispositive.

*Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings, Ltd.*, 2011 WL 1211511 (D. Colo. Mar. 31, 2011), dismissing claims of a U.S. plaintiff who made off-exchange investments in a Cayman Islands investment fund, is directly on point. The court held: "*Morrison* is explicit that the reach of § 10(b) is determined by the location of the 'transaction,' *not events preparatory to the transaction*." *Id.* at *7 (emphasis added).[10] The court further held that the

---

[10] The court rejected, as insufficient, a host of facts that plaintiff relied on: "(i) the Offering Memoranda and other investment materials were disseminated to Cascade in the United States; (ii) . . . [defendants'] executives traveled to the United States to solicit American investors; (iii) [plaintiff] made its decision to invest while in the United States; and (iv) the money for the purchase was wired to a bank in New York." 2011 WL 1211511, at *7. Indeed, the court held that the "assertion" "that the funds to complete the transaction were wired (at least initially) to

purchase was not a domestic transaction under *Morrison* because the "transaction was not completed until ACM finally accepted an application -- presumably at its Cayman Islands offices." *Id.* (noting, as well, that defendant "reserved the right to reject a request for any reason, even if the purchase money had been wired to New York"). Likewise here, the contracts governing Adams' employee options provide that an exercise is not effective, and the employee has no rights in the ADSs, until the exercise notice has been accepted, and the ADSs authorized, by Satyam at its headquarters in India. *See* Christensen Decl. Exs. F to O, at ¶ 3 ("Until Satyam ADSs are issued (as evidenced by the appropriate entry on the books of Satyam or a duly authorized transfer agent of Satyam) no right to vote or receive dividends or any other rights as a stockholder shall exist with respect to ADSs subject to the Option, notwithstanding the Exercise of the Option."); *see also id.* Ex. P, at ¶ 8; Exs. A to E, at ¶ 4. Thus, Adams does not and cannot meet his burden to plead facts showing that he engaged in any transaction covered by the Exchange Act, after *Morrison*. Dismissal of those claims therefore is required.

>   C.   **Neither Adams's Residence Nor Any Steps Taken In the U.S. To Initiate The Option Exercise In India Change The Locus Of The Transaction**

Regardless of whether Adams transmitted his Exercise Notices to Satyam from the U.S., those option exercises were delivered to Satyam, paid for, effected and consummated in India, as discussed above. The fact that a U.S. resident initiates or engages in a transaction effected abroad to acquire securities, does not make such transaction a "domestic transaction" under the federal securities laws. *Morrison*, 130 S. Ct. at 2884; *see also* cases cited above, including, in particular, *Alstom*, 741 F. Supp. 2d at 473 ("§ 10(b)'s focus would not encompass

---

New York" did not "amount to a conclusion that the transaction was completed in New York," *id.*, because "it simply describes one step by [plaintiff] to comply with [defendant's] designated process for applying to invest in the funds." *Id.* *A fortiori* there is no domestic transaction where, as here, Adams wired his funds directly to India, as required by the governing option plan documents.

purchases and sales of covered securities that occur outside of the United States"), and *Cornwell*, 729 F. Supp. 2d at 624 ("§ 10(b) would not apply to transactions involving . . . a purchase or sale [by a U.S. resident] of securities, foreign or domestic, which occurs outside the United States").

Courts in this District applying *Morrison* have held that, as a matter of law, "the mere act of electronically transmitting a purchase order from within the United States" is not sufficient to take the purchase "outside [the] rule" established in *Morrison*. *Swiss Reins.*, 2010 WL 3860397, at *9; *see also Royal Bank of Scot.*, 2011 WL 167749, at *8 ("Plaintiffs' approach -- that it is enough to allege that Plaintiffs are U.S. residents who were in the country when they decided to buy RBS shares -- is exactly the type of analysis that *Morrison* seeks to prevent"); *Societe Generale*, 2010 WL 3910286, at *6 ("[b]y asking the Court to look to the location of 'the act of placing a buy order' and to . . . 'the place of the wrong,' Plaintiffs are asking the Court to apply the conduct test specifically rejected in *Morrison*"); *Cornwell*, 729 F. Supp. 2d at 628 ("*Morrison* foreclosed the application of § 10(b) to any claims related to foreign securities trades executed on foreign exchanges even if purchased by American investors").

Under the circumstances of this case -- indeed, as contractually required -- it is as if Adams "figuratively traveled" to India to "complete the transaction" whereby he exercised employee options, made payment for, and acquired his right under the ADSs. *Stackhouse v. Toyota Motor Co.*, 2010 WL 3377409, at *1 (C.D. Cal. July 16, 2010). Adams therefore cannot state a securities law claim because he did not acquire his ADSs on a U.S. securities exchange or otherwise in a "domestic transaction," under *Morrison*. *See Cascade Fund*, 2011 WL 1211511, at *7. Dismissal of Adams' claims also should be with prejudice: he did not plead a "domestic transaction," despite knowing his failure from the Directors' prior motion, and he cannot plead such a transaction, given the plain terms of the operative contracts and the Exercise Notices.

### D. That Adams Purchased the Same Class of Security As Is Listed and Traded on the NYSE Does Not Change the Locus of the Transaction

The fact that Satyam ADSs are listed and traded on the NYSE does not change the fact that Adams engaged in an off-exchange, direct-from-the-issuer employee option exercise to acquire *his* ADSs. In other words, it is not sufficient for Adams merely to allege that he acquired securities *of a class* listed (and traded) on the NYSE. Indeed, this very argument was rejected in *Sgalambo*, where a Canadian issuer's common stock was listed *and traded* on both U.S. and Canadian exchanges. 739 F. Supp. 2d at 487. The court there dismissed the claims of plaintiffs who purchased the same U.S.-listed securities, but did so on the Canadian exchange, holding that *Morrison* "forecloses any potential class members who purchased Canadian Superior common stock on a foreign exchange -- in this case, the Toronto Stock Exchange ("TSX") -- from recovering in this action." *Id.*

Adams' purchase in India of ADSs directly from Satyam pursuant to an employee option exercise is no different. *Morrison*'s discussion of *Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir. 1968), is instructive, because it makes clear that § 10(b) does not reach such transactions, even if (as here) the company has a *class* of securities listed and traded on a U.S. exchange. Specifically, in repudiating the Second Circuit's "conduct" and "effects" test, the Supreme Court cited with approval and effectively endorsed the district court's holding in *Schoenbaum* (that the Court of Appeals, according to *Morrison*, erroneously reversed). That case "involved the sale in Canada of the treasury shares of a Canadian corporation whose publicly traded shares (but not, of course, its treasury shares) were listed and traded on both the American Stock Exchange and the Toronto Stock Exchange." 130 S. Ct. at 2878 (citing *Schoenbaum v. Firstbrook*, 268 F. Supp. 385, 391-92 (S.D.N.Y. 1967)). "Invoking the presumption against extraterritoriality," the district court in *Schoenbaum*, "held that § 10(b) was

inapplicable (though it incorrectly viewed the defect as jurisdictional)." *Id*. *Morrison* thus establishes that § 10(b) does not reach the purchase of treasury shares directly from a foreign issuer, notwithstanding the fact that the foreign issuer has a class of those very same shares listed and traded on a U.S. exchange -- precisely because, as here, the purchase occurred outside the United States.

Adams' contractual exercise of employee options to purchase ADSs of a class listed on the NYSE, but directly from Satyam in India, is directly analogous to buying treasury shares of class listed in the U.S., but directly from the Canadian issuer. Like the treasury shares in *Schoenbaum* that were held by the company until they were issued to the purchaser, Satyam ADSs could not be issued to Adams until after the option exercises were completed (including acceptance by and payment to Satyam) in India; and Satyam, in India, authorized the issuance of ADSs. Adams therefore cannot state a securities law claim under *Morrison* with respect to his exercises of employee options to acquire Satyam ADSs.

**CONCLUSION**

For the foregoing reasons, the securities law claims of MPERS and Adams should be dismissed with prejudice.

Dated: New York, New York
April 18, 2011

WEIL, GOTSHAL & MANGES LLP

By: /s/ Irwin H. Warren
    Irwin H. Warren
    Miranda S. Schiller
    Margarita Platkov
    Evert J. Christensen, Jr.

767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Defendants Mangalam Srinivasan, Ram Mynampati, V.S. Raju, T.R. Prasad and M. Rammohan Rao

| COOLEY LLP | DEBEVOISE & PLIMPTON LLP |
|---|---|
| By: /s/ Gordon C. Atkinson<br>    Gordon C. Atkinson | By: /s/ Jeffrey S. Jacobson<br>    Jeffrey S. Jacobson |
| 101 California Street, 5th Floor<br>San Francisco, California 94111<br>Tel: (415) 693-2000<br>Fax: (415) 693-2222 | 919 Third Avenue<br>New York, New York 10022<br>Tel: (212) 909-6000<br>Fax: (212) 909-6836 |
| Attorneys for Defendant Vinod K. Dham | Attorneys for Defendant Krishna G. Palepu |