# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

SATYAM COMPUTER SERVICES LTD.
SECURITIES LITIGATION

This Document Applies to: All Cases

09 MD 2027 (BSJ)
(Consolidated Action)

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DIRECTOR DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
## <u>FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Mangalam
Srinivasan, Ram Mynampati, V.S. Raju,
T.R. Prasad and M. Rammohan Rao*

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

*Attorneys for Defendant Krishna G. Palepu*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 2

STATEMENT OF FACTS ..................................................................... 6

     A.    The Parties .................................................................... 6

          1.    Plaintiffs ................................................................ 6

          2.    Defendants .......................................................... 7

     B.    The Officers' Fraudulent Scheme ................................... 10

     C.    The Regulatory Investigations ....................................... 13

     D.    The Allegations as to the PwC Audit Team........................ 15

     E.    The Allegations As To The Audit Committee .................... 16

ARGUMENT ................................................................................ 19

I.     PLAINTIFFS' § 10(b) CLAIMS AGAINST THE AUDIT COMMITTEE
      DEFENDANTS SHOULD BE DISMISSED ................................ 19

     A.    The Complaint Fails to Satisfy Rule 8 as to the § 10(b) Claim Against the
          Audit Committee Defendants .................................... 19

     B.    Heightened Standards Apply to Pleading Under Rule 9(b) and the PSLRA....... 19

     C.    The Complaint Fails to Satisfy the PSLRA or Rule 9(b).................... 21

     D.    No Facts are Pled Showing Motive and Opportunity to Commit Fraud by
          Each (or Any) Audit Committee Defendant ........................ 22

     E.    Plaintiffs Plead No Facts Providing Strong Circumstantial Evidence of
          Any Audit Committee Member's Conscious Misbehavior or Recklessness ....... 23

          1.    Scienter Cannot Be Inferred From Audit Committee Membership......... 23

          2.    The Facts Pled as to Both the Officers and PwC Audit Team
               Negate Any Inference of the Audit Committee Defendants'
               Scienter ........................................................ 25

          3.    Neither the Magnitude of the Fraud, Nor the Amount of Auditor
               Fees, Support a Strong Inference of Scienter............................ 27

          4.    Pleading of Management Letters Does Not Demonstrate Scienter ......... 29

          5.    Scienter Cannot Be Inferred From the Proposed Maytas
               Acquisition ...................................................... 30

II.    PLAINTIFFS' §§ 11 AND 12 CLAIMS SHOULD BE DISMISSED........................... 31

     A.    Adams Does Not Plead Facts Showing § 11 or § 12 Standing  or Stating a
          Claim Thereunder ............................................... 31

## TABLE OF CONTENTS

**Page**

B.     Heightened Pleading Requirements Apply to the §§ 11 and 12 Claims.............. 32

C.     The § 12 Claim Fails Because No Sale or Solicitation is Pled ............................ 34

III.     PLAINTIFFS' CONTROL PERSON CLAIMS SHOULD BE DISMISSED ............... 35

A.     The § 15 Claim Fails Because No Primary Violation Is Pled............................. 36

B.     The Facts Pled Do Not Establish Control by Any Director................................. 36

C.     No Facts Are Pled Showing Any Director's Culpable Participation................... 37

# TABLE OF AUTHORITIES

<u>**Cases**</u>:                                                                                           <u>**Page(s)**</u>

*Adelphia Commc'ns Corp. Sec. & Derivative Litig..*,
    2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007)..............................................................23, 24

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..............................................................................................19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................25, 35

*In re Authentidate Holding Corp. Sec. Litig.*,
    2009 WL 755360 (S.D.N.Y. Mar. 23, 2009),
    *aff'd in part, rev'd in part on other grounds sub nom*
    *Ill. State Bd. of Inv. v. Authentidate Holding Corp.*,
    369 F. App'x 260 (2d Cir. 2009) ............................................................................36

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)......................................................................34

*In re Baan Co. Sec. Litig.*,
    103 F. Supp. 2d 1 (D.D.C. 2000)............................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................6, 19, 20

*Boguslavsky v. Kaplan*,
    159 F.3d 715 (2d Cir. 1998)......................................................................................36

*In re Bristol Meyers Squib Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008)......................................................................37

*Caiafa v. Sea Containers Ltd.*,
    331 F. App'x 14 (2d Cir. 2009) ..............................................................................33

*Cozzarelli v. Inspire Pharm. Inc.*,
    549 F.3d 618 (4th Cir. 2008) ..................................................................................34

*In re CP Ships Ltd. Sec. Litig.*,
    506 F. Supp. 2d 1161 (M.D. Fla. 2007)..................................................................29

*Dent v. U.S. Tennis Ass'n, Inc.*,
    2008 WL 2483288 (E.d.N.Y. June 17, 2008) ........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*In re Deutsche Telekom AG Sec. Litig.*,
    2002 WL 244597 (Feb. 20, 2002) ....................................................................................37

*In re Doral Fin. Corp. Sec. Litig.*,
    563 F. Supp. 2d 461 (S.D.N.Y. 2008),
    *aff'd sub nom. W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
    344 F. App'x 717 (2d Cir. 2009) ....................................................................23, 26, 27, 28

*ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................................... *passim*

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    595 F. Supp. 2d 1253 (M.D. Fla. 2009),
    *aff'd*, 594 F.3d 783 (11th Cir. 2010)............................................................................28, 29

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ....................................................................22, 24, 30

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)........................................................................................................19

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, and "ERISA" Litig.*,
    503 F. Supp. 2d 25 (D.D.C. 2007) .................................................................................28

*Fidel v. Faley*,
    392 F.3d 220 (6th Cir. 2004) ........................................................................................28

*Fried v. Lehman Bros. Real Estate Assocs., L.P.,*,
    2011 WL 1345097 (S.D.N.Y. Mar. 29, 2011) ................................................................19

*Furher v. Ericsson LM Tel. Co.*,
    363 F. App'x 763 (2d Cir. 2009) .........................................................................19, 20, 23

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) .....................................................................................30

*In re Gen. Elec. Co. Sec. Litig.*,
    1995 WL 590639 (S.D.N.Y. Oct. 4, 1995),
    *aff'd sub nom. Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)..........................................................................................26

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

*In re Global Crossing, Ltd. Sec. Litig.*,
  313 F. Supp. 2d 189 (S.D.N.Y. 2003)..................................................................................32

*In re Global Crossing, Ltd. Sec. Litig.*,
  2005 WL 1875455 (S.D.N.Y. Aug. 5, 2005)........................................................................37

*Gurfein v. Ameritrade, Inc.*,
  411 F. Supp. 2d 416 (S.D.N.Y. 2006)..................................................................................22

*Harrison v. Enventure Capital Group, Inc.*,
  666 F. Supp. 473 (W.D.N.Y. 1987)......................................................................................36

*Harrison v. Rubenstein*,
  2007 WL 582955 (S.D.N.Y. Feb. 26, 2007)..............................................................36, 37, 38

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002)..........................................................................................32

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)..................................................................................33

*Leemon v. Burns*,
  175 F. Supp. 2d 551 (S.D.N.Y. 2001)..................................................................................22

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976).................................................................................................15

*In re Livent, Inc. Sec. Litig.*,
  78 F. Supp. 2d 194 (S.D.N.Y. 1999)............................................................................ *passim*

*In re Livent, Inc. Sec. Litig.*,
  148 F. Supp. 2d 331 (S.D.N.Y. 2001).......................................................................24, 26, 28

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)........................................................................ *passim*

*Medis Investor Group v. Medis Techs., Ltd.*,
  586 F. Supp. 2d 136 (S.D.N.Y. 2008),
  *aff'd*, 328 F. App'x 754 (2d Cir. 2009)..............................................................................23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003) ...........................................................................................15

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003)..................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

*In re Merrill Lynch & Co. Sec. Derivative & ERISA Litig.*,
  2009 WL 4030869 (S.D.N.Y. Mar. 3, 2009) ........................................................33

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ........................................................................20

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
  2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) ......................................................32

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
  643 F. Supp. 2d 366 (S.D.N.Y, 2009),
  *aff'd*, 592 F.3d 347 (2d Cir. 2010) ..............................................................34, 35

*Morrison v. Nat'l Austl. Bank Ltd.*,
  130 S. Ct. 2869 (2010) .......................................................................... *passim*

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) .................................................................................32

*N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*,
  2011 WL 1338195 (S.D.N.Y. March 31, 2011) ....................................................36

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .........................................................................22, 23

*One Commc'ns Corp. v. JP Morgan SBIC LLC*,
  381 F. App'x 75 (2d Cir. 2010) ..........................................................................31

*Owens v. Gaffken & Barriger Fund, LLC*,
  2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) .....................................................37

*Patrowicz v. Transamerica HomeFirst, Inc.*,
  359 F. Supp. 2d 140 (D. Conn. 2005) .................................................................12

*Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  2006 WL 1982789 (S.D.N.Y. July 12, 2006) ......................................................12

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ......................................................................................34, 35

*Rich v. Maidstone Fin., Inc.*,
  2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) .......................................................21

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) .............................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

*Ross v. Walton*,
  668 F. Supp. 2d 32 (D.D.C. 2009).................................................................................27

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  351 F. Supp. 2d 334 (D. Md. 2004).................................................................................27

*S. Cherry Street, LLC v. Hennessee Group LLC*,
  573 F.3d 98 (2d Cir. 2009)...........................................................................................20

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996)............................................................................................30

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977).....................................................................................................31

*Schoenhaut v. Am. Sensors, Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997) ...............................................................................33

*SEC v. Cohmad Sec. Corp.*,
  2010 WL 363844 (S.D.N.Y. Feb. 2, 2010).....................................................................27

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996)........................................................................................35

*Sgalambo v. McKenzie*,
  739 F. Supp. 2d 453 (S.D.N.Y. 2010)............................................................................11

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994).....................................................................................20, 21

*In re Sierra Wireless, Inc. Sec. Litig.*,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007)............................................................................30

*Steed Fin. LDC v. Laser Advisers, Inc.*,
  258 F. Supp. 2d 272 (S.D.N.Y. 2003)............................................................................36

*Steinberg v. Ericsson LM Tel. Co.*,
  2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008),
  *aff'd sub nom. Fuhrer v. Ericsson LM Tel. Co.*,
  363 F. App'x (2d Cir. 2009) .........................................................................................36

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006)..........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................6, 20, 24, 25

*In re Towers Fin. Corp. Noteholders Litig.*,
  1995 WL 571888 (S.D.N.Y. Sept. 20, 1995)...........................................................................11

*In re Verifone Holdings, Inc. Sec. Litig.*,
  2011 WL 1045120 (N.D. Cal. Mar. 2011).................................................................................25

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
  344 F. App'x 717 (2d Cir. 2009) ................................................................................5, 23, 27

*Weiss v. Priceline.com, Inc.*,
  330 F. App'x 230 (2d Cir. 2009) .............................................................................................25

*Wilson v. Saintine Exploration & Drilling Corp.*,
  872 F.2d 1124 (2d Cir. 1989).............................................................................................34, 35

*In re WorldCom, Inc. Sec. Litig.*,
  2003 WL 23174761 (S.D.N.Y. Dec. 3, 2003) ........................................................................24

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003).....................................................................................28

*In re Yukos Oil Co. Sec. Litig.*,
  2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) .........................................................................37

*Zirkin v. Quanta Capital Holdings Ltd.*,
  2009 WL 185940 (S.D.N.Y. Jan. 23, 2009) ...........................................................................33


**Statutes and Rules**:

15 U.S.C. § 77k................................................................................................................................31

15 U.S.C. § 77l.................................................................................................................................31

15 U.S.C. § 78u-4 ....................................................................................................................20, 21

15 U.S.C. § 77o................................................................................................................................35, 36

15 U.S.C § 78t................................................................................................................................35

17 C.F.R. § 240.13a-15....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Other Authorities</u>**:

Michael R. Young, Accounting Irregularities and Financial Fraud: A Corporate
Governance Guide (3d ed. 2006) ............................................................................16

Office of the Chief Accountant, SEC, May 16 2005 Staff Statement on Management's
Report on Internal Control Over Financial Reporting, *available at*
http://www.sec.gov/info/accountants/stafficreporting.htm......................................18

SEC Commissioner Harvey J. Goldschmid, *Post-Enron America: An SEC Perspective*
(Dec. 2, 2002), *available at* www.sec.gov/news/speech/spch120202hjg.htm........................18

Defendants, former directors of Satyam Computer Services Ltd. ("Satyam" or the "Company"), submit this memorandum in support of their motion to dismiss the claims asserted against them in the First Amended Consolidated Class Action Complaint ("FACC") pursuant to Rules 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act ("PSLRA").[1]

The Directors had moved to dismiss plaintiffs' original complaint because it failed to plead facts sufficient to state a claim.  However, after defendants' motions had been fully briefed, plaintiffs announced that they had received thousands of pages of documents (the "Documents") from Satyam, including e-mails between Satyam and its independent outside auditors at PricewaterhouseCoopers ("PwC"), in both India and the United States, and the Court granted plaintiffs leave to amend their complaint based on what these Documents supposedly disclosed.  Notably, however, while the Satyam Documents enabled plaintiffs to augment their claims against Satyam's former top managers and outside auditors -- who plaintiffs contend perpetrated an elaborate and carefully concealed fraud directed not only at investors, but also Satyam's Directors -- the FACC confirms plaintiffs' inability to plead facts stating any claims against the Directors.  No facts are pled indicating that any Director was ever involved in, aware of, ignored or benefited from any such wrongdoing.  To the contrary, the FACC flat-out controverts even a plausible (much less compelling) inference of Director knowledge or

---

[1] The moving directors are Mangalam Srinivasan, Ram Mynampati, M. Rammohan Rao, T.R. Prasad, V.S. Raju ("V. Raju"), and Krishna G. Palepu.  Another director, Vinod K. Dham, also is moving to dismiss and is filing a separate brief raising arguments unique to him.  All such defendants are referred to collectively as "the Directors."  All Directors join in the arguments in this brief, although (i) Messrs. Dham and Mynampati, who were never on the Audit Committee, are named only in the Counts asserting claims under the Securities Act of 1933 ("Securities Act"); and (ii) Messrs. Prasad and V. Raju, who never signed any registration statements, are named only on the claims under the Securities Exchange Act of 1934 ("Exchange Act").  The Directors also have moved to dismiss certain claims and submitted a separate brief in light of the Supreme Court's *Morrison* decision.  The Directors reserve their right to join in any motion to dismiss on the grounds of *forum non conveniens* that may be filed by other defendants in this action.

involvement:  its detailed factual allegations lead inescapably to the inference that the Directors had no notice of the fraud that management concocted and concealed and that outside auditors either participated in or did not themselves see (or alert the Directors to).  Moreover, the only plaintiff who asserts claims under the Securities Act does not -- and cannot -- plead that he acquired any securities under the employee option plans on which his claims are based.  In these circumstances, the FACC should be dismissed with prejudice as against the Directors.

## PRELIMINARY STATEMENT

Satyam is an information technology company headquartered in Hyderabad, India.  Its stock is traded on the National Stock Exchange of India and the Bombay Stock Exchange; only its American Depositary Shares ("ADSs") are traded in the U.S., on the New York Stock Exchange ("NYSE").

On January 7, 2009, Satyam's founder and then Chairman of its Board of Directors, B. Ramalinga Raju ("B.R. Raju"), sent a letter of resignation to the Board, confessing to having carefully orchestrated and concealed a $1 billion fraud, with the help of a few senior officers.  His letter admitted that he and his confederates booked phony revenue, created false invoices, falsified and forged bank statements and concealed liabilities.  The FACC purports to quote from B.R. Raju's resignation letter but excises his point-blank statement that the Directors were *not* aware of or involved in any wrongdoing.  The Board promptly and publicly disclosed B.R. Raju's letter.  Indian regulatory authorities immediately commenced investigations; and B.R. Raju and two other Satyam executives, as well as two of the Company's outside auditors from PwC, have been jailed.

This consolidated securities class action followed the Board's disclosure of B.R. Raju's letter.  Defendants now include Satyam, B.R. Raju and other senior executives, certain allegedly B.R. Raju-affiliated entities, the Indian and U.S. affiliates of PwC and the Directors.

Plaintiffs assert claims against the Directors under §§ 10(b) and 20(a) of the Exchange Act and (as to plaintiff Adams only) §§ 11, 12(a)(2) and 15 of the Securities Act.

The bulk of the 155-page FACC is devoted to describing, in considerable detail, the fraudulent actions that B.R. Raju and other senior finance officers.  For example, it alleges that management created 7,561 false invoices representing non-existent business contracts; "maintained two sets of books, one reflecting the sales figures inflated by the false invoices and the other reflecting the true sales figures"; and inflated income by forging "bank statements, bank confirmation letters, and letters describing nonexistent fund transfers for the various banks at which Satyam held accounts."  FACC ¶¶ 91, 96, 98.  To conceal the hole in the balance sheet, Raju even put money back into Satyam through loans that were carefully disguised as "cash proceeds" in payment of phony invoices, thereby understating Satyam's liabilities.  *Id.* ¶¶ 6, 116. The FACC further alleges that two outside auditors personally (and the two PwC firms) were complicit in, or did not detect, the fraud.

The pleading as to the Directors, by contrast, is starkly different and patently insufficient.  Although the FACC contains conclusory, boilerplate allegations that all defendants knowingly misrepresented Satyam's financial condition, plaintiffs are seeking to hold liable five of the Directors -- not all of whom even were on the Board or the Audit Committee throughout the alleged five year class period, but who served on the Audit Committee at any time during that period -- for fraud under Rule 10b-5, simply by virtue of their status as directors and/or Audit Committee members.  Plaintiffs do not allege that any of the Directors drafted or signed any of the allegedly false or misleading Annual Reports on Form 20-F or quarterly reports on Form 6-K; and Directors Prasad and V. Raju did not sign the registration statements, either.  Even after receiving from Satyam the kind of discovery that usually only follows a legally sufficient

Case 1:09-md-02027-JPO   Document 271   Filed 04/18/11   Page 14 of 49

pleading, plaintiffs have not pled (and cannot plead) any facts demonstrating, or even plausibly

suggesting, that any Director had any role in, knew of, benefited from or was on notice of (but

recklessly ignored) the fraud.  Such shortcoming is confirmed by the FACC purporting to quote

from B.R. Raju's resignation letter, but carefully omitting his point-blank statement that the

Directors were *not* aware of or involved in any wrongdoing.

   In asserting claims against the Audit Committee members, the FACC (¶¶ 239,

240) cites Satyam's public documents discussing the Audit Committee's role.  These documents,

however, delineate the limited, oversight role of the Audit Committee, and confirm that its

members do not create, prepare, conduct audits or engage in forensic examinations of the

Company's books and records.  To the contrary, they are expressly entitled to rely on

management and the outside auditors for these functions.  The FACC confirms that Satyam's

auditors gave the Audit Committee "clean opinions" every year.  Satyam's Documents served

only as further confirmation that the Audit Committee never was apprised of any wrongdoing.

   The claim of fraud against the Directors here thus is not even "plausible."  And

there certainly are no facts giving rise to a strong, cogent or compelling inference of scienter on

the part of the Directors, much less one that a reasonable person "would" -- and not merely

"could" -- conclude was at least as strong as the inference of non-fraudulent conduct, as required

for a § 10(b) claim.  The only plausible inference is that management deceived the Directors

through an elaborate fraud as to which the outside auditors either were complicit or were

innocently duped, or negligent (or reckless) in failing to uncover or report.  In such

circumstances, § 10(b) claims against the Directors must be dismissed.

   As one court held, even before *Tellabs*, in dismissing securities fraud claims

against outside directors, while letting claims proceed against management: the "same

4

allegations that serve substantially to satisfy the pleading requirements as against [the officer defendants] -- namely, the double accounting system . . . weigh against a 'strong inference'" that the directors "were aware of the fraud, since the double system of accounting books and records" that management "meticulously crafted left no 'paper trail or transaction trail.'"  *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001).

Courts have repeatedly dismissed § 10(b) claims against directors and audit committee members arising out of accounting fraud, including where officers of those companies (such as Enron, WorldCom and Adelphia) are serving lengthy prison sentences.  The Second Circuit recently affirmed dismissal of § 10(b) claims against a company's outside auditor itself, precisely because the allegations of fraud depicted "a tightly-held secret only a few managers knew of," making it "more plausible" and "more compelling" to conclude that the auditor was a victim of the fraud, rather than that it "recklessly failed to discover" the fraud.  *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 720 (2d Cir. 2009).  Point 1.

Moreover, the only plaintiff (Adams) who has also asserted Securities Act claims (and who purportedly represents two sub-classes of employees who exercised options to acquire Satyam securities) has failed to plead facts establishing standing or stating a claim under either Act.  As discussed below, the Securities Act claims relate only to securities granted under two "RSU" employee option plans.  But Adams does not and cannot plead facts establishing that he ever exercised employee options and acquired any Satyam securities under either of those plans. In addition, though Adams purports to disclaim his fraud-based allegations in his § 11 count, he incorporates all of those allegations by reference; thus, his supposed Securities Act claims proceed on the same theory as his Exchange Act claims (*i.e.*, that Satyam's financial statements were intentionally false): accordingly, the § 11 claims sound in fraud; and like plaintiffs' § 10(b)

claims, they do not satisfy the pleading requirements of Rule 9(b) and the PSLRA.  Point II.A-B. Adams' § 12 claims also fail because he pleads no fact showing that any Directors sold any securities within the meaning of that statute.  Point II.C.

Finally, the secondary liability claims against the Directors as "control persons" under § 15 of the Securities Act (assuming a Securities Act claim were stated) and § 20(a) of the Exchange Act fail: plaintiffs have not pled facts that, if true, would show that the Directors were either control persons of Satyam or "culpable participants" in wrongdoing.  Rather, the facts pled controvert any suggestion of either control or culpable participation.  Point III.

## STATEMENT OF FACTS[2]

### A.     The Parties

#### 1.     Plaintiffs

Plaintiffs Mineworkers' Pension Scheme, SKAGEN AS and Sampension KP Livsforsikring A/S are foreign investment funds, and Plaintiff International Brotherhood of Electrical Workers Local Union #237 ("IBEW") is a U.S. pension fund, that purchased Satyam ADSs on the NYSE between January 6, 2004 and January 9, 2009 (the "Class Period").  FACC ¶¶ 18-21.  Plaintiff Public Employees' Retirement System of Mississippi ("MPERS") is a U.S. pension fund that purchased Satyam ordinary shares on Indian exchanges.  *Id.* ¶ 17.  The Directors have moved to dismiss MPERS' claims under *Morrison v. National Australia Bank*

---

[2] This discussion is taken from the factual allegations of the FACC and documents attached or referenced therein, as well as documents of which the Court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  On this motion, the Court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  But courts are not required to assume the truth of "'legal conclusion[s] couched as . . . factual allegation[s],'" or to draw unreasonable inferences from plaintiffs' mere conclusions, characterizations and spin.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The exhibits ("Ex. __") cited herein are attached to the accompanying Declaration of Evert J. Christensen, Jr.

*Ltd.*, 130 S. Ct. 2869 (2010), in a separate brief.

Plaintiff Brian Adams ("Adams") -- the only plaintiff asserting claims under the Securities Act -- claims to be a former employee of Satyam and "a participant both in Satyam's Associate RSU (ADS) Option Plan and its Associate Ordinary Option Plan-RSU Plan."  FACC ¶ 22.  Adams asserts that, during the Class Period, he "and the other Sub-Class members . . . acquired Satyam options through at least *one* of the Company's employee option plans," but he concededly acquired only Satyam ADSs.  *Id.* ¶¶ 23, 342 (emphasis added).  Moreover, Adams conspicuously does not plead any facts showing: [i] what options he acquired or when; [ii] whether (and under which plans) he even exercised any such options; or [iii] whether he held or sold any securities, or if he thereby suffered a loss.  He does not because, as discussed in the Directors' *Morrison* brief (and incorporated here by reference), Adams' own documents establish that he exercised employee options only under one plan -- the ASOP ADS Plan (FACC ¶¶ 340(c), 342) -- not any RSU plan, which are the only two employee option plans as to which he purports to assert Securities Act claims.[3]

### 2.   Defendants

#### a.  Satyam

Satyam is incorporated and headquartered in India, and provides "global IT and business process outsourcing services to clients . . . throughout the world."  FACC ¶ 24.  While plaintiffs liken Satyam to WorldCom, Enron, Global Crossing and Parmalat, Satyam has never filed for bankruptcy and remains publicly owned.  Satyam recently settled charges by the SEC, as well as plaintiffs' claims against it.

---

[3] The Directors also have moved to dismiss Adams' claims under *Morrison*, because he cannot state a securities law claim:  the option exercise notices and underlying option plan documents upon which he bases his claims reflect that his acquisition of ADSs took place in India in direct one-on-one transactions with Satyam.

### b.  The Officer Defendants

Three of Satyam's "Officers" (defendants B.R. Raju, Rama Raju and Vadlamani Srinivas), have been incarcerated in India since January 2009.

(i)     B.R. Raju, a pioneer of the information technology industry in India, founded Satyam in 1987 and was Chairman of the Board throughout the Class Period. FACC ¶ 27.  B.R. Raju won several awards and honors, including Ernst & Young Entrepreneur of the Year for Services in 1999, Dataquest IT Man of the Year in 2001, CNBC's Asian Business Leader - Corporate Citizen of the Year award in 2002 and the E&Y Entrepreneur of the Year Award in 2007.  Ex. 1 at 58.

(ii)    B.R. Raju's brother, Byrraju Rama Raju ("Rama Raju"), was Satyam's Managing Director and CEO throughout the Class Period.  FACC ¶ 28.

(iii)   Vadlamani Srinivas was CFO throughout the Class Period and was "a member of the Institute of Chartered Accountants of India."  FACC ¶ 30.

Plaintiffs plead that B.R. Raju and Rama Raju -- not the Directors -- "had direct operational control over *all* aspects of the Company's affairs at *all* relevant times."  FACC ¶¶ 27, 28 (emphasis added).  The FACC's detailed facts about the creation, orchestration and concealment of the fraud so confirm.  Plaintiffs allege that other Satyam executives, not named as defendants, were "recruited by the Officer Defendants to execute the mechanics of the Satyam fraud at their direction."  FACC ¶¶ 62-65.  The Rajus -- not the Directors -- allegedly benefited from the fraud through stock sales and dividends, and by diverting Company funds to themselves.  FACC ¶¶ 118-123, 105-114.

### c.  The Maytas Defendants

B.R. Raju's confession was precipitated by the cancellation of his proposed acquisition by Satyam of two real estate entities allegedly "controlled by" him (Maytas Infra and Maytas Properties) -- allegedly in an effort to conceal the fraud.  FACC ¶¶ 8, 32.

### d.  The "PwC Audit Team"

Satyam had engaged the international audit firm of PricewaterhouseCoopers as its

outside auditor, to "provide independent auditing . . . services, including the examination and/or review of Satyam's . . . financial statements."  FACC ¶ 40.  The "PwC Audit Team" that performed Satyam's audits included Defendants Price Waterhouse, PricewaterhouseCoopers Private Limited and Lovelock & Lewes (collectively, "PwC-India") -- the Indian affiliates of Defendant PricewaterhouseCoopers International ("PwC-IL") -- as well as PwC-IL's highly-regarded U.S. affiliate, "Big Four" accounting firm PricewaterhouseCoopers LLP ("PwC-US").  FACC ¶ 48.  Two partners on the PwC Audit Team (Gopalakrishnan and Talluri), who were affiliated with PwC-India and who "were primarily responsible for conducting Satyam's outside audits" (FACC ¶ 66), are not named as defendants here in their individual capacities, but are presently on trial in India on criminal charges relating to their roles in the Officers' fraudulent scheme.  FACC ¶ 66.  The FACC alleges that the Indian Central Bureau of Investigation ("CBI") concluded that these individuals were "complicit" in the Officer Defendants' fraud.  FACC ¶¶ 66, 70.  The SEC recently imposed on PwC-India what it described as the largest penalty ever imposed on a foreign audit firm.

### e.   The Directors

        In sharp contrast to the allegations against the Officers, the FACC conspicuously does not plead any facts showing (nor does it even assert) that the Directors knew of, participated in or benefited from the fraud in any way.  As is evident from the FACC, not all of the Directors were on the Audit Committee, or even on the Board itself, for the entire Class Period.  The FACC (¶¶ 50-54) names five former directors who at some time were on the Audit Committee (the "Audit Committee Defendants"):

> (i)   Mangalam Srinivasan was appointed to the Board in 1991.  She was one of the first women to be invited as a fellow to Harvard University's Center for International Affairs; and she has been an advisor to and a distinguished fellow of the Harvard University Kennedy School of Business, an adviser to Indira Gandhi,

and a consultant to the United Nations on corporate social responsibility. She
resigned from the Board on December 25, 2008, after the Board called off the
proposed Maytas acquisition -- before B.R. Raju disclosed his fraud. FACC ¶ 50.

(ii)   Krishna G. Palepu was appointed to the Board in 2003 and was a member of the
Audit Committee only from July 2003 through July 2005. Dr. Palepu is Professor
of Business Administration at the Harvard Business School, where he also holds
the title of Senior Associate Dean, Director of Research. Dr. Palepu resigned
from the Board on December 29, 2008. FACC ¶ 51.

(iii)   M. Rammohan Rao was appointed to the Board in 2005 and was a member of the
Audit Committee from 2006 through 2008. He was the Dean of the Indian School
of Business and also taught at the N.Y.U.'s Stern School of Business. He
resigned from the Board on December 29, 2008. FACC ¶ 52.

(iv)   T.R. Prasad was appointed to the Board in 2007 and was a member of the Audit
Committee in 2007 and 2008, served as the Cabinet Secretary and Defense
Secretary of the Government of India and was a member of the Finance
Commission of India. Mr. Prasad ceased to be a member of the Board on January
7, 2009. FACC ¶ 53.

(v)   V.S. Raju (who is not related to B.R. Raju) was appointed to the Board in April
2007 and was a member of the Audit Committee in 2007 and 2008. He is a
Former Director at the Indian Institute of Technology–Delhi; Dean and Professor
at the Indian Institute of Technology–Madras; and was a Member of the Telecom
Regulatory Authority of India. Mr. Raju ceased to be a member of the Board on
January 7, 2009. FACC ¶ 54.

The FACC (¶¶ 56-57) also names two other Directors as defendants -- Messrs.

Dham and Mynampati, who joined the Board in 2003 and 2006, respectively -- but solely as to

the Securities Act claims. Neither served on the Audit Committee at any time.

B.     **The Officers' Fraudulent Scheme**

On January 7, 2009, Satyam's founder and Chairman of the Board, B.R. Raju,

sent a letter of resignation to the Board, confessing that he had orchestrated a massive fraud by

systematically overstating the Company's profits and understating its liabilities through the

creation of thousands of phony invoices, forgery of bank statements, keeping two sets of books

and disabling computers. Approximately $1 billion of assets on Satyam's balance sheet were

non-existent. FACC ¶¶ 78, 79. The letter expressly exculpated the Board: "None of the board

members, past or present, had any knowledge" of any wrongdoing. Ex. 2 ¶ 4. The Board immediately disclosed the letter. Ex. 3. The price of Satyam's stock and ADSs promptly dropped. FACC ¶ 80.

The FACC details at length the roles played by the Officers and their non-defendant confederates -- but no Director is mentioned even once in the more than 50 paragraphs describing the fraud. FACC ¶¶ 62-65, 70-84, 86-123. Plaintiffs do not allege, nor could they, that any Directors knew of or participated in any scheme; prepared or signed a Form 20-F or 6-K; knowingly or recklessly made or participated in making any false or misleading statements; or took a nickel of unauthorized funds. As Satyam stated in its Wells Submission to the SEC: "[t]he fraudulent conduct at Satyam did not pervade the corporation. It was isolated to a very small group -- allegedly fewer than 10 people -- in a corporation with 53,000 employees." Ex. 4 at 18.[4] Plaintiffs' conclusory allegations that the Directors supposedly "should have, and but for their recklessness would have" been able to detect the fraud (FACC ¶ 241) are contradicted by the detailed fact allegations that (i) the Officers went to extraordinary lengths to conceal their fraud from the Directors, and (ii) the PwC Audit Team never informed the Directors of it. Specifically, the FACC alleges:

### The Fabricated Invoices, Deleted Records and Two Sets of Books

- To inflate Satyam's income, the Officers directed the Assistant Manager of Finance, S. Chetkuru, to create hundreds of millions of dollars of false invoices for "non-existent customer projects" and contracts. FACC ¶¶ 73, 91.

---

[4] The Wells Submission was among the Documents produced to plaintiffs and which form the basis of the FACC. *See* FACC pp. 1-2. The Court thus may consider the Wells Submission on this motion. *Sgalambo v. McKenzie,* 739 F. Supp. 2d 453,470 n.68 (S.D.N.Y. 2010) (a court may consider "any document possessed by or known to the plaintiffs and upon which it relied in bringing the suit" on a motion to dismiss, without converting it to a summary judgment motion); *see also In re Towers Fin. Corp. Noteholders Litig.*, 1995 WL 571888, at *12 (S.D.N.Y. Sept. 20, 1995) (considering Wells submissions to be "sufficiently integral to the complaint's allegations" on a motion to dismiss).

- With the help of employees, Chetkuru created more than 7,500 false invoices. He then "took steps to cover up the falsification of invoices" by "instruct[ing] Satyam technical experts to manipulate the source code, or programming, of Satyam's invoice management system to create a mechanism that would permit him and his employees to hide the fake invoices they had created from discovery by other users" and "assur[ing] that it would be difficult for anyone to discover the phony invoices." He also "instructed his subordinates to delete any electronic records that could prove the falsification of invoices and to reverse certain entries in the inventory system." *Id.* ¶¶ 91, 92.

- "Satyam's then-senior management provided certain employees with an administrative or 'super user' login identification and password in order to access the invoice management system to record the false invoices. The 'super user' login ensured that the invoices would be used in the calculation of revenue, but concealed the existence of the invoices from the heads of Satyam's business units who would recognize that the services reflected on the invoices had never been provided by their units and/or that their units had not done business with certain customers included on the fake invoices." *SEC v. Satyam Computer Servs.*, (No. 1:11-CV-00672) (D.D.C. Apr. 5, 2011). Ex. 5 ¶ 20.[5] "From 2003 through September 2008 . . . certain Satyam employees working at the directions of then-senior management generated on average 100 to 200 fake invoices per month in Satyam's invoice managing system." *Id.* ¶ 21.

- The Officers "maintained two sets of books, one reflecting the sales figures inflated by the false invoices and the other reflecting the true sales figures." FACC ¶ 96.

- "Defendant [CFO] Srinivas created minutes showing that a Trust Meeting was held to authorize the allotment" of shares to employees "who assisted in the creation of fake invoices," but "no such meeting ever occurred." FACC ¶ 94.

- The Officers put thousands of "ghost employees" on the company's books, and the salaries of those employees were funneled to the Rajus through "*secret* accounts." FACC ¶ 74 (emphasis added).

**The Officers Forged Bank Documents to Conceal the Fabricated Invoices**

- The Officers "created sham earnings by falsifying invoices" and "caused receipts of deposit and numerous other bank documents reflecting fraudulent deposits by Satyam to be forged and maintained in the Company's records." FACC ¶ 97.

---

[5] The Court may "take judicial notice of the pleadings, orders, and judgments in [another] litigation related to this instant case." *Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2006 WL 1982789, at *2 (S.D.N.Y. July 12, 2006) (citing *Patrowicz v. Transam. HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)).

- The Officers falsified "numerous other bank documents reflecting fraudulent deposits" (FACC ¶ 97) by directing Vice President of Finance, Ramakrishna, to prepare "forged documents, including Fixed Deposit Receipts ("FDRs"), bank statements, bank confirmation letters, and letters describing non-existent fund transfers for the various banks at which Satyam held accounts." *Id*. ¶ 98.

**Secret Related-Party Loans to Further Conceal the Fraud**

- The Officers "secured hundreds of millions of dollars in loans" that were never "properly designat[ed] . . . as loans" but were instead booked as "cash proceeds" on financial statements, thereby understating Satyam's liabilities. FACC ¶¶ 6, 115-117. These "*secret* loans to Satyam" were arranged by the Officers "through intermediaries they controlled." *Id*. ¶ 115 (emphasis added). The Officers also "*secretly* caused Satyam to repay approximately $40 million of these loans." *Id*. ¶ 117 (emphasis added).

- The "secret . . . related party loans were routed through a series of cover companies established in the names of Defendants Ramalinga Raju and Rama Raju." FACC ¶ 75.

**Money Laundering Through Real Estate Transactions**

- "Between 1999 and 2008, members of the Raju family created a network" of 327 "secret companies . . . in furtherance of a scheme to use Satyam cash to acquire large tracts of land . . . for the personal benefit of the Raju family." FACC ¶ 105.

- "Defendants Ramalinga Raju, Rama Raju, certain members of the Raju family, and their instrumentality, Defendant Maytas Infra," were "perpetrating this massive fraud, using fabricated invoices, forged bank documents, and undisclosed related party loans." FACC ¶ 118.

- Another of Raju's brothers thereafter instructed his aide to "stash[]" documents related to the *secret* real estate deals "in six places" keeping "the keys of the safes containing the documents with him and constantly mov[ing] the documents around to avoid detection." FACC ¶ 108.

The purpose and effect of all of these elaborate steps was to allow B.R. Raju and

his confederates to conceal their fraud from both investors and Satyam's Directors.

### C.    The Regulatory Investigations

After B.R. Raju sent his resignation letter, several Indian government agencies,

including the CBI and the Serious Fraud Investigation Office ("SFIO"), probed the situation.

The FACC repeatedly refers to these investigations, which flat-out assert involvement in the

fraud by senior management and two outside auditors (FACC ¶¶ 69, 85, 102, 106) -- but it fails to note that these agencies have not brought charges against any Director asserting involvement in the fraud in the two years since B.R. Raju's confession.  Consistent with B.R. Raju's letter, the SFIO reportedly concluded in its 14,000 page report that the Directors were *not* involved in or aware of the accounting fraud and, in fact, "were kept in the dark" by B.R. Raju and other top executives.  Ex. 6.

Plaintiffs allege that Indian regulators supposedly named the Audit Committee members as defendants in SFIO complaints -- but plaintiffs do not quote from, and instead mischaracterize, the complaints.  FACC ¶ 85.  In fact, the Committee members are *not* accused of either "exaggeration of balance sheets," "deceiving shareholders," "taking huge benefits and dividends as directors" or "showing unpaid dividends as paid," much less of any involvement in the wrongdoing at issue here.  *Id.*  To the contrary, Directors Srinivasan, Rao, V. Raju and Prasad have been named in only *one* SFIO complaint, charging only that Satyam's annual reports did not comply with a technical requirement of Section 217(2A) of the Indian Companies Act (Ex. 7), which required that a list of employees drawing remuneration above a certain amount, along with their familial relation to other directors or officers, be attached.  *See id.* (SFIO Complaint ¶ 10).  Apart from being utterly irrelevant to the claims here at issue, these charges are meritless, and the Audit Committee members intend to defend on numerous grounds, including (among others) that (i) not only was the filing made with the 2008 annual report, but it is publicly available, and (ii) any alleged prior failure to file (which they likewise dispute) would be well beyond the applicable one-year statute of limitations.  Director Palepu is named in a separate complaint pertaining to his having been awarded compensation pursuant to a Board vote disclosed to shareholders, rather than through the alternative of seeking governmental approval,

which similarly has no relevance to the claims at issue here.[6]

D.      The Allegations as to the PwC Audit Team

"The PwC Audit Team was assembled so that it could assure the SEC and investors that the Company's filings on Forms 20-F and 6-K and other Satyam filings were fully audited and reviewed in accordance with US auditing standards and were prepared using US accounting standards."  FACC ¶ 137.  The FACC devotes over 100 paragraphs to the alleged "constant collaboration," "hundreds of emails" and "regular[]" telephone calls between PwC-India and PwC-US relating to the Satyam audits.  FACC ¶¶ 144-150.  According to the FACC (¶ 160), PwC-US "regularly reviewed and approved US GAAP accounting issues on behalf of Satyam," "rewrote" Satyam audit opinions drafted by PwC-India (¶ 163) and PwC-India routinely "deferred to and sought continuing input from" PwC-US (¶ 162).  Plaintiffs plead that "the PwC Audit Team was . . . aware of many . . . red flags" (alleged at ¶¶ 210-237) and "brushed the weaknesses aside, deeming them immaterial."  FACC ¶ 197.

The FACC does not allege that PWC alerted the Directors to any wrongdoing.  To the contrary, although the FACC (¶ 242(c)) alleges that the PwC Audit Team "suggested text for a presentation to the Audit Committee" concerning alleged internal control deficiencies, it conspicuously does not allege that any such presentation was ever made to the Audit Committee. Rather, plaintiffs plead that PwC deemed such control deficiencies "immaterial" (¶ 197); they

---

[6] In any event, unadjudicated allegations in one case cannot be used to support an inference of wrongdoing in another.  *See, e.g.*, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976) (references in plaintiffs' complaint to allegations made by SEC in a separate action were immaterial and could not be used to prove liability); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking as immaterial plaintiffs' allegations relying on SEC's complaints); *Dent v. U.S. Tennis Ass'n, Inc.*, 2008 WL 2483288, at *3 (E.D.N.Y. June 17, 2008) (because "unproved allegations of misconduct are not proof of anything," courts "have stricken allegations in complaints referring to investigations of allegations of wrongdoing, even when conducted by governmental agencies").

were *not* brought to the attention of the Audit Committee; and "the PwC Audit Team failed to include a disclosure regarding the control deficiencies in its audit reports and instead issued *unqualified* audit opinions."  FACC ¶¶ 197, 200.  (emphasis added).

A report by the CBI also "confirms that the PwC Audit Team 'did not comment on these control deficiencies in its Audit report . . . .'"  FACC ¶ 198.  The SEC recently concluded: "As a result [of a host of audit failures], PW India was a cause of Satyam's failure to file and furnish annual and other reports to the Commission that were complete and accurate in all material respects . . . ."  Ex. 8 ¶ 53 (SEC Order, April 5, 2011).

### E.    The Allegations As To The Audit Committee

Plaintiffs do not and cannot allege that it is the province of an audit committee to conduct forensic accounting examinations to detect whether documents have been counterfeited or computer systems disabled.  Rather, an audit committee is entitled to rely on the outside auditor to perform the audit, as well as on the representations of management.[7]  The FACC concedes that the Committee's role is oversight, including over the outside auditors who actually conduct audits and issue opinions on the financial statements and internal controls.  FACC ¶¶ 239, 240.  "[T]he audit committee's function is only one of oversight.  Its mission is to oversee the system, not to actually run it.  Running the system is, and as a practical matter has to be, the responsibility of the CEO, CFO, and those that report to them."[8]

Satyam publicly disclosed that management -- not the Audit Committee -- was responsible (i) for preparing the financial statements, in conformity with generally accepted

---

[7] Indeed, Satyam publicly disclosed (as permitted for a "foreign private issuer") that none of the Audit Committee members was a "financial expert" within the meaning of Sarbanes-Oxley.  Ex. 1 at 87; Ex. 9 at 69.

[8] Michael R. Young, Accounting Irregularities and Financial Fraud: A Corporate Governance Guide at 81 (3d ed. 2006).

accounting principles ("GAAP"), and (ii) "for establishing and maintaining adequate internal control over financial reporting."[9]  The outside auditors' reports expressly confirm that they -- not the Audit Committee -- were responsible to plan and perform audits pursuant to GAAP, and generally accepted auditing standards, and to obtain a reasonable assurance that the financial statements were free of material misstatements.[10]

For these reasons, the FACC asserts only conclusory, boilerplate characterizations as to the Audit Committee's supposedly "reckless discharge of their duties."  FACC ¶ 55.  Plaintiffs do not plead any facts (as opposed to self-serving characterizations) establishing that the Audit Committee failed to discharge its assigned duties, much less that any member of the Audit Committee, at any time, acted so recklessly as to rise to the level of scienter.  Nothing is pled controverting the publicly disclosed fact that the Audit Committee reviewed the quarterly financial statements, the performance of statutory and internal auditors and the adequacy of the internal control statements.[11]  Instead, the FACC explicitly alleges that Officer Defendants colluded to prevent the Audit Committee from discovering their fraud, by overriding internal controls and acting in concert with certain employees of Satyam and possibly even members of the PwC Audit Team.  The Directors, including those who were members of the Audit Committee, reasonably relied on the PwC Audit Team, which issued "unqualified audit opinions" year after year.  FACC ¶ 200.  Indeed, prior to B.R. Raju's confession, the Public Company Advisory Oversight Board reportedly examined the PwC audit of Satyam and apparently did not raise any issue of significance.  Ex. 12.

---

[9] Ex. 1 at 86, 87; Ex. 9 at 69.

[10] Ex. 1 at F-2; Ex. 10 at F-2.

[11] As stated in Satyam's supplemental Wells Submission, the Company also employed an internal auditor, though it "was not even required to have [one]."  Ex. 11 at 12.

Apart from B.R. Raju's resignation letter (which exonerates the Directors, including those on the Audit Committee), the only other contemporaneous documents cited in the FACC are unidentified "management letters" from PwC, supposedly setting out "hundreds of internal control deficiencies in 2007 and 2008."  FACC ¶ 242(c).[12]  But the contents of these letters are not quoted in the FACC; and none of the deficiencies (let alone their materiality) are identified, much less connected to the wrongdoing by management here alleged.  *Id.*  More important, the FACC does not allege that the Committee failed to meet regularly with the PwC Audit Team (the author of such letters) -- or that the PwC Audit Team ever advised the Audit Committee of the fraud (or even of material errors in the financial statements or material weaknesses in internal controls).  The Court may not plausibly infer from the FACC that such advice was given to the Audit Committee, because the FACC expressly pleads that the PwC Audit Team either did not detect the fraud or that two audit partners were complicit in the fraud. FACC ¶¶ 66, 190.  Either of such fact scenarios would make any suggestion that the Audit Committee was told of, or could have discovered, the elaborate, well-concealed fraud here implausible on the face of the pleading.  As a former Commissioner of the SEC noted, even "[a]n active audit committee will not, when acting alone, be able to catch thieves in most circumstances."[13]

---

[12] The SEC recognizes that internal control over financial reporting is a "process designed by, or under the supervision of, the issuer's principal executive and principal financial officers." Exchange Act Rules, 17 C.F.R. §§ 240.13a-15(d) & (f).  Moreover, "due to their inherent limitations, internal controls cannot prevent or detect every instance of fraud.  Controls are susceptible to manipulations, especially in instances of fraud caused by the collusion of two or more people including senior management."  Office of the Chief Accountant, SEC, May 16, 2005 Staff Statement on Management's Report on Internal Control Over Financial Reporting, *available at* http://www.sec.gov/info/accountants/staffreporting.htm.

[13] SEC Commissioner Harvey J. Goldschmid, *Post-Enron America: An SEC Perspective* (Dec. 2, 2002), available at *(www.sec.gov/news/speech/spch120202hjg.htm)*.

**ARGUMENT**

**I. PLAINTIFFS' § 10(B) CLAIMS AGAINST THE AUDIT COMMITTEE DEFENDANTS SHOULD BE DISMISSED**

Plaintiffs allege that the Audit Committee Defendants violated § 10(b) and Rule 10b-5. The essence of such a claim is *scienter:* innocent error or negligence (or even gross negligence) does not suffice. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 207 (1976); *Furher v. Ericsson LM Tel. Co.*, 363 F. App'x 763, 765 (2d Cir. 2009). Plaintiffs must plead facts showing that *each* defendant (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the proximate cause of their injury. *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009); *accord*, *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 2011 WL1345097, at *12 (S.D.N.Y. Mar. 29, 2011) (Jones J.). The FACC fails to satisfy Rules 8, Rule 9(b) or the PSLRA as to the Directors.

**A. The Complaint Fails to Satisfy Rule 8 as to the § 10(b) Claim Against the Audit Committee Defendants**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint cannot survive under Rule 8(a)(2) where it "pleads facts that are 'merely consistent with' a defendant's liability" but "'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 557). Here, the facts pled show *no* knowledge, awareness, participation in or even notice of any fraud as to any Audit Committee Defendant. Rather, plaintiffs plead that outside auditors either failed to detect or were complicit in a management fraud. An inference of scienter is thus implausible.

**B. Heightened Standards Apply to Pleading Under Rule 9(b) and the PSLRA**

The § 10(b) claims against the Audit Committee Defendants should be dismissed

19

because the Complaint fails to plead scienter with the requisite particularity.  For each

misstatement alleged -- and as to *each* defendant -- plaintiff must "state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind." 15

U.S.C. § 78u-4(b)(2)(A).  "[L]abels and conclusions" are not enough.  *Twombly*, 550 U.S. at 555.

      The Supreme Court has held that for an inference "[t]o qualify as 'strong,' . . . [it]

must be more than merely plausible or reasonable -- it must be cogent and at least as compelling

as any opposing inference of nonfraudulent intent."[14]  This requires a "comparative evaluation,"

under which courts consider "not only inferences urged by the plaintiff . . . but also competing

inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314.  "[A] complaint

will survive . . . only if a reasonable person *would*" -- not just "could" -- "deem the inference of

scienter cogent and at least as compelling as any opposing inference [of non fraudulent intent]

one could draw from the facts alleged." *Id.* at 314, 324 (emphasis added).[15]

      Scienter can be established by pleading particularized facts "to show either (1)

that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial

evidence of conscious misbehavior or recklessness." *ECA,* 553 F.3d at 198.  In this case, "[w]hat

is lacking from all of [plaintiffs'] allegations are particularized facts to support the inference that

the [Directors] acted recklessly or with fraudulent intent." *Shields v. Citytrust Bancorp, Inc*., 25

---

[14] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *see also Furher*, 363 F. App'x at 765.

[15] *See S. Cherry St., LLC v. Hennesee Group LLC,* 573 F.3d 98, 110-11 (2d Cir. 2009) ("To meet the 'strong inference' standard, it is not sufficient to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent,' for that gauge 'does not capture the stricter demand Congress sought to convey in" the PSLRA) (citing *Tellabs*, 551 U.S. at 314; emphasis by the court); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239 (11th Cir. 2008) ("Notably, this test is not the same as the standard we employ for summary judgment under Fed. R. Civ. P. 56, because it asks what a reasonable person *would* think, not what a reasonable person *could* think") (emphasis added).

F.3d 1124, 1129 (2d Cir. 1994).

**C.    The Complaint Fails to Satisfy the PSLRA or Rule 9(b)**

Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  The PSLRA requires that a complaint "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  Plaintiffs, however, do not allege that any Audit Committee Defendant made any misstatements at all.  They did not sign or draft any of the allegedly false or misleading Annual Reports on Form 20-F or quarterly reports on Form 6-K. This alone requires dismissal of such claims against them. [16]  Likewise, Messrs. Prasad and V. Raju did not sign any SEC filings at all.[17]

Further, "[a] complaint may not simply 'clump[] defendants together in vague allegations' to meet the pleading requirements." [18]  Plaintiffs disregard these requirements and simply lump all of the Audit Committee Defendants with the Officers, without specifying what, if anything, each Audit Committee Defendant supposedly did as to each Form 20-F or 6-K or other documents, much less what each of them supposedly knew about the fraud, including how, where and when they learned about it.  *See*, *e.g.*, FACC ¶¶ 251-273.  Plaintiffs' undifferentiated

---

[16] *See, e.g., In re Baan Co. Sec. Litig.,* 103 F. Supp. 2d 1, 18 (D.D.C. 2000) (dismissing claims against outside directors based on alleged false statements contained, *inter alia*, in Forms 20-F and 6-K, as "plaintiffs have not alleged any specific facts illustrating the involvement of these defendants in the drafting, reviewing, or dissemination of [the company's] group published statements"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.,* 501 F. Supp. 2d 452, 479 (S.D.N.Y. 2006) ("[p]laintiffs fail to allege with particularity that the Independent Directors were sufficiently involved in the day-to-day operations" of the company or "drafting of company statements to attribute statements in unsigned documents to the Independent Directors").

[17] While Messrs. Mynampati and Dham signed a registration statement, they are not named as defendants in the § 10(b) count.

[18] *Rich v. Maidstone Fin., Inc.,* 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001) (citation omitted).

reference to "Audit Committee Defendants" (*see, e.g.*, FACC ¶¶ 84, 238, 242) further ignores the fact that different defendant directors were not on the Audit Committee -- or even the Board -- for the entire Class Period.[19]  How, for example, could a director like Mr. Prasad, who did not join the Board until 2007, be liable for alleged acts or omissions that supposedly occurred in 2004 through 2006?  In a similar vein, how could a director like Dr. Palepu, who left the Audit Committee in July 2005, be responsible for alleged acts or omissions of the Committee that supposedly occurred in subsequent years?

> **D.      No Facts are Pled Showing Motive and Opportunity to
>           Commit Fraud by Each (or Any) Audit Committee Defendant**

"In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, plaintiff must allege that [the defendant] 'benefited in some concrete and personal way from the purported fraud.'"  *ECA*, 553 F.3d at 198 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000)).  No such "concrete" benefits are pled here as to any Audit Committee members.  Plaintiffs nevertheless urge the Court to infer fraud by them because "the Satyam scandal [is] 'India's Enron'" (FACC ¶ 80).  But the securities fraud claims against Enron's audit committee members were dismissed, precisely because, as here, no facts were pled showing that those outside directors knew of or "personally benefited" from the fraud.  *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 258 F. Supp. 2d 576, 628 (S.D. Tex. 2003).  That dismissal occurred, notably, even before *Tellabs* increased plaintiffs' burden to plead a strong, cogent and compelling inference of fraud as to each defendant charged.  *See also infra* Point E.

---

[19] *See, e.g., Gurfein v. Ameritrade, Inc.,* 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006) (complaint "'may not rely upon blanket references to acts or omissions by all of the defendants'" because each defendant is "'entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged'") (citation omitted); *Leemon v. Burns*, 175 F. Supp. 2d 551, 556 (S.D.N.Y. 2001).

**E.   Plaintiffs Plead No Facts Providing Strong Circumstantial Evidence of Any Audit Committee Member's Conscious Misbehavior or Recklessness**

To plead recklessness, plaintiffs must allege facts demonstrating conduct that is "'highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"[20]  That is, plaintiff must plead facts establishing "'a state of mind approximating actual intent, and not merely a heightened form of negligence.'"  *Medis Investor Group v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 142 (S.D.N.Y. 2008) (citing *Novak*, 216 F.3d at 312), *aff'd*, 328 F. App'x 754 (2d Cir. 2009).  Where, as here, plaintiffs allege that behavior was reckless (as opposed to knowingly fraudulent), "'the strength of the circumstantial allegations must be correspondingly greater.'"  *ECA*, 553 F.3d at 199 (citation omitted).

**1.   Scienter Cannot Be Inferred From Audit Committee Membership**

Plaintiffs allege, *ipse dixit*, that the Audit Committee, on which only certain Directors served (and even then, at different times), possessed or had access to unspecified information that supposedly should have "caused them to unearth and stop the Satyam fraud." FACC ¶¶ 241, 238.  But no such information is pled -- even with the benefit of the Satyam Documents.  The fraud was revealed only after B.R. Raju voluntarily confessed -- and expressly disclaimed any knowledge by (and thus exonerated) the Directors.  *Compare* FACC ¶ 78 *with* Ex. 2.

Even where accounting scandals have culminated in corporate bankruptcies and lengthy prison sentences for management, courts repeatedly have rejected membership on an audit committee as a basis for inferring scienter.  *See, e.g.*, *Adelphia Commc'ns Corp. Sec. &*

---

[20] *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 464 (S.D.N.Y. 2008) (citation omitted), *aff'd sub nom. W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009); *see also Furher*, 363 F. App'x at 765.

*Derivative Litig.*, 2007 WL 2615928, at *5 (S.D.N.Y. Sep. 10, 2007); *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 23174761, at *4 (S.D.N.Y. Dec. 3, 2003); *Enron*, 258 F. Supp. 2d at 627.

Scienter also may not be inferred from recitations that the Audit Committee is responsible for "[o]verseeing the Company's financial reporting process" and "the adequacy" of its "internal controls with the management."  FACC ¶ 240.  If that were the law, any claim against an audit committee member could survive dismissal simply by reciting these duties -- thereby creating an exception that would swallow the rule of *Tellabs* (and even *Iqbal*), and rendering the PSLRA and Rule 9(b) meaningless.  There is no such exception, as evidenced by the numerous decisions dismissing fraud claims against audit committee members, but not company officers.[21]

In *WorldCom*, for example, the court held that plaintiffs could not plead scienter against outside directors by mere reference to their membership on the audit committee, general oversight responsibilities, or certification of false financial statements:

> The Lead Plaintiff has not pointed to any specific obligation imposed on the Audit Committee Defendants that they ignored such that it would be fair to infer that they either knew of the fraud or must have been aware of it.  There is no allegation, for instance, that the Audit Committee Defendants did not communicate and meet with Internal Audit, or that they never received or reviewed information about the auditing work performed by Internal Audit. Instead, the Amended Complaint describes what the Audit Committee Defendants might have learned if they had done a better job or if they had been more aggressive or diligent. Section 10(b), however, does not impose liability for negligence or impose obligations *ex post facto*.

2003 WL 23174761, at *5.  The Complaint here suffers from the same, and even more obvious, deficiencies.  Given the pleading of facts showing fraud only by management; the facts pled

---

[21] *See, e.g.*, *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999), and 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001); *Marsh & McLennan*, 501 F. Supp. 2d at 488; *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006).

about PwC (failure to detect, or complicity in, the fraud); B.R. Raju's disclaimer of any Director's knowledge; and the absence of any facts showing that the Audit Committee failed to perform the duties delegated to it, there is no basis for even plausibly inferring, under *Iqbal*, that these Directors acted with extreme recklessness approaching intent to disregard the fraud. And, applying *Tellabs*, a reasonable person would *not* conclude that the inference of scienter is either compelling or at least as strong as the inference of non-fraudulent conduct (*i.e.*, that the Directors were deceived).[22]

### 2. The Facts Pled as to Both the Officers and PwC Audit Team Negate Any Inference of the Audit Committee Defendants' Scienter

The FACC (*e.g.*, ¶ 96) alleges an extraordinarily complex and well-concealed fraud perpetrated *on* the Audit Committee by the Officers. But plaintiffs further plead that either the PwC-India and PwC-U.S. audit team failed to detect and report the fraud -- or (indeed, relying on the Indian CBI report) that there was also a "well knit criminal conspiracy" between Satyam and two PwC audit partners. *See, e.g.*, FACC ¶¶ 66, 70, 190. Such allegations confirm a fraud directed *at* (and controvert scienter by) the Audit Committee -- whether by the inadvertence or complicity of the outside auditors that the Committee engaged and relied upon.

Here, then, as in *Livent*, while allegations about a massive accounting fraud and a

---

[22] *See Weiss v. Priceline.com, Inc.*, 330 F. App'x 230, 231 (2d Cir. 2009) (affirming dismissal where inference of scienter was "not 'as compelling as [the] opposing'" and "more natural" inference of non-fraudulent intent) (citing *Tellabs*, 551 U.S. at 308); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007) (affirming dismissal where "there [was] a 'plausible nonculpable explanation[ ]' for the defendants' actions that [was] more likely than any inference that the defendants" acted with scienter) (quoting *Tellabs*, 551 U.S. at 323). Indeed, if the conduct of an employee who made "unsupportable" accounting adjustments, "ignored information that indicated that his adjustments were incorrect, and repeatedly failed to confirm his adjustments with others" was insufficient to plead scienter where "the benign inference of [his] acts" was "more likely," *In re Verifone Holdings, Inc. Sec. Litig.*, 2011 WL 1045120, at *7, 9 (N.D. Cal. Mar. 22, 2011), *a fortiori*, there is nothing in the FACC to satisfy the scienter requirements here.

"double accounting system" satisfied the pleading requirements as against management, they "work against the 'strong inference' that the outside Directors would have been aware of the fraud since the double system left no 'paper or transaction trail'" and "the Directors relied on [PwC] to perform the audit and on the representations of management." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 220 (S.D.N.Y. 1999), and *In re Livent. Inc. Sec. Litig.,* 148 F. Supp. 2d 331, 371 (S.D.N.Y. 2001).

Indeed, the Second Circuit affirmed dismissal of § 10(b) claims against an issuer for recklessly reporting false profits where an employee, like Satyam's management here, took elaborate steps to conceal the company's losses. *See In re Gen. Elec. Co. Sec. Litig.,* 1995 WL 590639, at *4 (S.D.N.Y. Oct. 4, 1995) ("Plaintiffs' sixty-nine page Complaint carefully details the highly complex mechanics of Jett's scheme and further details . . . the elaborate means by which Jett was able to hide his trading losses. *Plaintiffs cannot then turn around and plead that that scheme should have been so obvious to GE that it either had a specific fraudulent intent or that it acted recklessly in reporting the resulting earnings.*") (emphasis added), *aff'd sub nom. Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996). And if such pleadings were insufficient before *Tellabs,* they fall far short now.

Section 10(b) claims have been dismissed even as against outside auditors because the more plausible inference was deception of the auditor by the issuer, which overstated income through "'secret side agreements' [that were] concealed from anyone but management" and "engaged in 'a deliberate practice of conscious misconduct at the highest levels of [its] management . . . designed to surreptitiously mask the true terms and conditions of transactions.'" *In re Doral Fin. Corp. Sec. Litig.,* 563 F. Supp. 2d 461, 465 (S.D.N.Y. 2008).

> [I]n view of the Complaint's own allegations about the secretive
> and manipulative manner in which Doral accomplished its fraud, *it*

> *is impossible* to draw a strong inference of PwC's scienter from either the length or extent of the fraud, or both, *because the competing inference that PwC was also tricked by Doral is far more compelling* . . . .  [Thus,] on the face of the Complaint itself, the inference that PwC was a victim of Doral's fraud is far more compelling than the inference that PwC acted with scienter.

*Id.* at 466-67 (emphasis added).  The Second Circuit affirmed the dismissal and held:

> [T]he opposing inference-that Doral concealed its fraud from Pricewaterhouse, just as it concealed its fraud from investors-is objectively more compelling than plaintiffs' allegations of recklessness . . . .  [I]t seems more plausible that Doral's managers concealed them from Pricewaterhouse than that Pricewaterhouse recklessly failed to discover them.

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 720 (2d Cir. 2009); *accord*, *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 390 (D. Md. 2004).  This holding applies here.  Regardless of whether Satyam's auditors were also innocently duped, or were negligent, reckless or even (as plaintiffs allege) knowingly complicit, the "competing inference" that the Audit Committee members were "deceived is stronger than the inference that they were reckless."  *Doral*, 344 Fed App'x at 721.[23]

### 3. Neither the Magnitude of the Fraud, Nor the Amount of Auditor Fees, Support a Strong Inference of Scienter

Plaintiffs allege that recklessness should be inferred from the sheer magnitude of the fraud.  FACC ¶ 242(a).  But "the magnitude of the fraud alone cannot suffice to impute the

---

[23] Courts repeatedly dismiss § 10(b) claims where it is reasonably inferred that defendants, like the investors, were defrauded.  *See, e.g., SEC v. Cohmad Sec. Corp.,* 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010) (dismissing securities fraud claims against one of Madoff's investment advisors and its executives, as "the complaint supports the reasonable inference that Madoff fooled the defendants as he did individual investors, financial institutions, and regulators."); *see also Ross v. Walton*, 668 F. Supp. 2d 32, 36, 39 (D.D.C. 2009), where the court held insufficient allegations of parent company scienter (as to revenue that was fraudulently inflated by management of a wholly-owned subsidiary), despite, *inter alia*: the parent knowing of government investigations into fraudulent lending activities; and letters to the parent's board of directors from an investment firm concerning fraudulent activities at the subsidiary.

requisite inference of knowledge of recklessness" to audit committee members. *Livent*, 78 F. Supp. 2d at 217; *see also Livent*, 148 F. Supp. 2d at 371; *Doral*, quoted *supra*. "Allowing an inference of scienter based on the magnitude of the fraud 'would eviscerate the principle that accounting errors alone cannot justify a finding of scienter.'" *Fidel v. Faley,* 392 F.3d 220, 231 (6th Cir. 2004) (citation omitted). Even in *WorldCom*, involving a multi-billion dollar fraud, the securities law claims against audit committee members were dismissed because "[t]he magnitude of the alleged fraud is not sufficient, standing alone, to create liability." *In re WorldCom, Inc. Sec. Litig.,* 294 F. Supp. 2d 392, 418 (S.D.N.Y. 2003).[24]

Plaintiffs also allege that the amount of auditor fees -- less than $1 million in each of 2007 and 2008, and an additional $300,000 in each year for "other related services" (FACC ¶¶ 189, 191) -- should have raised a "red flag." FACC ¶ 242(b). But the size of an audit fee simply does not suggest there was "a *quid-pro-quo* for the auditor's willingness to certify the Company's false and misleading financial statements" (*id.*): as one of the largest companies in India -- which utilized not only PwC-India, but also "PwC USA [to] conduct[] the Satyam audits" over its growing domestic and worldwide operations (*id.* at ¶ 143) -- one would expect Satyam to have significant and increasing audit expenses. The Directors are not aware of any authority holding that the amount of the auditor's annual fee is a sign of fraud, and the reported authority is to the contrary. *See*, *e.g.*, *Doral*, 563 F. Supp. 2d at 466 (PwC's receipt of $6 million in audit fees shows only that "PwC was Doral's auditor, a fact which is wholly insufficient to show PwC's scienter"); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F.

---

[24] *See also Marsh & McLennan*, 501 F. Supp. 2d at 483; *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, and "ERISA" Litig.*, 503 F. Supp. 2d 25, 41 (D.D.C. 2007) ("plaintiffs' argument that the magnitude of the fraud is sufficient itself for an inference that the Audit Committee defendants acted with scienter is plainly contradictory to the purposes of the PSLRA and is, at best, an oversimplification of the scienter concept.").

Supp. 2d 1253, 1285-86 & n. 17 (M.D. Fla. 2009) (dismissing allegation that "[s]kyrocketing [a]udit [f]ees" of $7.3 million in one year were sufficient "to support an inference of scienter"; "[t]he passage of Sarbanes-Oxley in 2002 increased outside auditors' obligations (and legal exposure) causing auditors to charge higher fees." (citations omitted)), *aff'd*, 594 F.3d 783 (11th Cir. 2010).  In any event, plaintiffs do not plead any facts showing that the Audit Committee did not meet, discuss and have a basis for approving such audit fees.

### 4.      Pleading of Management Letters Does Not Demonstrate Scienter

Despite Satyam's production of thousands of Documents, including PwC emails, the FACC still fails to identify any document or information that the Audit Committee Defendants possessed that revealed the fraud.  Rather, plaintiffs allege, as they did before they received Satyam's Documents, that PwC raised issues concerning "hundreds of internal control deficiencies . . . in Management Letters addressed to the Company dated May 10, 2007 and August 8, 2008."  FACC ¶ 242(c).  The FACC does not allege that any (or which) Director ever saw such letters, which renders the allegations as to the letters irrelevant to plaintiffs' claims against the Directors.  Even were this not the case, the FACC does not identify the deficiencies supposedly disclosed by these management letters or plead facts showing that such deficiencies were material to Satyam's financial statements, or indeed had any relationship to wrongdoing pre-dating or post-dating these letters.  Inferring scienter from mere allegations that directors received reports without identifying their contents, or who received the reports or when, and how they contradicted contemporaneous public statements, "would result in an inference of scienter being available in [every] case."  *In re CP Ships Ltd. Sec. Litig*., 506 F. Supp. 2d 1161, 1168 (M.D. Fla. 2007) (citation omitted).  Such pleadings "lack the requisite particularity" and rest on

"speculation."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006).[25]  Perhaps

most important, there is no pleading of any fact showing that PwC ever told the Audit

Committee that there were any such material weaknesses, by management letter or otherwise; to

the contrary, PwC India issued "clean" annual opinions on Satyam's financial statements that did

not reference any material weaknesses in controls, and "the designated reviewer PwC USA

provided the ultimate approval for the filing of these" statements "in the United States."  FACC

¶¶ 249, 250; *see also id.* ¶ 200 ("the PwC Audit Team failed to include a disclosure regarding the

control deficiencies in its audit reports and instead issued unqualified audit opinions, therefore

directly misrepresenting the Company's internal controls and the accuracy of its financial

statements.").  The more compelling inference from all of these facts is that the Directors had no

knowledge or notice of the fraud from the auditors.

     **5.**      **Scienter Cannot Be Inferred From the Proposed Maytas Acquisition**

     Plaintiffs allege that scienter can be inferred against the Directors from B.R.

Raju's proposal that Satyam should acquire the Maytas companies for $1.3 billion when they

supposedly were worth only $225 million.  FACC ¶¶ 84, 242(d).  Plaintiffs assert that B.R. Raju

proposed the acquisition to "cover up the fraud by allowing Satyam to acquire real assets for its

non-existent cash."  FACC ¶ 38.  But plaintiffs do not plead any facts as to what information was

provided to the Board, let alone that the Board approved the transaction with knowledge of the

---

[25] *See also In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 373 (S.D.N.Y. 2007)
("plaintiffs cannot simply allege that confidential . . . reports contradicted contemporaneous
public statements") (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip
Morris Cos.*, 75 F.3d 801, 812-13 (2d Cir. 1996)); *In re Enron Corp. Sec., Derivative & ERISA
Litig.*, 258 F. Supp. 2d 576, 629 (S.D. Tex. 2003) ("Lead Plaintiff has not provided any particular
facts that were presented to and that led or should have led an Outside Director to know or
recklessly disregard that there was fraudulent accounting at Enron").

alleged disparity in value.[26]  Moreover, even if plaintiffs had pled facts suggesting that the

Directors made a poor decision, or even one that rose to the level of a breach of fiduciary duty

(which they have not), the Supreme Court has held that neither mismanagement nor a breach of

fiduciary duty can support a claim under Rule 10b-5.  *See Santa Fe Indus., Inc. v. Green*, 430

U.S. 462, 476-79 (1977) (no cause of action under Rule 10b-5 for corporate acts that amount to

common law mismanagement or breach of fiduciary duty).  In any event, plaintiffs do not and

certainly cannot contend that Maytas proposal, put on the table just days before he confessed his

fraud and resigned, could have served to put anyone on notice of his and senior management's

financial fraud in earlier months or years.

## II.   PLAINTIFFS' §§ 11 AND 12 CLAIMS SHOULD BE DISMISSED

Section 11 violations may give rise to liability (subject to certain defenses) for

material misrepresentations and omissions in a registration statement, on the part of a director

who signs such document.  15 U.S.C. § 77k.  Section 12(a)(2) provides that a person who "offers

or sells a security . . . by means of a prospectus or oral communication" that contains an untrue

statement of a material fact "shall be liable . . . to the person purchasing such security from him."

15 U.S.C. § 77*l*(a)(2).

### A.   Adams Does Not Plead Facts Showing § 11 or § 12 Standing or Stating a Claim Thereunder

Adams is the only plaintiff who asserts claims under §§ 11 and 12.  He purports to

do so on behalf of "current or former employees who received and exercised options to acquire

Satyam ADSs through the Associate RSU (ADS) Option Plan pursuant to or traceable to a false

and misleading Form S-8 filed with the SEC on January 12, 2007 and the Associate Ordinary

---

[26] *See One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 81 (2d Cir. 2010)
(affirming dismissal of § 10(b) claims: conclusory allegations of "involvement of outside
directors" in improper billing practices are "insufficient").

Option Plan-RSU filed with the SEC on Form 20-F on April 30, 2007."  (FACC ¶¶ 420, 437).

These claims are asserted only against three of the five Audit Committee Defendants (Srinivasan,

Palepu and Rao), and two other Directors (Mynampati and Dham) (*see* FACC, Counts X and

XI).  Directors Raju and Prasad are not alleged to have violated §§ 11 or 12.

        Adams does not and *cannot* plead facts stating a Securities Act claim:  (i) he does

not plead any facts showing that he exercised options or acquired any ADSs or other securities

under the RSU plans -- the only plans as to which he asserts his Securities Act claims (FACC

¶¶ 340(d), (e)); and (ii) based on his own documents, on which he necessarily relies, and which

are before the Court (*see supra* note 4) and discussed at length in the Directors' *Morrison*

motion, he only acquired Satyam securities (ADSs) under a prior plan.  Specifically, the Exercise

Notices signed by Adams establish that he exercised options only for ADSs and only under the

*ASOP* ADS Option Plan -- which is *not* a plan under which he purports to assert any Securities

Act claims.  FACC ¶ 340(c).  As Adams fails to state a Securities Act claim with respect to his

own purchases, he also does not have standing to assert a Securities Act claim on behalf of

anyone who theoretically could.[27]

    **B.**    **Heightened Pleading Requirements Apply to the §§ 11 and 12 Claims.**

        Even if Adams had engaged in a transaction giving him standing to assert his

---

[27] *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL 3239430, at *4
(S.D.N.Y. Aug. 17, 2010) (plaintiff lacks standing to assert claims regarding securities it did not
purchase) (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002)
("'In order to maintain a class action, Plaintiffs must first establish that they have a valid claim
with respect to the shares that they purchased.  If the *named* plaintiffs have no cause of action in
their own right, their complaint must be dismissed, even though the facts set forth in the
complaint may show that others might have a valid claim'")(emphasis by the court)); *Global
Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003).  *See also Gen. Tel. Co. of
Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that 'a class representative
must be part of the class and 'possess the same interest and suffer the same injury' as the class
members'") (citations omitted); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17
(2d Cir. 1981).

Securities Act claims, and even if he could survive *Morrison*, dismissal would be required. Scienter is not, *per se*, an element of a §§ 11 or 12(a) claim.  However, Adams (who is the only plaintiff asserting such claims) also asserts a § 10(b) claim, and he relies on the exact same allegations for his §§ 11 and 12 claims.  Indeed, he incorporates into his §§ 11 and 12 claims all of the alleged willful misconduct underlying his § 10(b) claims.  FACC ¶¶ 435, 446.  As a matter of law, then, those claims must satisfy heightened pleading standards for fraud, because it is the substance, and not the label, of the claims that controls, and these standards apply to "'all averments of fraud'" not just to "allegations styled or denominated as fraud.'"  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (heightened pleading standards "apply with equal force to 'averments of fraud' set forth in aid of §§ 11 and 12(a)(2) claims that are grounded in fraud") (citing Rule 9(b)).  *Accord*, *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (affirming dismissal of Securities Act claims); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 795 (S.D.N.Y. 1997) (Jones, J.) ("while fraud is not an element of §§ 11 or 12(a)(2) claims, plaintiffs nonetheless have alleged fraudulent intent . . . .  [I]t seems only fair that if plaintiffs have pled fraud, they must comply with the requirements of Rule 9(b)."). [28]

Adams purports to "disclaim" any "intentional misconduct" by the Directors with respect to his Securities Act claims (*see* FACC ¶¶ 419, 436) -- but he cannot have it both ways.  After devoting almost 150 pages of his Complaint to fraud charges, and then relying on the same alleged misconduct for both the § 10(b) and the §§ 11 and 12 claims, "the insertion of a simple

---

[28] *Accord*, *Zirkin v. Quanta Capital Holdings Ltd.*, 2009 WL 185940, at *12 (S.D.N.Y. Jan. 23, 2009) ("Rule 9(b) applies to fraud claims brought under Section 11 or Section 12(a)(2)") (citing *Rombach*, 355 F.3d at 169)); *In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.*, 2009 WL 4030869, at *1 (S.D.N.Y. Mar. 3, 2009) (§§ 11 and 12 claims subject to heightened pleading standards because, "on any fair reading, much of the 'wording and imputations of the complaint are classically associated with fraud'") (citing *Rombach*, 355 F.3d at 172)); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (dismissing § 11 claims).

disclaimer of fraud," as Adams attempts here, "'is insufficient to divorce the claims from their fraudulent underpinnings'" because "'plaintiffs cannot so facilely put the fraud genie back in the bottle.'"  *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (citations omitted).[29]  The same pleading deficiencies that require dismissal of Adams' § 10(b) claims thus require dismissal of his §§ 11 and 12 claims.

### C.     The § 12 Claim Fails Because No Sale or Solicitation is Pled

Even if Adams had purchased shares under the plan, and in a transaction covered by the Securities Act after *Morrison*, his § 12 claims would also have to be dismissed for failure to plead facts showing that any Director "offered" or "sold" a security.[30]  Section 12(a)(2) liability is limited to those who "pass[] title, or other interest in the security, to the buyer for value," or "successfully solicit[] the purchase . . . motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Pinter v. Dahl,* 486 U.S. 622, 642, 647 (1988); *accord*, *In re Morgan Stanley Tech. Fund Sec. Litig.,* 643 F. Supp. 2d 366, 374 (S.D.N.Y. 2009) (Jones, J.), *aff'd*, 592 F.3d 347 (2d Cir. 2010).  The buyer-direct seller relationship is "not unlike traditional contractual privity."  *Pinter*, 486 U.S. at 642.

One who is not a direct seller may be a solicitor seller "within the meaning of *Pinter* if they solicited the sales in question for a financial gain."  *Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir. 1989); *Morgan Stanley,* 643 F. Supp. 2d at 374. The focus is on "defendant's relationship with the plaintiff-purchaser" (*Pinter*, 486 U.S. at 651),

---

[29] *See also Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (affirming dismissal of § 12 claim: "a conclusory disclaimer cannot alter the substance of plaintiffs' allegations, which sound in fraud"); *Marsh & McLennan*, 501 F. Supp. 2d at 492 ("Allowing plaintiffs to allege fraud over nine-hundred paragraphs and then withdraw those claims for eight paragraphs in order to state a Section 11 claim eviscerates Rule 9(b)'s mandate to 'safeguard a defendant's reputation from improvident charges of wrongdoing.'") (citation omitted).

[30] As with the § 11 claim, Adams does not allege that Messrs. Raju and Prasad violated § 12.

"such as brokers who might act on the seller's behalf for a profit."  *Wilson*, 872 F.2d at 1126.

Adams' claims rest on nothing more than conclusory boilerplate such as: "Defendants . . . transferred title of Satyam securities to [him]" and "solicited the purchase of Satyam ordinary shares and/or ADSs."  FACC ¶ 442.  Not only does Adams fail to plead facts showing when the options were granted to him, or exercised by him, and that he suffered a loss thereon, he also fails to allege when, by whom or how (if at all) he was solicited.  *Id.*  There is no allegation of any "direct relationship" between Adams and any Director.  *Id.*[31]  Nor is any fact pled, showing that any Directors were motivated "'by a desire to serve [their] own financial interests.'"  *Morgan Stanley,* 643 F. Supp. 2d at 374 (citing *Pinter*, 486 U.S. at 647).  The pleading thus fails, even putting aside that it was Satyam, the company, that granted employee stock options (not the Directors) -- an act that entails no solicitation at all.

## III.    PLAINTIFFS' CONTROL PERSON CLAIMS SHOULD BE DISMISSED

Plaintiffs assert claims against the Audit Committee Defendants as "control persons" under § 20(a) of the Exchange Act, 15 U.S.C § 78t(a) (FACC Count V).  Plaintiffs also assert a claim under § 15 of the Securities Act, 15 U.S.C. § 77o, against Directors Srinivasan, Palepu, Rao, Mynampati and Dham (though not against Prasad and Raju) (FACC Count XII). "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."[32]  As that analysis applies under both the Securities Act and the Exchange Act,

---

[31] *See In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) (dismissing § 12(a)(2) claim "because plaintiff has not sufficiently alleged that she purchased the mutual fund shares directly from any of the Defendants.").

[32] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (*citing SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).  "Culpable participation" must be alleged

all control person allegations fail.[33]

### A.    The § 15 Claim Fails Because No Primary Violation Is Pled

Any § 15 claim must be dismissed because all underlying Securities Act claims fail, as a matter of law and pleading (discussed above) and under *Morrison*.  *N.J. Health Fund v. NovaStar Mortg., Inc.*, 2011 WL 1338195, at * 11 (S.D.N.Y. March 31, 2011) ("Until the Court finds that Plaintiff's Section 11 . . . . claim[] can be sustained, no claim under Section 15 can proceed.").

### B.    The Facts Pled Do Not Establish Control by Any Director

Assuming that a primary violation of the Securities Act had been pled, control entails "'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"  *Harrison v. Rubenstein,* 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007) (citation omitted).  Such power must be actual, de facto power: officer, director or Audit Committee status alone does not suffice.  *Id.*; *In re Livent, Inc. Sec. Litig.,* 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999); *NovaStar Mortg.,* 2011 WL 1338195, at *9 ("The power to influence or persuade does not equal control

---

in addition to control.  *See, e.g., In re Authentidate Holding Corp. Sec. Litig.,* 2009 WL 755360, at *2 (S.D.N.Y. Mar. 23, 2009), *aff'd in part, rev'd in part on other grounds sub nom. Ill. State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260 (2d Cir. Apr. 24, 2009); *Steinberg v. Ericsson LM Tel. Co.,* 2008 WL 5170640, at *3 (S.D.N.Y.  Dec. 10, 2008), *aff'd sub nom. Fuhrer v. Ericsson LM Tel. Co.*, 363 F. App'x 763 (2d Cir. 2009); *Steed Fin. LDC v. Laser Advisers, Inc.,* 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (Jones, J.) ("The Second Circuit has made clear that particular culpability is a required element of a § 20(a) claim.") (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

[33] *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) ("there is no basis for assuming that interpretation of control person liability pursuant to section 20(a) . . . should differ from that pursuant to section 15"); *Marsh & McLennan*, 501 F. Supp. 2d at 493. Indeed, the facts pled establish that the Directors "had no knowledge of or reasonable ground to believe in the existence of the" fraud.  15 U.S.C. § 77o(a).  *See* Ex. 2 ¶ 4 (B.R. Raju letter), so stating, and the pleading of elaborate concealment of the fraud.

for purposes of Section 15 of the 1933 Act;" instead, "[w]hat is required is 'the practical ability to direct the actions of people who issue or sell securities.'") (citations omitted).  And it is not enough to have actual control over the alleged primary violator.  Plaintiff must also demonstrate that the alleged control person had "'actual control over the *transaction* in question.'"  *In re Global Crossing, Ltd. Sec. Litig.,* 2005 WL 1875455, at *3 (S.D.N.Y. Aug. 5, 2005) (emphasis added; citation omitted).[34]  Conclusory allegations of control are insufficient to state a claim under Section 20(a).  *Owens v. Gaffken & Barriger Fund, LLC,* 2009 WL 3073338, at *12 (S.D.N.Y. Sept. 21, 2009) (dismissing § 20(a) claim: under *Iqbal,* "bare legal conclusion" that the defendant was a controlling person "is not entitled to the presumption of truth").

Here, the control person claims are based on nothing more than defendants' status as Directors.  *See* FACC ¶¶ 387, 449.  Indeed, Messrs. Prasad and Raju apparently are alleged to have been in control years before they joined the Board.  But the facts explicitly pled by plaintiffs themselves show total control of Satyam and its books, records and employees and the conduct at issue, by only the Officers, not the Directors.

### C.    No Facts Are Pled Showing Any Director's Culpable Participation

Heightened pleading requirements apply to all control person claims where the claims sound in fraud, including Securities Act claims.[35]  Plaintiffs here have not pled "particularized facts as to [any] Directors' 'culpable participation' in the fraud."  *Livent*, 78 F.

---

[34] *See also In re Bristol Meyers Squib Co. Sec. Litig.,* 586 F. Supp. 2d 148, 170 (S.D.N.Y. 2008) ("the plaintiff must assert that the defendant exercised *actual* control over the matters at issue" (emphasis by the court)).

[35] *See, e.g., In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *23 (S.D.N.Y. Oct. 25, 2006) ("the PSLRA requires that, like scienter, the 'culpable participation' element of control person liability must be pled with particularity") (citations omitted); *Harrison*, 2007 WL 582955, at *19 (citing *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002)) (same); *Marsh & McLennan*, 501 F. Supp. 2d at 494 (dismissing Section 15 control person claims because no "strong inference of scienter").

Supp. 2d at 222.  Absent "detailed allegations regarding the state of mind of the 'control person'"

-- as here -- the claims must be dismissed.  *Harrison*, 2007 WL 582955 at *19.

## CONCLUSION

For all the foregoing reasons, the Directors respectfully request that this Court dismiss the FACC in its entirety, and with prejudice.

Dated: New York, New York
        April 18, 2011

WEIL, GOTSHAL & MANGES LLP

By: /s/ Irwin H. Warren
        Irwin H. Warren
        Miranda S. Schiller
        Margarita Platkov
        Evert J. Christensen, Jr.

767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Mangalam
Srinivasan, Ram Mynampati, V.S. Raju,
T.R. Prasad and M. Rammohan Rao*

DEBEVOISE & PLIMPTON LLP

By: /s/ Jeffrey S. Jacobson
        Jeffrey S. Jacobson

919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

*Attorneys for Defendant Krishna G. Palepu*