UNITED STATES DISTRICT COURT                Master File No. 09-MD-2027 (BSJ)
SOUTHERN DISTRICT OF NEW YORK               ECF Case

IN RE:

 SATYAM COMPUTER SERVICES, LTD.
 SECURITIES LITIGATION

(This Document Applies To All Cases)

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MP DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP RULES 12(b)(2) & 12(b)(5)**

**SABHARWAL, NORDIN & FINKEL**


By:____/s/ Adam Finkel_____
         Adam Finkel, Esq. (AF-1368)
         350 Fifth Avenue, 59th Floor
         New York, New York 10118
         Tel:    (212) 601-2882
         Fax:    (212) 601-2883
         E-mail:adam@snfny.com

# Table of Contents

**I.   PRELIMINARY STATEMENT**             **4**

**II.   STATEMENT OF FACTS**             **4**

**III.   ARGUMENT**             **5**

    **A.   THERE IS NO BASIS TO ASSERT PERSONAL JURISDICTION OVER THE MP DEFENDANTS 5**

1.   THE COURT LACKS GENERAL JURISDICTION       7
2.   THE COURT LACKS SPECIFIC JURISDICTION       7
3.   THEORIES OF AIDING AND ABETTING OR CONSPIRACY ARE NOT AVAILABLE UNDER THE EXCHANGE ACT TO POSIT PERSONAL JURISDICTION OVER THE MP DEFENDANTS       10
4.   THIS COURT'S EXERCISE OF JURISDICTION WOULD VIOLATE THE DUE PROCESS CLAUSE       11

    **B.   SERVICE OF PROCESS WAS IMPROPER     17**

1.   THE HAGUE CONVENTION REQUIREMENTS       18
2.   THE PLAINTIFFS FAILED TO PROPERLY SERVE THE MP DEFENDANTS IN THE SATYAM ACTION       19
3.   THE PLAINTIFFS FAILED TO PROPERLY SERVE THE MP DEFENDANTS IN THE ABERDEEN ACTION       20
4.   THE TIME TO SERVE THE MP DEFENDANTS HAS EXPIRED       20

**IV.   CONCLUSION**             **22**

**TABLE OF AUTHORITIES**

## Cases

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir., 1999).......... 11

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez, 305 F.3d 120 (2d Cir., 2002).......... 12

Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir., 1975)............................................................. 6

Chemical Bank v. World Hockey Ass'n, 403 F. Supp. 1374 (S.D.N.Y. 1975) ................................ 9

Corning, Inc. v. Shin Etsu Quartz Prod. Co., Ltd., 910 F.2d 1028 (2d Cir., 1990) .................... 5

CutCo Indus., Inc., v. Naughton, 806 F.2d 361 (2d Cir. 1986) .................................................... 5

Ellicott Machine Corp. v. John Holland Party, 995 F.2d 474 (4th Cir. 1993)............................... 5

Ferrostaal, Inc. v. Haci Hasssan Yardim, 2006 WL 2819585 (SDNY Sept. 29, 2006).......... 17,18

Hanson v. Denckla, 357 U.S. 235 (1958) .................................................................................... 5

In re Amaranth Nat. Gas Commodities Litig., 587 F. Supp. 2d 513 (SDNY, 2008)..................... 9

In re AstraZeneca Securities Litigation, 559 F. Supp. 2d 453 (SDNY, 2008) ............................. 7

In re Parmalat Sec. Litig., 376 F. Supp. 2d 449 (S.D.N.Y. 2005) ........................................... 6, 8

In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334 (D.Md. 2004)...................... 9

Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266 (9th Cir. 1981) ............................... 16

International Shoe Co. V. Washington, 326 U.S. 310 (1945) ....................................................... 5

Landry v. Price Waterhouse Chartered Accountants, 715 F. Supp. 98 (S.D.N.Y. 1989).............. 6

Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87 (2d Cir. 1975)................................................. 9

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ............... 5,6,15

Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., 484 U.S. 97 (1987) ...................................... 18

Pearson v. Bd. of Educ., No. 02 Civ. 3629(RCC), 2004 WL 2297354 (S.D.N.Y. Oct. 12, 2004)18

Porina v. Marward Shipping Co., Ltd., 2006 WL 2465819, affd, 521 F.3d 122
(2d Cir., 2008)............................................................................................................................ 11,13

R. Griggs Group Limited v. Filanto Spa, 920 F. Supp. 1100 (D.Nev. 1996) ............................ 19

Seaweed, Inc. v. DMA Product & Design & Marketing LLC, 219 F. Supp. 2d 551
(SDNY, 2002)............................................................................................................................... 6

Sedona Corp. v. Ladenburg Thalmann & Co., Inc., 2006 WL 2034663 (S.D.N.Y. 2006)............. 9

Sedona, 2006 WL 2035663.......................................................................................................... 8

Socialist Workers Party v. Attorney General, 375 F. Supp. 318 (S.D.N.Y. 1974)....................... 9

Three Crown Ltd. v. Caxton Corp., 817 F. Supp. 1033 (S.D.N.Y. 1993) .................................. 18

Unicon Management Corp. v. Koppers Co., 250 F. Supp. 850 (S.D.N.Y. 1966)....................... 9

Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694 (1988)....................................... 19

Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) ............................................... 5

## Other Authorities

Fed. R. Civ. P. 12(b)(2)............................................................................................................... 4

Fed. R. Civ. P. 12(b)(2), 12(b)(5) ............................................................................................... 23

Fed. R. Civ. P. 12(b)(5)............................................................................................................... 4

Fed. R. Civ. P. 4(f)...................................................................................................................... 17

Fed. R. Civ. P. 4(f)(1)................................................................................................................. 17

U.S. Const. art. VI, § cl. 2........................................................................................................... 18

U.S. Const. Amd. 5 ..................................................................................................................... 6

Maytas Properties Limited, B. Rama Raju, Jr. and B. Teja Raju (collectively "the MP Defendants") by its attorneys, hereby submit this Memorandum of Law in Support of the MP Defendants' Motions To Dismiss Count IV of the First Amended Consolidated Complaint (hereinafter the "FAC"), filed in the lead case with Case No. 09-md-2027 (hereinafter the "Satyam Action"), and Counts II, VI, VII and VIII of the Second Amended Consolidated Complaint (hereinafter "SAC") filed in the case with Case No. 09-cv-02877 (hereinafter the "Aberdeen Action"), with prejudice.

## I.  PRELIMINARY STATEMENT

There is no jurisdictional basis to assert *in personam* jurisdiction over the MP Defendants. In addition, the Plaintiffs have failed to properly serve any of the pleadings, in both the Satyam Action and the Aberdeen Action, upon the MP Defendants, in accordance with the provisions of the Hague Convention (20 U.S.T. 361; 658 U.N.T.S. 163, T.I.A.S. No. 6638) (hereinafter the "Hague Convention"). Accordingly, the Satyam Action and the Aberdeen Action must both be dismissed pursuant to FRCP 12(b)(2) and FRCP 12(b)(5), as this Honorable Court lacks *in personam* jurisdiction over the MP Defendants in both the Satyam Action and the Aberdeen Action.

Moreover, the Supreme Court held that a private plaintiff may not maintain an aiding and abetting claim under Section 10(b).  Therefore, the Plaintiffs are barred from using a conspiracy theory to support personal jurisdiction over the MP Defendants.

## II.  STATEMENT OF FACTS

We respectfully refer this Honorable Court to the accompanying Declaration of B. Rama Raju, Jr., sworn to on April 26, 2011 ("Rama Decl."), the accompanying Declaration of B. Teja Raju, sworn to on April 26, 2011 ("Teja Decl."), and the accompanying Declaration of  Maturi

Sreemannarayana ("Maturi Decl.")  for the relevant facts.  The Rama Decl., Teja Decl. and

Maturi Decl. are each incorporated herein by reference.

III. ARGUMENT

### A.   THERE IS NO BASIS TO ASSERT PERSONAL JURISDICTION OVER THE MP DEFENDANTS

In order to be subject to *in personam* jurisdiction, the MP Defendants must have "certain

minimum contacts with the United States such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice." *International Shoe Co. V. Washington*,

326 U.S. 310, 316 (1945); *Ellicott Machine Corp. v. John Holland Party*, 995 F.2d 474, 477 (4th

Cir. 1993).  The minimum contacts test requires "in each case that there be some act by which

the defendant purposely avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protection of its laws."  *Hanson v. Denckla*, 357 U.S. 235,

253 (1958).  Each defendant's connection with the state must be such that "it should reasonably

anticipate being haled into court" in the State in the event of a dispute.  *Worldwide Volkswagen

Corp. v. Woodson*, 444 U.S. 286, 295-96 (1980).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins.

Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). In determining a motion to

dismiss for lack of personal jurisdiction, "a court may look to evidence outside the pleadings."

*Seaweed, Inc. v. DMA Product & Design & Marketing LLC*, 219 F.Supp.2d 551, 554 (SDNY,

2002) (citing *CutCo Indus., Inc., v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986)).

Section 27 of the Exchange Act provides for national jurisdiction of Federal Courts,

thereby extending the Court's *in personam* jurisdiction limits to the limits of the US

Constitution's Due Process Clause. In *Corning, Inc. v. Shin Etsu Quartz Prod. Co., Ltd.*, 910 F2d

1028, 1033 (2d Cir., 1990) the Court holding that Securities and Exchange Act permits exercise of personal jurisdiction to limits of the Due Process Clause of Fifth Amendment (hereinafter the "DPC") .

The DPC places limits on the exercise of personal jurisdiction in order to "protect a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction." _Metro. Life Ins. Co. v. Robertson-Ceco Corp._, 84 F3d 560, 567 (2d Cir., 1996). Under the standard analysis for personal jurisdictional issues under the DPC, the Court is mandated to consider whether each defendant's conduct and connections with the forum state, "are such that he should reasonably anticipate being haled into court there." See _World-Wide Volkswagen Corp._, supra at p.297. The minimum contacts standard may be satisfied if each Defendant has "purposefully directed" his activities to the forum and the litigation arises from or relates to such activities. _Helicopteros Nacionales de Columbia, S.A. v. Hall_, 466 US 408, 414.

Accordingly, the Plaintiffs must show that the MP Defendants knew or should have known that their actions would have a causal effect in the United States, such that they would be amenable to this Court's jurisdiction. See, e.g., _Landry v. Price Waterhouse Chartered Accountants_, 715 F.Supp. 98, 101 (S.D.N.Y.1989); _Bersch v. Drexel Firestone, Inc._, 519 F2d 974, 998-1000 (2d Cir., 1975). For the reasons set forth herein the Plaintiffs have not met this heavy burden.

A defendant's contacts with the forum may confer general jurisdiction, which is based on the defendant's general business contacts with the forum state (unrelated to the subject matter of the dispute), or specific jurisdiction, where the lawsuit arises specifically from the defendant's contacts with the forum. _In re Parmalat Sec. Litig._, 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005); see also _Metro. Life Ins._ 84 F.3d at 567-68. As the have no contacts

with the United States whatsoever, and the FAC and SAC alleges none, Plaintiffs cannot meet their burden of establishing minimum contacts under either test.

**1.   The Court Lacks General Jurisdiction**

The MP Defendants do not have any bank accounts, property, employees or agents, telephone lines, or mailing addresses within the state of New York, or elsewhere in the United States of America; the MP Defendants are not authorized to do business in the State of New York; and the MP Defendants do not have residences, domiciles or any real property in the State of New York, or anywhere else in the United States of America.  Rama Decl. ¶ 4, Teja Decl. ¶ 5, Maturi Decl. ¶ 5, 6.  Simply stated, the MP Defendants do not have any presence in the State of New York or in the United States of America, let alone a presence sufficient to justify the Court's assertion of general jurisdiction over them.  Rama Decl. ¶ 4, Teja Decl. ¶ 5, Maturi Decl. ¶ 5, 6.  In fact, the MP Defendants' only connection to this state or to the United States is their defense of this frivolous lawsuit. Clearly, the MP Defendants do not have "continuous and systematic contacts" with the United States or the State of New York sufficient to establish a basis for personal jurisdiction, as is required by the applicable laws.

**2.   The Court Lacks Specific Jurisdiction**

Specific jurisdiction exists when a defendant has purposefully directed his activities toward the forum and the litigation arises out of or is related to the defendant's contact with the forum. *In re AstraZeneca Securities Litigation*, 559 F.Supp.2d 453 (SDNY, 2008). The alleged conduct that Plaintiffs set forth in the FAC and the SAC does not involve any contact by the MP Defendants whatsoever with the United States of America, let alone New York State. In fact, the Plaintiffs allege that the MP Defendants' acts or omissions occurred exclusively in India.  It is

worth noting that the Plaintiffs do not allege that the MP Defendants' activities were in any way directed towards New York or the United States.  Thus, the Court must find that jurisdiction over the MP Defendants is lacking.

Further, the Plaintiffs' frivolous pleading that these Defendants were alleged "control persons" of Satyam will not support the exercise of specific jurisdiction over them. See *In re Parmalat,* 376 F.Supp.2d at 453 (holding that to permit Section 20(a) status to satisfy due process requirements would "impermissibly conflate statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair.") Unless the standard of purposeful availment is met, the MP Defendants' alleged "control persons" status would not confer *in personam* jurisdiction on the Court.  Indeed, where the alleged control was exercised abroad, the Courts routinely dismiss control person claims due to lack of *in personam* jurisdiction. See, *Sedona,* 2006 WL 2035663, at *9; *In re Rhodia,* 531 F.Supp2d at 541-43. Even assuming *arguendo* that the MP Defendants were indeed "control persons", the Plaintiffs allege that the control activities occurred abroad, and, thus, do not satisfy the purposeful availment standard.  Clearly, the Plaintiffs' failure to plead any contacts by the MP Defendants with the USA is fatal to a claim of specific jurisdiction.  *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.,* 2006 WL 2034663 (S.D.N.Y. 2006) (where court dismissed a securities fraud complaint against a foreign corporate defendant where only allegations concerning defendant's contacts with USA were "generalized allegations…of conspiracy to defraud [plaintiff]," and held that if a defendant had no contacts with the forum, court could not exercise personal jurisdiction without violating the Due Process Clause).

In the case at bar, the bare bones pleading of the Plaintiffs is clearly insufficient to establish personal jurisdiction. See *Lehigh Valley Indus. v. Birenbaum,* 527 F.2d 87, 93 (2d Cir.

1975); *Unicon Management Corp. v. Koppers Co.*, 250 F.Supp. 850, 852 (S.D.N.Y.1966); See also, *Chemical Bank v. World Hockey Ass'n*, 403 F.Supp. 1374 (S.D.N.Y.1975); *Socialist Workers Party v. Attorney General,* 375 F.Supp. 318 (S.D.N.Y.1974).  The law is well settled that Section 20(a) liability cannot be used to justify personal jurisdiction over defendants. See *In re Amaranth Nat. Gas Commodities Litig.,* 587 FSupp.2d 513, 537 (SDNY, 2008) (holding court lacks personal jurisdiction of defendants where plaintiffs failed to show defendant directed any activity towards United States.)  Even assuming *arguendo* that the MP Defendants participated in a fraudulent scheme (which they most certainly did not), the Plaintiffs have not and cannot establish that any alleged acts and/or omissions of the MP Defendants were directed towards the United States, and, as a result, they cannot establish specific jurisdiction over the MP Defendants.

The Court in *In re AstraZeneca Securities Litigation*, 559 F.Supp.2d 453 (SDNY, 2008) granted the defendants-directors motion to dismiss for lack of personal jurisdiction in a securities fraud case, holding:

> In support of the claim that the court should exercise personal jurisdiction over Barnevik and Mogren, the complaint alleges that "each Individual Defendant frequently traveled [to the United States] on AstraZeneca business." Compl. ¶ 14. **However, it does not allege that either Barnevik or Mogren traveled to the United States specifically for Exanta-related business. Nor does the complaint allege that Barnevik or Mogren conducted any business anywhere regarding Exanta other than their general supervisory duties as board members.**
>
> Further, any allegations that Mogren or Barnevik "caused the distribution of false and misleading reports and statements to AstraZeneca investors in the U.S." or that they "had actual knowledge that each of the representations alleged herein were materially false or misleading" are merely conclusory statements applicable to all individual defendants as a result of their positions within the Company. A person's status as a board member is not alone sufficient to establish jurisdiction, see In re Alstom SA Sec. Litig., 406 F.Supp.2d 346, 400 (S.D.N.Y.2005); *In re Royal Ahold N.V. Sec. & ERISA Litig.,* 351 F.Supp.2d 334, 355 (D.Md.2004),

and such conclusory allegations of participation in the fraud are insufficient. Because the complaint does not adequately allege personal jurisdiction over Barnevik and Mogren, all claims against them are dismissed on this basis." Id at pp. 466-67. [Emphaisis added].

In the case at bar neither the MP Defendants nor its officers or directors had any position of authority within Satyam, to cause the distribution of any alleged misleading reports or statements. Rama Decl. ¶ 7, 8, 9, Teja Decl. ¶ 8, 9, 10, Maturi Decl. ¶ 9, 10, 11, 12. Thus, the MP Defendants are even further removed from the facts that the *AstraZeneca* Court found to be insufficient for the assertion of personal jurisdiction.

Moreover, since the Complaint alleges that the MP Defendants' acts occurred solely in India, and were related solely to the alleged purchase of property in India, the Plaintiffs cannot as a matter of law show that the MP Defendants knew or should have known that these acts would have any causal effect in the United States. In addition, the Plaintiffs have utterly failed to set forth any evidentiary facts whereby the MP Defendants had any preparatory, supervisory or other control with respect to Satyam's alleged filing of its regulatory documents containing the alleged misrepresentations. The MP Defendants did not and could not control Satyam's preparation and filing of said documents as they had no position of authority within Satyam. Further, Satyam's SEC filings were not filed for the benefit of the MP Defendants. Clearly, the Plaintiffs' claims lack substance and are patently insufficient to support personal jurisdiction over the MP Defendants.

**3. Theories of Aiding and Abetting or Conspiracy Are Not Available Under the Exchange Act To Posit Personal Jurisdiction Over the MP Defendants**

Presumably, the Plaintiffs will attempt to have this Honorable Court assert personal jurisdiction over the MP Defendants based upon "aiding and abetting" and/or "conspiracy" theories. However, the Supreme Court has barred such theories of liability under the Exchange

Act §10-b and Rule 10b-5. _Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, NA,_ 511 US 164, 191 (1994), (holding that a private plaintiff may not maintain an aiding and abetting claim under Section 10(b)).  As per the holding in _Central Bank,_ the Plaintiffs are barred from using such theories to support personal jurisdiction over the MP Defendants.  The Courts in this Circuit have also ruled that aiding and abetting and conspiracy theories are not available in lawsuits brought under the Exchange Act. See, _Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,_ 135 F3d 837, 844 (2d Cir., 1998) (no cause of action under Section 10b or Rule 10b-5 of the Exchange Act.) See also, _In re Motel 6 Securities Litigation,_ 161 F.Supp.2d 227, 234 (SDNY, 2001)

Assuming _arguendo_ that the Plaintiffs were permitted to assert conspiracy or aiding and abetting theories of liability against the MP Defendants (which they most certainly are not), the Complaint fails to assert factual allegations to support such theories. As a result, the Plaintiffs cannot rely upon such theory to support personal jurisdiction.  _Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,_ 171 F3d 779, 793 (2d Cir., 1999) (Where plaintiff did not allege conspiracy or aiding or abetting in complaint, it cannot use these doctrines to support claim of personal jurisdiction).

### 4.  This Court's Exercise of Jurisdiction Would Violate the Due Process Clause

The Plaintiffs' failure to establish the necessary minimum contacts for the MP Defendants with the United States and/or the State of New York, should and must result in this Honorable Court's dismissal of this Complaint with prejudice. See, _Porina v. Marward Shipping Co., Ltd.,_ 521 F3d 122, 129 (2d Cir., 2008) (holding where minimum contacts are not found, the Court, "need not consider whether personal jurisdiction would be "reasonable" in the particular circumstances of the case).

However, in the unlikely event that the Plaintiffs overcome the overwhelming obstacles posed by the undeniable lack of general and specific jurisdiction over the MP Defendants, this Honorable Court would still have to determine whether the exercise of personal jurisdiction would be reasonable in the context of the DPC. The "reasonableness" test asks, "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is whether it is reasonable under the circumstances of the particular case" See, *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez,* 305 F3d 120, 127 (2d Cir., 2002).

The Court must analyze five factors in order to reach a determination as to whether or not it is reasonable to exercise jurisdiction over the MP Defendants:  (1) the burden that the exercise of jurisdiction will impose on the defendant(s); (2) the interest of the forum state in adjudicating the case; (3) the plaintiffs' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. In the case at bar, a weighing of these factors by this Court should result in a determination that the exercise of personal jurisdiction against these Defendants is unreasonable.

### a)   The Exercise Of Jurisdiction Would Impose A Substantial Burden On Each Defendant

The MP Defendants are domiciliaries of India, with their residences and principal places of business in India. Rama Decl. ¶ 4, Teja Decl. ¶ 5, Maturi Decl. ¶5, 6.  Moreover, the MP Defendants do not have any business or other connections with the United States or with the State of New York.  Rama Decl. ¶ 4, Teja Decl. ¶ 5, Maturi Decl. ¶ 5, 6.  As a result, all documents and witnesses necessary for their defense are located in India.  Accordingly, compelling the MP Defendants to appear on a different continent so as to defend a frivolous

lawsuit would result in exorbitant expenses. In addition, as many witnesses fall outside of this Court's jurisdiction, it would be impossible to compel the testimony of those that are uncooperative.  These factors would be severely prejudicial to the MP Defendants' case and would amount to a clear violation of the DPC.  See, *Porina v. Marward Shipping Co., Ltd.,* 05-Cv-5621 (RPP), 2006 WL 2465819, at *8 (SDNY, 8/24/06) (requiring Cypriot defendant-corporation to defend suit in New York would impose a "substantial burden" on defendant, where defendant's sole place of business was in Cypress, none of the records, witnesses with information about this litigation were located in New York, none of the relevant files were located in New York, and defendant did not have substantial business contacts with New York that would cause it to expect to be haled into Court in New York).

Further, the MP Defendants could not have had any expectation that their lawful business activities in India could or would have had any effect, positive or negative, anywhere in the United States or in the State of New York.  Clearly, this factor weighs heavily in favor of the MP Defendants.

> **b)      The United States And New York State Have No Significant Interest In Proceeding Against These Defendants In This Court**

Neither the United States nor the State of New York have any direct interest in either the Satyam Action or the Aberdeen Action, or any significant interest in whether or not said lawsuits against the MP Defendants are adjudicated in this forum.  The alleged "control person" claims in both the FAC and the SAC against the MP Defendants are secondary and derivative in nature, and lack substance and reasonable basis in fact.  Further, India has already commenced in its own processes for resolving the alleged frauds committed by Satyam.  Further still, given the conclusory nature of both the FAC and the SAC, even if the US had any interest in this litigation,

the fact that this is a suit by primarily foreign investors, over shares that were traded on a foreign exchange, where there is a complete absence of any factual and/or legal basis with respect to the "control person" claims against the MP Defendants, render the Plaintiffs' attempt to exercise personal jurisdiction over the MP Defendants unreasonable as a matter of law.  Furthermore, given the recent Supreme Court opinion in *Morrison v. NAB,* 561 US---, 130 S.Ct. 2869 (2010), nearly ninety percent of the potential claims asserted by the Plaintiffs in both the Satyam Action and the Aberdeen Action are no longer available, as they arise from transactions made by the Plaintiffs on foreign stock exchanges.

Moreover, in *Morrison v. NAB,* 561 US---, 130 S.Ct. 2869 (2010), the Supreme Court held that neither Section 10b of the Exchange Act or Rule 10b-5 provide a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges.  The MP Defendants' FRCP 12(b)(6) Motion to Dismiss contends that *Morrison,* supra, mandates the dismissal of Plaintiffs' claims for damages with respect to investors who purchased Satyam's stock on foreign exchanges-approximately 90 percent of the Plaintiffs' claims for damages concern such foreign transactions of Satyam's stock.  Thus, based upon the likely consequences of *Morrison,* supra, neither the Lead Plaintiffs nor the MP Defendants could obtain effective and efficient relief in this Court, or in any other Court of the United States.  Effective relief would not be furthered by the retention of this case, because the Lead Plaintiffs and the MP Defendants would suffer extreme hardship by litigating this case here.  Thus, this factor also weighs strongly in favor of the MP Defendants and supports a finding that the exercise of personal jurisdiction against the MP Defendants would be unreasonable.

Accordingly, there are no compelling policy reasons that would support this Court's exercise of jurisdiction over the MP Defendants, especially where the MP Defendants did not engage in any acts or omissions in the United States, or any acts or omissions in India that had foreseeable consequences in New York.   Consequently, this factor also weighs heavily in favor of the MP Defendants' motion to dismiss.

> **c)**    **The Plaintiffs' Alleged Interest In Obtaining Convenient And Effective Relief Is Not Furthered By The Exercise of Jurisdiction Of This Court**

The "efficient resolution" factor in addressing reasonableness generally relates to consideration of the location of witnesses and evidence. *Metro. Life Ins.*, 84 F.3d at 574. Plaintiffs' allegations against the MP Defendants relate solely to their relationship with Satyam and it's Officers, the evidence and witnesses relevant to these allegations are located entirely in India and much of that evidence is now solely under the control of the Republic of India and its governmental agencies. This evidence could not be compelled by this Court, and thus, any potential assertion of personal jurisdiction by this Honorable Court against the MP Defendants, would be severely prejudicial, and, as a result, would promote an inefficient resolution of the Plaintiffs' claims against the MP Defendants, rather than an efficient resolution.

The MP Defendants do not have any property either in the State of New York, or anywhere else in the United States that might satisfy a money judgment.  Rama Decl. ¶ 4, Teja Decl. ¶ 5, Maturi Decl. ¶ 5,6.  Therefore, in the remote circumstance that this Honorable Court does not dismiss this lawsuit on the grounds propounded by the MP Defendants, and in the further remote event that the Plaintiffs could establish Rule 20(a) liability and prove damages against the MP Defendants at trial, any judgment in this case would have to be enforced in India. Consequently, the Plaintiffs would need to commence a new suit against the MP Defendants in

India, in order to enforce any purported judgment. In such a suit, the MP Defendants will certainly attack the exercise of jurisdiction in the United States as beyond the permissible bounds of Indian law.  In addition, the MP Defendants would also argue that the Plaintiffs' attempt to collect damages obtained in a class action securities litigation in the United States would violate the clear public policy of India. As a result, the Indian Courts may dismiss the Plaintiffs' potential enforcement action on jurisdictional and public policy grounds, and may require the entire case to be re-litigated in India to great cost and expense to all parties. See _Ins. Co. of N._ _Am. v. Marina Salina Cruz_, 649 F.2d 1266, 1273 (9th Cir. 1981) (reversing district court's holding of jurisdiction and finding that plaintiff had not established that litigation against Mexican shipyard in Alaska would be convenient where plaintiffs "have not demonstrated the probability of collecting an Alaskan judgment.").  Accordingly, the adjudication of this case in the Southern District of New York would exacerbate the inconvenience to the parties and would be grossly inefficient, expensive and unduly burdensome.

Moreover, the in _Morrison v. NAB,_ 561 US---, 130 S.Ct. 2869 (2010), the Supreme Court held that neither Section 10b of the Exchange Act or Rule 10b-5 provide a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges.[1]  The MP Defendants' FRCP 12(b)(6) Motion to Dismiss contends that _Morrison,_ supra, mandates the dismissal of Plaintiffs' claims for damages with respect to investors who purchased Satyam's stock on foreign exchanges (approximately 90 percent of the Plaintiffs' claims for damages concern such foreign transactions of Satyam's stock).  Thus, based upon the likely consequences of _Morrison_, supra, neither the Lead Plaintiffs

---

[1] The MP Defendants also rely upon the Officer Defendants' Memorandum of Law concerning _Morrison_ as a basis for dismissal of the FAC and SAC with respect to the MP Defendants.

nor the MP Defendants could obtain effective and efficient relief in this Court, or in any other Court of the United States.

Thus, this factor also weighs strongly in favor of the MP Defendants and would support a finding by this Honorable Court that the exercise of personal jurisdiction against the MP Defendants would be unreasonable.

### d) The Interstate Judicial System's Interest In Obtaining The Most Efficient Resolution Of The Controversy

This action does not affect the interest of any other state of the United States. If the action cannot be litigated in New York, then the only other available venue would be in India. Thus concerns about interstate judicial system efficiency are not present in this application and would not weigh in favor of this Court's exercising jurisdiction over the MP Defendants in New York.

### e) The Shared Interest Of The States In Furthering Substantive Social Policies

For the same reasons set forth in analyzing the prior factor of Interstate Judicial System efficiency, this factor also is not present as an issue in this proceeding. The several states have no substantive social policies at issue in this lawsuit. Therefore, this factor does not weigh in favor of this Court's exercising jurisdiction over the MP Defendants in New York.

Based on the foregoing, this Honorable Court should and must find that any purported exercise of personal jurisdiction against the MP Defendants would be unreasonable and in violation of the DPC.

### B. SERVICE OF PROCESS WAS IMPROPER

The Plaintiffs have failed to properly serve the MP Defendants in accordance with the applicable rules of law.  See, *Ferrostaal, Inc. v. Haci Hasssan Yardim,* 2006 WL 2819585, at *2

(SDNY, Sept. 29, 2006). Where service of process is at issue, the Plaintiffs bear the burden of proving proper service. See *Three Crown Ltd. v. Caxton Corp.*, 817 F.Supp. 1033, 1050 (S.D.N.Y.1993). Valid service of process is an indispensable prerequisite to the assertion of personal jurisdiction over a defendant. *Pearson v. Bd. of Educ.*, No. 02 Civ. 3629(RCC), 2004 WL 2297354 at *3 (S.D.N.Y. Oct. 12, 2004), citing Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., 484 U.S. 97, 104 (1987).

Since this lawsuit involves service of process upon foreign defendants, FRCP Rule 4(f) is applicable. Service upon a defendant in a foreign country may be obtained "[B]y any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention," Fed.R.Civ.P. 4(f)(1). The Supreme Court has held that service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163 ("Hague Convention"), is mandatory when serving a foreign defendant in a signatory country. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). The United States is a party to the Hague Convention and India became a signatory to the Hague Convention in 2007.

## 1.  The Hague Convention Requirements

The Hague Convention requires each signatory country to establish a "Central Authority" which will receive requests for service from other signatory countries and serve judicial and/or extrajudicial document(s) upon the local defendant(s) in accordance with local law or according to another requested method that is not inconsistent with local law. Hague Convention, arts. 2 & 5. As a ratified treaty, the Convention is the Supreme Law of the land, and maintains controlling effect. See U.S. Const. Art. VI, cl. 2; *Ackermann v. Levine*, 788 F.2d at 838. See also *R. Griggs*

18

*Group Limited v. Filanto Spa*, 920 F.Supp. 1100, 1102 (D.Nev.1996) (where the Hague

Convention applies, its provisions are mandatory, and failure to comply voids the attempted

service).  Accordingly, it is incontrovertible that the Hague Convention is applicable to

Plaintiffs' attempted service of the FAC and the SAC upon the MP Defendants in India.

The Republic of India has designated its Ministry of Law and Justice as the "Central

Authority" for purposes of Article 2 of the Hague Convention. India has expressly objected to

the alternative means of service provided by Article 10 of the Hague Convention (which

alternative means include but are not limited to service by postal channels or by competent

persons in the jurisdiction or by judicial officers). The Hague Convention website gives the

following Notice regarding Service under the Hague Convention in India:

> Formal Service of Process or Documents in India from the Courts of
> Foreign Countries who are signatory to the Hague Convention:
>
> India is now a signatory to the Hague Convention on the Service Abroad of
> Judicial and Extra-Judicial documents in Civil and Commercial Matters.
>
> Therefore, the formal method for service in India with effect from August 1,
> 2007 is **pursuant to the Hague Convention and declaration or special
> conditions mentioned by India in while signing the Hague Convention**.
>
> All the requirements of the Hague Convention must be met while serving the
> documents, summons / subpoena in all Civil matters, including Matrimonial,
> Divorce, Custody, Family law and others; Commercial & Corporate Matters.
>
> **In addition, all the requirements under the declarations to the Hague
> Service Convention made by India should be met, including but not
> limited to the following conditions**:
>
> Documents for service must be written in the English language…
>
> **Documents cannot be served via mail**.
>
> **Documents must be served indirectly are per the requirements of the
> declaration**.

**Documents can not be served directly to the defendants in India**." Emphasis added.

See http://hcch.evision.nl/index_en.php?act=conventions.status&cid=17

**2.    The Plaintiffs Failed to Properly Serve the Rama and Teja in the Satyam Action**

With respect to the Satyam Action, the Plaintiffs filed Affidavits of Service, which illustrate the Plaintiffs' brazen disregard and non-compliance with the Hague Convention. Declaration of Adam Finkel, dated April 29, 2011, Exhibit "A".  The aforementioned Affidavits of Service clearly exhibit that the Plaintiffs failed to use the "Central Authority" but instead utilized a local law office to attempt to serve Rama and Teja personally, rather than through the Central Authority, in the Satyam Action.

Furthermore, the Affidavits of Service filed with this Court, with respect to Rama and Teja in the Satyam Action, do not even attest that the process server was attempting to initiate or complete service of process upon Rama and Teja pursuant to the Hague Convention.  Instead, the defective Affidavits of Service merely state that such purported service was allegedly in accordance with the provisions of India's Code of Civil Procedure.  As a result of Plaintiffs' defective and improper attempted service of process upon Rama and Teja in the Satyam Action, this Court should and must dismiss the Satyam Action, as it relates to Rama and Teja.  See *Ferrostaal, supra*.

**3.    The Plaintiffs Failed to Properly Serve the MP Defendants in the Aberdeen Action**

To date, the Plaintiffs have not submitted any Affidavits of Service indicating that it completed service process upon any of the MP Defendants in accordance with the Hague Convention requirements noted above, in the Aberdeen Action.  In addition, the MP Defendants

20

have not received any documents from the Central Authority in this regard, including but not limited to the SAC or any other prior pleadings submitted by the Plaintiffs in the Aberdeen Action.  Rama Decl. ¶ 6, Teja Decl. ¶ 7, Maturi Decl. ¶ 7.  Accordingly, the Plaintiffs have completely and utterly failed to complete service of process upon the MP Defendants in the Aberdeen Action, and this Honorable Court should and must dismiss the Aberdeen Action, as it relates to the MP Defendants.

### 4.        The Time to Serve the MP Defendants Has Expired

Although the provisions of the 120 day service rule contained in FRCP 4(m) does not ordinarily apply to service of process in foreign countries (because foreign country service of process is governed by treaties such as the Hague Convention), the Plaintiffs do not have an open and indefinite amount of time to accomplish service of process upon the MP Defendants. Indeed, the Courts in this Circuit have analyzed the issue of timeliness of service of process upon foreign defendants, such as the MP Defendants, and have utilized what they describe as a "flexible due diligence standard". See, *Yellowave Corp. v. Mana*, 2000 WL 1508249 (SDNY, 2000), where the District Court held:

> However, plaintiff does not have unlimited time in which to serve Kozousash. See, *In re Crysen/Montenay Energy Co*., 166 B.R. 546, 553 (SDNY,1994) ("The mere fact that Congress exempted foreign service from the 120-day requirement …does not give litigants an unlimited time in which to complete service."). "Rather, where service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely." *Travers Tool Co. v. Southern Overseas Express Line, Inc.,* 98 Civ. 8464, 2000 WL 194781, at *1 (SDNY, Feb. 17, 2000). Under this standard, the 120-day time limit is appropriate where plaintiff has not even attempted service in the foreign country. See *Montalbano v. Easco Hand* Tools, Inc., 766 F.2d 737, 740 (2nd Cir,1985)  (court should apply the 120-day service requirement to service  in a foreign country because plaintiff "has not exactly bent over backward to effect service [in the foreign country]"); *D. Klein & Son*, 1999 WL 349932,  at *1 ("The Court of Appeals for the Second Circuit has made it clear, however, that the "foreign country exception to the 120-day period for service is simply

inapplicable [where Plaintiff] never attempted to serve process in a foreign country."') Id. at p. 2, Emphasis added.

In *Yellowave,* supra, the District Court dismissed the Complaint against one defendant where service was not accomplished within 170 days. In the Satyam Action, service hasn't been accomplished, with respect to the MP Defendants, in more than 630 days. In the Aberdeen Action, service hasn't been even attempted, with respect to the MP Defendants, for more than 570 days. Accordingly, in accordance with the "flexible due diligence standard" this Honorable Court should and must dismiss the Satyam Action, with respect to Rama and Teja, and the Aberdeen Action, as it relates to each of the MP Defendants. *Ocasio v. Fashion Institute of Technology*, 86 F.Supp.2d 371 (SDNY, 2000) (holding that FRCP 4(m), "has been interpreted by the Second Circuit to require a district court to dismiss an action where a plaintiff has failed to serve a defendant within 120 days after the filing of the complaint, unless the plaintiff can establish "good cause." See *Armstrong v. Sears,* 33 F.3d 182, 188 (2nd Cir,1994); *Frasca v. United States*, 921 F.2d 450, 453 (2nd Cir, 1990) (interpreting Rule 4(j)); *Santos v. State Farm Fire and Casualty Company*, 902 F.2d 1092, 1094-95 (2nd Cir,1990)."

Notably, the statute of limitations on the Plaintiffs' federal claims against the MP Defendants has expired. However, this Honorable Court should not be swayed by any of the Plaintiffs' anticipated arguments utilizing the running of the statute of limitations to establish prejudice in the event of a dismissal on these grounds. Indeed, dismissal is proper under Rule 4(m), "even if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claim." *McKibben v. Credit Lyonnais,* No. 98 Civ. 3358, 1999 WL 604883, at *4 (SDNY, 1999) (dismissing plaintiff's ADEA claim under Rule 4(m) even though such dismissal would effectively bar plaintiff from pursuing his claim because the statute of limitations had run); *Novak v. Nat'l Broadcasting Company, Inc.,* 131 F.R.D. 44, 45

(SDNY,1990) (**"**If the statute runs after the filing of the complaint but before the effective date of service of the summons and the case is later dismissed without prejudice pursuant to Rule 4(j) the statute of limitations will bar any refiling."); *Delicata v. Bowen*, 116 F.R.D. 564, 566 (SDNY,1987) (dismissing Social Security case for same reason); *Burks v. Griffith*, 100 F.R.D. 491, 492-93 (SDNY,1984) (civil rights).

As the Republic of India requires that service of the initiating papers of a foreign lawsuit (summons and complaint) shall only be served through its Central Authority, and the plaintiffs have not produced even a scintilla of evidence that process was timely transmitted to India's Central Authority with the requisite forms, within 120 days of the filing of the action herein; or that the Central Authority received such process during that time period and properly served the MP Defendants with process under the Hague Convention, this Court should and must quash service and dismiss the Satyam Action, as it relates to Rama and Teja, and the Aberdeen Action, as it relates to all of the MP Defendants, with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the MP Defendants respectfully request that this Honorable Court grant its Motion to Dismiss the FAC, the SAC, and all prior pleadings, as they relate to the MP Defendants, pursuant to FRCP 12(b)(2) and 12(b)(5), with prejudice, and that this Honorable Court grant the MP Defendants such other and further relief as is just and proper in the premises.

Dated: New York, New York
April 29, 2011

**SABHARWAL, NORDIN & FINKEL**


By:___/s/ Adam Finkel_____
    Adam Finkel, Esq. (AF-1368)
    350 Fifth Avenue, 59th Floor
    New York, New York 10118
    Tel:    (212) 601-2882
    Fax:    (212) 601-2883
    E-mail:adam@snfny.com