UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――x
In re SATYAM COMPUTER SERVICES LTD.   )   09 MD 2027 (BSJ)
SECURITIES LITIGATION                 )
                                      )   (Consolidated Action)
                                      )
                                      )   ECF Case
―――――――――――――――――――――――――――x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
KRISHNA G. PALEPU'S MOTION TO DISMISS
THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Jeffrey S. Jacobson
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

Colby A. Smith
Aaron M. Tidman
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)

*Attorneys for Defendant
Krishna G. Palepu*

July 6, 2011

## PRELIMINARY STATEMENT

Lead Plaintiffs' sole basis for alleging securities fraud claims against Krishna G. Palepu, a former non-executive director of Satyam who also is a professor and associate dean at Harvard Business School, is his former membership on the Audit Committee of Satyam's Board. Yet, while Lead Plaintiffs allege that the so-called "AC Defendants" named in their First Amended Consolidated Class Action Complaint ("FACC") supposedly missed purported "red flags" in 2007-2008, Dr. Palepu ceased to be a member of the Audit Committee in July *2005*, long before that period. *See* Lead Plaintiffs' Memorandum of Law in Opposition to the Motions to Dismiss ("Pl. Opp. Mem.") at 1 n.1. Lead Plaintiffs thus have not even attempted to support their claim against Dr. Palepu. Neither in the FACC, nor in their brief, do they allege any specific culpable act or omission by Dr. Palepu or by the Audit Committee during his 2003-2005 tenure on it.[1]

Dr. Palepu joins the other AC Defendants' arguments demonstrating that Plaintiffs' claims fail against all of them. "In a [fraud] case involving multiple defendants," however, "plaintiffs must plead circumstances providing a factual basis for scienter for *each defendant*; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) (emphasis added). Dr. Palepu therefore writes separately to demonstrate the additional failures of Lead Plaintiffs' claims against him, even beyond those that should cause the Court to dismiss Lead Plaintiffs' claims against all the AC Defendants.

---

[1] During Dr. Palepu's service on the Audit Committee from July 2003-July 2005, its two other members were Mangalam Srinivasan, another "AC Defendant" who remained on the Audit Committee after Dr. Palepu's departure, and V.P. Rama Rao, a former senior government official in India. Mr. Rao passed away in May 2007. Lead Plaintiffs thus have sued every living person who served on Satyam's Audit Committee since 2003, but among these "AC Defendants," only Dr. Palepu had left the Audit Committee long before the events Lead Plaintiffs improperly characterize as "red flags."

I.  **Lead Plaintiffs' Audit Committee-Related Allegations All Focus on 2007-2008.**

Lead Plaintiffs do not and cannot allege that Dr. Palepu or any other AC Defendant knew of management's fraud. They instead premise their claims against the AC Defendants on an unfounded theory, contending that the Audit Committee missed so-called "red flags" that should have put its members on notice of the fraud being perpetrated by the Officer Defendants. These purported "red flags" are nothing of the kind, as the AC Defendants' main brief explains. With respect to Dr. Palepu, however, these allegations are simply irrelevant, because the two data points on which Lead Plaintiffs base their claims against the AC Defendants both occurred long after Dr. Palepu ceased to be a member of the Audit Committee. Specifically:

- Lead Plaintiffs assert that the 2007-2008 Audit Committee should have been aware of internal control deficiencies at Satyam supposedly identified by Satyam's auditors in letters "dated May 10, 2007 and August 8, 2008." Pl. Opp. Mem. at 3, *citing* FACC ¶ 242.c; *see also* Pl. Opp. Mem. at 6-7, 17. Lead Plaintiffs, however, do not allege that these 2007-2008 letters revealed any of management's wrongdoing, or any material weakness — or even that the 2007-2008 Audit Committee actually saw these letters. They certainly do not allege that Dr. Palepu, who ceased to be a member of the Audit Committee 19 months prior to May 10, 2007, saw them (as, in fact, he did not).

- Lead Plaintiffs assert that "the AC Defendants" approved "grossly excessive fees to [Satyam's] auditors" without sufficient scrutiny. Pl. Opp. Mem. at 4, *citing* FACC ¶ 242.b; *see also* Pl. Opp. Mem. at 7-8, 18-19. The only years as to which Lead Plaintiffs identify and challenge the fees charged by Satyam's auditors, however, are, again, 2007 and 2008. *See* FACC ¶¶ 189-192, 242.b. Lead Plaintiffs do not contend that Satyam paid excessive audit fees in 2003-2005, when Dr. Palepu had a role in approving those fees, nor do they allege that Dr. Palepu was aware of Satyam's audit fees in later years or had a basis to judge their comparative size (as, in fact, he was not and did not).

These two assertions are too slender a reed upon which to perch claims against *any* AC Defendant. But, with respect to Dr. Palepu and the *2003-2005* Audit Committee on which he served, they are no reed at all. Lead Plaintiffs' inability to plead that *any* of their "red flags" existed during the time of Dr. Palepu's service requires dismissal of the claims against him. *See, e.g., Police and Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*, 645 F. Supp. 210, 234

(S.D.N.Y. 2009) (dismissing claims against committee members who did not serve when "red flags" allegedly were missed; "Plaintiffs do not even attempt to distinguish between the mental states of the four individuals, instead referring to the [Committee] Defendants as a group, even though the individuals joined the [Board and Committee] at different times.")

In an attempt to justify their claims against Dr. Palepu, notwithstanding the absence of allegations in the FACC that pertain to him, Lead Plaintiffs pretend that the FACC alleges earlier "red flags" when, in actuality, it does not. Citing their allegations against the *Officer* Defendants, whose fraud Lead Plaintiffs claim may have begun as early as 1999, Lead Plaintiffs argue that "the AC Defendants also ignored the red flags raised by the Officer Defendants' diversion of funds from Satyam to their personal network of companies." Pl. Opp. Mem. at 10. The FACC, however, alleges no such thing; the paragraphs of the FACC cited in this part of Lead Plaintiffs' brief do not mention the Audit Committee at all. To the contrary, the FACC details the ways in which the Officer Defendants allegedly concealed their fraud. Lead Plaintiffs do not and cannot allege that the Audit Committee, either during the period in which Dr. Palepu served on it or thereafter, saw any document, learned any fact from Satyam's auditors or any other source, or took or recklessly failed to take any step that Lead Plaintiffs identify as something that should have alerted them to the Officer Defendants' fraud.

The closest Lead Plaintiffs come to a specific charge against the Palepu-era Audit Committee is their bare allegation that Satyam "paid down . . . at least $40 million" of the Officer Defendants' undisclosed "secret loans" at some unspecified time in or before 2008, and that "[s]uch 'repayments could not have gone unnoticed by, among others, the AC Defendants." Pl. Opp. Mem. at 10-11, *citing* FACC ¶ 117. Lead Plaintiffs do not allege when these repayments occurred, and certainly do not allege that they occurred between July 2003 and July

3

2005, while Dr. Palepu was on the Audit Committee.  More importantly, however, Lead Plaintiffs plead that the Officer Defendants' loans and repayments were "secret," and that Satyam's outside auditors at PwC either were complicit in the transactions or failed to detect them.  They fail to allege any facts showing how or why the Audit Committee itself was consciously reckless in failing to discover these alleged "secret" transactions.  FACC ¶ 117.

Lead Plaintiffs' naked speculation that these actions "could not have gone unnoticed," at whatever unspecified time they allegedly occurred, does not remotely satisfy their pleading burden against Dr. Palepu or any other Audit Committee member.  Under settled law, their burden is to make "a strong showing of reckless disregard for the truth," defined as "conscious recklessness" or "a state of mind approximating actual intent, and not merely a heightened form of negligence."  *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 109 (2d Cir. 2009).  A claim that an act "could not have gone unnoticed" — particularly in a pleading claiming that even the outside auditors did not notice — does not suffice.  *See, e.g., Glaser v. The9, Ltd.*, No. 09 Civ. 8904 (RJH), 2011 WL 1106713, at *12 (S.D.N.Y. Mar. 28, 2011).

II. **The Proposed December 2008 Maytas Transaction Does Not Suffice to Establish Dr. Palepu's Scienter.**

Lead Plaintiffs alternately attempt to support their fraud charge against Dr. Palepu by pointing to Satyam's announcement, on December 16, 2008, "that its Board of Directors had approved the acquisition of Defendants Maytas Properties and Maytas Infra," and another Satyam announcement, just a few hours later, that the deal would *not* proceed.  Lead Plaintiffs would have the Court infer that Satyam's Board unconditionally "approved" this billion-dollar transaction "in a single meeting on the very same day it was first proposed," Pl. Opp. Mem. at 4, even though the very document on which Lead Plaintiffs rely flatly contradicts their claim.

4

Lead Plaintiffs attached to their brief a set of draft minutes of this Board meeting. *See* Okun Decl. [Docket No. 322] Ex. 2. Leaving aside that Dr. Palepu and the other outside directors had no control over management's preparation of this document, it states that (1) the directors were presented with a compelling rationale for engaging in the transaction, including an independent valuation prepared by Ernst & Young; but (2) even so, the directors required (a) additional, comprehensive valuations of Maytas Properties, and (b) further reporting to the Board if the independent valuations were lower than management's valuation. *See id.* at 7, 10.[2]

The document upon which Lead Plaintiffs rely thus shows that the Board *did not* unconditionally "approve" anything but more study. That Satyam's management publicly announced that the transaction would proceed does not change the Board's mandate and objections, and management withdrew this statement (and their proposal) almost immediately. *See* Pl. Opp. Mem. at 9. Lead Plaintiffs do not and cannot allege that Dr. Palepu or any other outside director had anything to do with these events. Even the U.S. Securities and Exchange Commission's complaint against Satyam puts the entire Maytas issue on management's shoulders, alleging that Raju orchestrated the attempted acquisition. *See SEC v. Satyam Computer Services Ltd.*, No. 11-cv-00672, Complaint ¶17. The SEC's allegations of these events do not criticize Dr. Palepu or any other outside director.

Notably, Lead Plaintiffs assert securities fraud claims only against outside directors who served, at one time or another, on Satyam's Audit Committee. They are not alleging fraud claims against other outside directors who attended this December 2008 meeting. It therefore

---

[2] For purposes of this motion to dismiss, Dr. Palepu does not dispute that the draft minutes upon which Plaintiffs rely accurately reflect the Board's deliberations. As the minutes reflect, however, Dr. Palepu had been granted a leave of absence from the meeting in order to attend an international conference, and he did not attend the meeting in person. He participated, by telephone, in only a part of the meeting. *See* Okun Decl. Ex. 2 at 1.

5

appears Lead Plaintiffs are attempting to allege that Audit Committee members somehow were or should have been in possession of more or different information than other directors and should have pressed for a different outcome. Even if these vague allegations sufficed against any Audit Committee member — which they do not — Dr. Palepu was 41 months removed from his service on Satyam's Audit Committee when the Board considered this transaction.

### III. Lead Plaintiffs Have Not Met Their Burden Under the PSLRA.

Challenged by the AC Defendants' opening brief to justify their fraud claims against Dr. Palepu, Lead Plaintiffs' opposition memorandum ignored him. In their brief, immediately after stating that "the AC Defendants were warned [of alleged control deficiencies] *as early as 2007*" (Pl. Opp. Mem. at 17, emphasis added) — far too late to justify claims against Dr. Palepu — Lead Plaintiffs dropped a telling footnote. *See id*. at 17 n.7. They did not mention Dr. Palepu by name in that footnote, but they argue that all AC Defendants should remain in the case because Lead Plaintiffs hope their claims respecting earlier years may "be borne out in discovery." "Plaintiffs' argument that future discovery will more fully develop these allegations is unavailing; the purpose of the PSLRA's heightened pleading standard is to avoid subjecting defendants to discovery on the basis of bare, conclusory claims." *Vining v. Oppenheimer Holdings, Inc.*, No. 08 Civ. 4435 (LAP), 2010 WL 3825722, at *8 (S.D.N.Y. Sept. 29, 2010), *citing Novak v. Kazaks*, 216 F.3d 300, 310 (2d Cir. 2000). *See also, e.g., In re BISYS Sec. Litig*., 496 F. Supp. 2d 384, 387 (S.D.N.Y. 2007) ("The PSLRA effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's scienter prior to obtaining discovery."). Lead Plaintiffs' inability to allege specific facts justifying their claims against Dr. Palepu, even after having received thousands of pages of internal Satyam documents, demonstrates that their claims against him should be dismissed without further leave to replead.

## CONCLUSION

For the foregoing reasons, and those stated in the Director Defendants' opening main and *Morrison*-related memoranda and in the Director Defendants' separate replies, defendant Krishna G. Palepu respectfully submits that the Court should dismiss, without leave to replead, all of the claims against him for failure to state a claim under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995.

Dated:  New York, New York
           July 6, 2011

                    DEBEVOISE & PLIMPTON LLP

                    By:

                    **/s/ Jeffrey S. Jacobson**
                        Jeffrey S. Jacobson

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

Colby A. Smith
Aaron M. Tidman
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)

*Attorneys for Defendant
Krishna G. Palepu*

7