UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE SATYAM COMPUTER SERVICES, LTD., SECURITIES LITIGATION<br><br>This Document Applies to: 10 Civ. 2877 (BSJ) | 09-md-2027 (BSJ)<br><br>(Consolidated Action)<br><br>ECF case |
|---|---|

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OF ABERDEEN CLAIMS ADMINISTRATION, INC.**

Howard M. Shapiro
Fraser L. Hunter, Jr.
Brian A. Sutherland
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Price Waterhouse, PricewaterhouseCoopers Private Ltd., and Lovelock & Lewes*

# TABLE OF CONTENTS

Page

ARGUMENT ..... 1

I. THE SECTION 10(b) CLAIM AGAINST THE AUDITOR DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO PLEAD SCIENTER ..... 1

II. ABERDEEN'S STATE LAW CLAIMS SHOULD BE DISMISSED ..... 4

A. SLUSA Precludes All Of Aberdeen's State Law Claims ..... 4

B. The Complaint Fails To State A Claim For Fraud, Negligence, Or Negligent Misrepresentation ..... 8

III. ABERDEEN FAILS TO SHOW THAT PRICEWATERHOUSECOOPERS PVT. LTD. IS AN ALTER EGO OF THE AUDITOR DEFENDANTS ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anwar v. Fairfield Greenwich, Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) .......... 6

*Clark v. Nevis Capital Management, LLC*,
No. 04 Civ. 2702, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) .......... 8

*Culbreth v. Amosa (Pty) Ltd.*,
898 F.2d 13 (3d Cir. 1990) .......... 12

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) .......... 3

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
595 F. Supp. 2d 1253 (M.D. Fla. 2009) .......... 4

*Engle v. Matrix Golf & Hospitality Phila., LLC*,
No. 08-5831, 2009 WL 880680 (E.D. Pa. Mar. 31, 2009) .......... 12

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) .......... 7

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) .......... 5

*In re Chambers Dev. Sec. Litig.*,
848 F. Supp. 602 (W.D. Pa. 1994) .......... 11

*In re Computer Personalities Sys., Inc.*,
No. 01–14231DWS, 2003 WL 22844863 (Bankr. E.D. Pa. Nov. 18, 2003) .......... 9

*In re Intelligent Elecs., Inc. Sec. Litig.*,
No. 95-7663, 1996 WL 304852 (E.D. Pa. June 6, 1996) .......... 11

*In re Kingate Mgmt. Ltd. Litig.*,
No. 09 Civ. 5386, 2011 U.S. Dist. LEXIS 41598 (S.D.N.Y. Mar. 30, 2011) .......... 5, 6, 8

*In re Marsh & McLennan Cos. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) .......... 4

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) .......... 2

*In re Regal Commc'ns Corp. Sec. Litig.*,
No. 94-179, 1996 WL 411654 (E.D. Pa. July 17, 1996)................................................ 11

*In re Royal Bank of Scot. Grp. PLC Sec. Litig.*,
No. 09 Civ. 300, 2011 U.S. Dist. LEXIS 3974 (S.D.N.Y. Jan. 11, 2011)..................... 7, 8

*In re Sierra Wireless, Inc. Sec. Litig.*,
482 F. Supp. 2d 365 (S.D.N.Y. 2007)................................................................................ 2

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
703 F. Supp. 2d 362 (S.D.N.Y. 2010)................................................................................ 2

*In re Vivendi Universal, S.A. Sec. Litig.*,
No. 02 Civ. 05571, 2011 U.S. Dist. LEXIS 17514 (S.D.N.Y. Feb. 17, 2011).................. 7

*In re Westinghouse Sec. Litig.*,
832 F. Supp. 948 (W.D. Pa. 1993).................................................................................... 10

*In re Westinghouse Sec. Litig.*,
90 F.3d 696 (3d Cir. 1996) ................................................................................................ 10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006)..........................................................................................5, 7, 8

*Morrison v. Nat'l Austl. Bank Ltd.*,
130 S. Ct. 2869 (2010) ........................................................................................................ 7

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ................................................................................................ 2

*Paraschos v. YBM Magnex Int'l, Inc.*,
No. Civ.A 98-6444, 2000 WL 325945 (E.D. Pa. Mar. 29, 2000)................................... 11

*Pina v. Henkel Corp.*,
No. 07-4048, 2008 WL 819901 (E.D. Pa. Mar. 26, 2008)............................................. 12

*Rapid Circuits, Inc. v. Sun Nat'l Bank*,
No. 10-6401, 2011 U.S. Dist. LEXIS 47231 (E.D. Pa. May 2, 2011)............................ 12

*Shah v. Helen Hayes Hosp.*,
252 Fed. Appx. 364 (2d Cir. 2007)...................................................................................... 2

*Sharp v. Coopers & Lybrand*,
457 F. Supp. 879 (E.D. Pa. 1978)...................................................................................... 11

*WM High Yield Fund v. O'Hanlon,*
No. Civ.A. 04-3423, 2005 WL 1017811 (E.D. Pa. Apr. 29, 2005) ....10, 12

*Wallace v. Sys. & Computer Tech. Corp.*,
No. Civ.A. 95-CV-6303, 1997 WL 602808 (E.D. Pa. Sept. 23, 1997) .... 10

*Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*,
39 F. Supp. 2d 517 (M.D. Pa. 1999) .... 10

**STATE CASES**

*Aronson v. GreenMountain.com*,
809 A.2d 399 (Pa. Super. Ct. 2002) .... 9

*Bilt-Rite Contrs., Inc. v. Architectural Studio*,
581 Pa. 454 (Pa. 2005) .... 9, 10

*CRT Invs., Ltd. v. BDO Seidman, LLP,*
No. 601052/09, 2011 WL 2225050 (N.Y. App. Div., 1st Dep't, July 9, 2011).... 9

*Kaufman v. i-Stat Corp.*,
165 N.J. 94 (N.J. 2000) .... 9

*Lumax Indus. v. Aultman*,
669 A.2d 893 (Pa. 1995) .... 11

**FEDERAL STATUTES & RULES**

15 U.S.C. § 77r(b)(1)(A) .... 6

15 U.S.C. § 78bb(f)(1)(A) .... 4

15 U.S.C. § 78bb(f)(5)(E) .... 6

15 U.S.C. § 78u-4(b)(2) .... 2

Fed. R. Evid. 201(b) .... 2

**SECONDARY AUTHORITIES**

Restatement (Second) of Torts § 552 ....10, 11

Defendants Price Waterhouse and Lovelock & Lewes (the "Auditor Defendants"), and PricewaterhouseCoopers Private Limited ("PW Pvt. Ltd.") respectfully submit this reply in further support of their motion to dismiss the Second Amended Complaint ("Complaint") filed by Aberdeen Claims Administration, Inc. ("Aberdeen" or "Plaintiff") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## ARGUMENT

### I. THE SECTION 10(b) CLAIM AGAINST THE AUDITOR DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO PLEAD SCIENTER

Aberdeen's assertion that the Auditor Defendants acted with scienter rests on its allegation that Defendants had access to genuine bank confirmations contradicting those provided by Satyam.[2] But, while urging the Court to review the Complaint holistically (Opp. [dkt. no. 327], at 26-27, 32), Aberdeen itself fails to provide context for its allegations pertaining to bank confirmations sufficient to give rise to a strong inference of scienter. The Complaint offers no particulars to assist the Court in its scienter analysis, stating only that certain individuals received an unspecified number of bank confirmations reflecting unspecified deposits "on multiple occasions." Compl. ¶ 258. Aberdeen attempts to address this problem with its Complaint in two ways. First, it argues that the Auditor Defendants seek to impose an unrealistically high pleading standard. Opp. 27-28. Second, it argues that the Court should take judicial notice of statements made in an SEC settlement order relating to bank confirmations. *Id.* at 28 & n.25. Both of these arguments fail.

---

[1] The Auditor Defendants and PwC Pvt. Ltd. join in Satyam's motion to dismiss Aberdeen's common stock claims on *Morrison* grounds. *See* Satyam Br. [dkt. no. 316], at 8-13.

[2] Aberdeen's remaining arguments concerning alleged "red flags" and GAAP violations (Opp. 30) offer nothing beyond the allegations in the Complaint, and fail to address the deficiencies identified in Defendants' opening brief. *See* Defs' Br. 11-13.

The applicable pleading standard requires Aberdeen to "state with particularity facts giving rise to a strong inference" that Defendants acted with an intent to defraud, 15 U.S.C. § 78u-4(b)(2)—and "merely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient." *In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010). Instead, "[w]here plaintiffs contend defendants had access to contrary facts, they must *specifically* identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (emphasis added); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 373 (S.D.N.Y. 2007) (same). Aberdeen does not dispute the applicability of these cases, and it does not assert that it has met the standard set out in *Novak* and its progeny. *See* Opp. 27-28. It simply asks the Court to look beyond such details, *see id.* (which the Court cannot do, *see Novak*, 216 F.3d at 311). Because the Complaint fails to identify *specific* statements or reports contradicting Defendants' audit opinions, it fails to plead scienter. *See* Defs.' Br. [dkt. no. 303], at 9-11.

Aberdeen's belated effort to identify specific statements or reports concerning bank confirmations by inserting new allegations in its opposition brief (Opp. 28) is misguided. *See, e.g.*, *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."). Plaintiff asks the Court to "take judicial notice of the SEC's Order" (Opp. 28 n.25), but the fact that the SEC filed a settlement order is irrelevant.[3] The Court can take judicial notice that statements appearing in an SEC settlement order *have been made*, but it cannot take judicial notice that such statements *are true*. *See* Fed. R. Evid. 201(b); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010) ("We do not rely on the SEC's allegations for their truth, but rather to

---

[3] The SEC's settlement order is attached as Exhibit B to the Declaration of Joseph T. Kelleher, Esquire [dkt. no. 328-9].

establish the fact of such litigation and related filings." (internal quotation marks omitted)). The new allegations do not appear in the Complaint, and are therefore not properly before the Court on this motion.

Even if considered, however, the statements that Aberdeen extracted from the SEC's negligence-based settlement order do not cure the defects in the Second Amended Complaint. The "examples" provided still lack context necessary to give rise to a strong inference of scienter. *See* Defs.' Br. 10 (citing cases); *cf. ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JPMorgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (affirming dismissal for failure to plead materiality: "Although $2 billion in prepay transactions may sound staggering, the number must be placed in context[.]"). Little can be inferred from the alleged discrepancies between genuine and forged account statements in a vacuum, and Aberdeen does not indicate whether such discrepancies occurred with regularity and thus could be expected to be discovered and confronted, or rarely, and might be missed or resolved based on Satyam's representations to the auditors. In the absence of particulars, and in the presence of a complaint filled with allegations showing that Satyam took extraordinary efforts to conceal the fraud from the world, including its auditors (Defs.' Br. 2-4, 7-9), the most compelling inference is that the auditors simply failed to appreciate that Satyam had provided fraudulent bank confirmations to them.

The Auditor Defendants' failure to discover the fraud hardly means, however, that they conducted "no audits at all" (Opp. 29); indeed, the law is to the contrary, *see* Defs.' Br. 8 n.4. In any event, Aberdeen's contention that the auditors conducted no audits at all is contradicted by Aberdeen's allegations that, among other things, "PwC … repeatedly noted scores of control deficiencies as part of its audits of Satyam" (Compl. ¶ 261). While Aberdeen may plead claims

in the alternative, it cannot make any valid arguments in its opposition brief that are inconsistent with the Complaint.

Finally, Aberdeen's contention that the auditors' "extraordinary" compensation supports an inference of scienter, *see* Opp. 32 (quoting *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1275 (M.D. Fla. 2009)), fails for lack of allegations supporting the assertion that the compensation was in fact "extraordinary." The Complaint alleges that peer companies paid their auditors less than Satyam did, *see* Compl. ¶ 73, but supplies no allegations to support the inference that the Defendants' fees were "exorbitant" or unreasonable relative to the difficulty or expense of the audit. Likewise, vague allegations about fees "not properly reflected in Satyam's accounts" (Opp. 32; Compl. ¶ 73) are not evidence of motive in the absence of any indication that these were not simply fees for services rendered. *See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 489 (S.D.N.Y. 2006).

## II. ABERDEEN'S STATE LAW CLAIMS SHOULD BE DISMISSED

### A. SLUSA Precludes All Of Aberdeen's State Law Claims

In response to Defendants' motion to dismiss the state law claims on SLUSA grounds, Aberdeen contests just one issue: whether Satyam common stock is a "covered security." *See* Opp. 53 & n.43. But significantly, Aberdeen does not address the substance of Defendants' dispositive argument that, even if Satyam's *common stock* is not a "covered security," "Aberdeen's claims are still precluded by SLUSA because Aberdeen alleges 'a misrepresentation or omission of a material fact *in connection with* the purchase or sale of a covered security.'" Defs.' Br. 17 (quoting 15 U.S.C. § 78bb(f)(1)(A) (emphasis in brief))—*i.e.*, Satyam's American Depositary Shares ("ADSs"). Because there is no dispute that the Satyam ADSs are "covered securities" under SLUSA and the misrepresentations alleged as to the purchase or sale of the ADSs are identical to the alleged misrepresentations in connection with the purchase or sale of

Satyam common stock, SLUSA is equally applicable to the common law claims addressed to both the Satyam ADSs and the Satyam common stock.

Plaintiff wrongly assumes that SLUSA is inapplicable to its common law claims to the extent those claims related to the purchase of Satyam common stock. But, as numerous courts have held, SLUSA's application is not so limited. SLUSA's "in connection with" requirement of SLUSA is construed broadly. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006). Here, Aberdeen's claims as to both the Satyam ADSs and Satyam common stock are based on the exact same alleged fraud. Under *Dabit*, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else. … The requisite showing, in other words, is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller." 547 U.S. at 85 (citations and internal quotation marks omitted). The focus under SLUSA is on the alleged misconduct, not on the "identity of the plaintiffs." *Id.* at 89.

This principle has been put into action recently in the numerous cases arising out of the Madoff Ponzi scheme. In those cases, plaintiffs purchased shares in an investment or "feeder fund" that, in turn, invested with "Bernard L. Madoff Securities LLC." *E.g.*, *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393 (S.D.N.Y. 2010). Madoff purported to purchase securities in the Standard & Poor's 100 Index—"covered securities"—but in fact such trading was ultimately fictitious. *See id.* at 393-94. Because plaintiffs alleged that the feeder funds made false statements concerning their due diligence and monitoring of Madoff and his strategy for trading covered securities, SLUSA's "in connection with the purchase or sale of a covered security" element was satisfied even though neither the shares of the feeder fund nor the investments with BMIS were themselves covered securities. *See id.* at 430; *see also In re*

*Kingate Mgmt. Ltd. Litig.*, No. 09 Civ. 5386, 2011 U.S. Dist. Lexis 41598, at *28-29 (S.D.N.Y. Mar. 30, 2011) (collecting cases).[4] *But see Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 398-99 (S.D.N.Y. 2010). The reasoning of these cases applies with greater force here, where the alleged misrepresentations relate directly to the Satyam ADSs and appear in documents filed to support ADS purchases and sales.

In addition, should the Court wish to reach the issue, the Satyam common shares themselves also qualify as "covered securities" under SLUSA, which defines "covered security" to mean a security that meets the criteria set forth in paragraph (1) or (2) of Section 18(b) of the Securities Act of 1933. 15 U.S.C. § 78bb(f)(5)(E). Section 18(b) of the Securities Act in turn, defines "covered securities" to include, *inter alia*, a security "listed, or authorized for listing, on the New York Stock Exchange." 15 U.S.C. § 77r(b)(1)(A). The common stock underlying the ADSs were also listed (but not traded) as part of Satyam's ADS registration. Satyam's Form 8-A filed in 2001 states that "[a]pplication has been made for listing [of the common stock], but only in connection with the registration of American Depositary Shares [ADSs] pursuant to the requirements of The New [York] Stock Exchange." Declaration of Fraser L. Hunter, Jr., July 18, 2011, Ex. 2.

SLUSA's rule that a security listed or authorized for listing on the NYSE cannot be the subject of a state law class action is fully consistent with *Morrison*'s rule that Section 10(b) of the Exchange Act does not reach transactions on foreign exchanges. While *Morrison* references

---

[4] Aberdeen's only response to the argument that SLUSA precludes the investors' state law claims whether or not the investor purchased a "covered security" appears in a footnote, criticizing Defendants' reliance on *Kingate*, *supra*. Aberdeen contends, *inter alia*, that "[i]n *Kingate*, all securities at issue were "covered." Opp. 53 n.41. That is clearly wrong; the plaintiffs in *Kingate* invested in shares of an overseas hedge fund, which were not covered securities. 2011 U.S. Dist. Lexis 41598, at *12-14. But their state law claims related to misrepresentations *in connection with* the purchase or sale of a covered security (the S&P 100 Index), and were thus precluded. *See id.* at *27-33. Indeed, the alleged misrepresentations were made in connection with the purchase and sale of covered securities, even where, in fact, no such purchases or sales took place. *See id.* at *28-29.

"transactions in securities listed on domestic exchanges," *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010), it does *not* hold that Section 10(b) reaches any trade anywhere in the world, so long as the security happens to be listed or authorized for listing on the NYSE. Instead, *Morrison* focuses on the geographical location of purchases and sales. This approach derives from a presumption against extraterritorial application of federal law and the absence of "clearly expressed" Congressional intent "to give a statute extraterritorial effect." 130 S. Ct. at 2877 (internal quotation marks omitted). Relying on the presumption against extraterritorial application, the Court resolved any ambiguity in the statute in favor of a narrower interpretation. And because *Morrison* indisputably *limits* the scope of Section 10(b), Courts following *Morrison* have held that its references to "listed" securities cannot be construed as broadening it.[5] The *contrary* presumption informs interpretation of SLUSA. Its purpose—to prevent certain state law class actions from frustrating the objectives of Private Securities Litigation Reform Act—gives rise to a presumption that SLUSA must be construed broadly. *See Dabit*, 547 U.S. at 86 ("The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction *but also from the particular concerns that culminated in SLUSA's enactment*." (emphasis added)). The intent of Congress in enacting SLUSA was clear: to prevent plaintiffs from evading federal securities law governing securities fraud class actions in U.S. Courts—including federal law that limits the scope of private actions under Section

---

5 *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 05571, 2011 U.S. Dist. Lexis 17514, at *49-50 (S.D.N.Y. Feb. 22, 2011) ("There is no indication that the *Morrison* majority read Section 10(b) as applying to securities that may be cross-listed on domestic and foreign exchanges, but where the purchase and sale does not arise from the domestic listing, particularly where (as here) the domestic listing is not even for trading purposes."); *In re Royal Bank of Scot. Group PLC Sec. Litig.*, No. 09 Civ. 300, 2011 U.S. Dist. Lexis 3974, at *22 (S.D.N.Y. Jan. 11, 2011) ("The idea that a foreign company is subject to U.S. Securities laws everywhere it conducts foreign transactions merely because it has 'listed' some securities in the United States is simply contrary to the spirit of *Morrison*."); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 473 (S.D.N.Y. 2010) ("That the transactions themselves must occur on a domestic exchange to trigger application of § 10(b) reflects the most natural and elementary reading of *Morrison*.").

10(b)—by substituting state law claims for securities fraud claims. *See id.* at 86-87 (holding that SLUSA precludes "holder" claims). Permitting Aberdeen to assert state law claims based on the purchase or sale of Satyam common stock would conflict with federal law holding that Congress has barred securities fraud class actions except those brought in accordance with the PSLRA. *See also In re Kingate*, 2011 U.S. Dist. LEXIS 41598, at *26–27 ("SLUSA is not being applied extraterritorially in this [class action in a court of the United States], and the logic of *Morrison* therefore has no effect on SLUSA's applicability.").[6]

**B. The Complaint Fails To State A Claim For Fraud, Negligence, Or Negligent Misrepresentation**

1. *Aberdeen's Fraud Claim Should Be Dismissed For Failure To Plead The Elements Of Scienter And Reliance*

The state law fraud claim must be dismissed for failure to plead scienter. *See* Defs.' Br. 19. Aberdeen also fails to plead reliance. It does not dispute Defendants' contention that it is not entitled to a presumption of reliance, *compare* Defs.' Br. 20 n.14, *with* Opp. 57, and its allegation that the investors, through investment advisors, actually relied on the alleged misrepresentation (Compl. ¶ 317) is far too conclusory an allegation to state a claim, *see* Defs.' Br. 20; *Clark v. Nevis Capital Management, LLC*, No. 04 Civ. 2702, 2005 WL 488641, at *18 (S.D.N.Y. Mar. 2, 2005) (dismissing common law fraud claim on Rule 9(b) grounds because, "[a]s an essential element of a cause of action for fraud, justifiable reliance must be pleaded with particularity[.]" (internal brackets and ellipsis in original omitted)). Aberdeen does not allege that the advisors communicated *anything* to the investors, including any alleged

6 Cabining SLUSA's preclusive effect to permit state law claims based on fraud in connection with trades on foreign exchanges would lead to the incongruous result that a plaintiff would have more potentially available remedies for trades conducted abroad than in the United States. In defining "covered security" in SLUSA, Congress identified securities that are frequently the target of private securities fraud class actions; it did not intend to carve out state law class action lawsuits based on foreign trades. *Cf. Dabit*, 547 U.S. at 86 (reasoning that, with respect to "holder" claims, "[i]t would be odd, to say the least, if SLUSA exempted that particularly troublesome subset of class actions from its pre-emptive sweep").

misrepresentations. *Cf. Aronson v. GreenMountain.com*, 809 A.2d 399, 403-04 (Pa. Super. Ct. 2002) (no indirect reliance because plaintiffs did not allege that they saw the alleged misrepresentations); *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 111 (N.J. 2000) (theory of indirect reliance requires that plaintiff "actually hears the substance of the misrepresentation, by means however attenuated"). Plaintiff's assertion that the investors relied on the Auditor Defendants' audit opinions is a mere legal conclusion, and is not sufficient to state a claim. *See* Defs.' Br. 20.

2. *Aberdeen's New and Novel Theory of Accountant Malpractice Should Be Rejected*

Aberdeen claims that the economic loss doctrine does not bar its negligence claim because the claim, which "is brought against all Defendants" (Compl. ¶ 372)—including Satyam—should now be understood as an "accountant malpractice" claim with respect to the Indian defendants. Opp. 58. The notion that Aberdeen has asserted a professional malpractice claim against Defendants appears nowhere in the Complaint, and in any event, Aberdeen cites no cases to support its novel theory that a non-fiduciary auditor may be held liable to investors in the audited company on malpractice grounds.[7] Nor does Aberdeen address Defendants' authorities, which establish that Defendants did not owe a duty of care to the investors in connection with the negligence claim because they were not in privity with the investors. *Compare* Defs.' Br. 20-21, *with* Opp. 58-64 & n.49.[8]

---

[7] Aberdeen cites *Bilt-Rite Contrs., Inc. v. Architectural Studio*, 581 Pa. 454 (Pa. 2005), which addressed the question "whether a building contractor may maintain a negligent misrepresentation claim against an architect for alleged misrepresentations in the architect's plans for a public construction contract," *id.* at 456, and *In re Computer Personalities Systems, Inc.*, No. 01–14231DWS, 2003 WL 22844863 (Bankr. E.D. Pa. Nov. 18, 2003), in which the debtor company sued the accountant it had retained. Neither case is relevant here.

[8] Aberdeen's citation to cases holding that privity is not a requirement for a *negligent misrepresentation* claim (Opp. 63 n.49) misses the point entirely. Defendants did not make that argument; rather, they showed that an accountant's duty to provide professional services with care arises from the contractual relationship between it and the client. *See* Defs.' Br. 20-21; *accord CRT Investments, Ltd. v. BDO Seidman, LLP*, --N.Y.S.2d--, No. 601052/09, 2011 WL 2225050, at *2 (N.Y. App. Div., 1st Dep't, July 9, 2011) ("Where, as here, direct contact between the accountant and the plaintiff is minimal or nonexistent, the plaintiff cannot recover for the accountant's alleged negligence.").

3. *Potential Investors Do Not Constitute A "Limited Group" Of Persons Under Section 552 Of The Restatement (Second) Of Torts*

As Aberdeen concedes, a negligent misrepresentation claim under Pennsylvania law must be construed in accordance with Section 552 of the Restatement (Second) of Torts, which "'sets forth the parameters of a duty owed'" with respect to negligent misrepresentation claims. Opp. 60 (quoting *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 479 (Pa. 2005)). Section 552, in turn, limits the duty of care to (a) "the person or one of a *limited* group of persons for whose benefit and guidance [defendant] intends to supply the information," (b) one who relies on the information "in a transaction that [defendant] intends the information to influence." Restatement (Second) of Torts § 552(2) (emphasis added). Aberdeen's argument that all potential Satyam investors constitute a "limited group," Opp. 62-64, should be rejected because it effectively eliminates this important limitation on the duties owed. *See* Defs.' Br. 11-14.

The case law squarely holds that "'public disclosures made pursuant to the federal securities laws'" are not made to "'a limited group.'" *WM High Yield Fund v. O'Hanlon*, No. Civ.A. 04-3423, 2005 WL 1017811, at *16 (E.D. Pa. Apr. 29, 2005) (quoting *Wallace v. Systems & Computer Tech. Corp.*, No. Civ.A. 95-CV-6303, 1997 WL 602808, at *23 (E.D. Pa. Sept. 23, 1997); *In re Westinghouse Sec. Litig.*, 832 F. Supp. 948, 988 (W.D. Pa. 1993));[9] *see also Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F. Supp. 2d 517, 529 (M.D. Pa. 1999) ("If … an accounting firm is retained to perform a routine audit, without any indication that its work product will be used for some other purpose, then the accounting firm will not be liable for negligent misrepresentation." (citing Restatement (Second) of Torts §

[9] The plaintiffs in *In re Westinghouse Securities Litigation* did not challenge the district court's dismissal of the negligent misrepresentation claim on appeal. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 n.2 (3d Cir. 1996).

552, Illustration No. 10)). In the face of this well-reasoned authority, Aberdeen cites cases that either do not reach the issue at all[10] or decide it without any explanation.[11] Opp. 62-64.

## III. ABERDEEN FAILS TO SHOW THAT PRICEWATERHOUSECOOPERS PVT. LTD. IS AN ALTER EGO OF THE AUDITOR DEFENDANTS

Aberdeen does not contest the proposition that PwC Pvt. Ltd. is not liable unless it is an alter ego of the Auditor Defendants (Opp. 39-41), but it fails to show—under the law of any jurisdiction whose law might apply—that PwC Pvt. Ltd. should be held liable on such a theory. Aberdeen contends that Pennsylvania courts would apply Pennsylvania law (Opp. 39 n.29), but it does not establish that Pennsylvania courts would recognize the allegations in the Complaint as sufficient to establish alter-ego liability.[12]

"[T]here is a strong presumption in Pennsylvania against piercing the corporate veil," *Lumax Indus. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995), and "Pennsylvania law does not permit recovery from an alleged controlling corporation 'unless the party seeking to pierce the corporate veil on an alter-ego theory establishes that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its

[10] *See Paraschos v. YBM Magnex Int'l, Inc.*, No. Civ.A 98-6444, 2000 WL 325945, at *11 (E.D. Pa. Mar. 29, 2000) (reaching no holding on the scope of Section 552); *In re Regal Communications Corp. Sec. Litig.*, No. 94-179, 1996 WL 411654, at *5 (E.D. Pa. July 17, 1996) (same); *Sharp v. Coopers & Lybrand*, 457 F. Supp. 879, 888 (E.D. Pa. 1978) (same).

[11] In *In re Chambers Development Securities Litigation*, 848 F. Supp. 602 (W.D. Pa. 1994), the district court summarily rejected the defendants' argument that plaintiffs were not part of a "limited group" of persons to whom a duty was owed without explanation. *See also In re Intelligent Electronics, Inc. Sec. Litig.*, No. 95-7663, 1996 WL 304852, at *4 (E.D. Pa. June 6, 1996) (holding, without discussion, that securities "*holders*"—not prospective investors—were intended beneficiaries of audited information). Given the other more recent decisions that have analyzed the issue in full, these cases are of limited relevance here. Aberdeen also relies on an array of inapposite and unpersuasive opinions interpreting the law of North Carolina, Rhode Island, Minnesota, and Alabama, without any indication of how these cases are relevant. Opp. 64. Aberdeen's reliance on comment h. to Section 552 (Opp. 62) is also misplaced. The comment merely states that plaintiff need not show that the defendant knew the identity of the plaintiff at the time of the alleged negligent misrepresentation. *See* Restatement (Second) of Torts § 552, Illus. No. 10.

[12] Plaintiff does not acknowledge, much less address, Defendants' argument that no conflict exists as between Indian law and the law of New York or Pennsylvania, and it ignores Defendants' New York authorities entirely. *Compare* Defs.' Br. 23-25 & nn.19-20, *with* Opp. 39-41.

separate existence was a mere sham.'" *Rapid Circuits, Inc. v. Sun Nat'l Bank*, No. 10-6401, 2011 U.S. Dist. Lexis 47231, at *65 (E.D. Pa. May 2, 2011) (quoting *Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 14 (3d Cir. 1990)). The Complaint does not allege that PwC Pvt. Ltd. dominated or controlled either of the Auditor Defendants. *See* Compl. ¶¶ 65-72. Nor does it allege any of the "four general veil-piercing factors" listed by Aberdeen (Opp. 39): undercapitalization, failure to adhere to corporate formalities, intermingling assets or records with those held or maintained by other entities, and using the corporate form to perpetrate a fraud. *See id.* Rather, the Complaint asserts that the three entities shared office space, had "overlapping leadership," and held themselves out to the public as a single entity. *See* Compl. ¶¶ 69-70. Such allegations are not enough. *See Rapid Circuits*, 2011 U.S. Dist. Lexis 47231, at *68-69 (dismissing alter ego claim where plaintiff asserted that "companies share the same address, the same Chairman, and the same President and CEO" because plaintiff failed to show domination and control); *accord* Defs.' Br. 23-25 & n.20.[13]

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, this Court should dismiss the Complaint against Price Waterhouse, PricewaterhouseCoopers Private Ltd., and Lovelock & Lewes with prejudice.

---

[13] Plaintiff cites *Engle v. Matrix Golf & Hospitality Philadelphia*, LLC, No. 08-5831, 2009 WL 880680 (E.D. Pa. Mar. 31, 2009), and *Pina v. Henkel Corp.*, No. 07-4048, 2008 WL 819901 (E.D. Pa. Mar. 26, 2008), but the allegations in those cases were quite different than those tendered here. In *Engle*, plaintiff alleged, *inter alia*, that "*everyone* involved in the management" of the dominated entity was also an employee of the controlling entity, and that defendant "controlled" various alter ego entities. 2009 WL 880680, at *4 (emphasis added). The Court held that plaintiff had shown that defendants were "all controlled by the same source." *Id.* In *Pina*, plaintiff alleged that executives at a parent company had "expanded their efforts to exert direct authority and control at all management levels over the operations and employees" of a subsidiary corporation. 2008 WL 819901, at *8 (brackets omitted). In this case, Aberdeen does not assert, even conclusorily, that PwC Pvt. Ltd. "controlled" Price Waterhouse or Lovelock & Lewes. Aberdeen does not contend that management at the Auditor Defendants was *subordinate* to management at PwC Pvt. Ltd. or otherwise controlled or dominated by PwC Pvt. Ltd.' management.

Dated: July 18, 2011
New York, New York

Respectfully submitted,

/s/ Fraser L. Hunter, Jr.
Howard M. Shapiro
Fraser L. Hunter, Jr.
Brian A. Sutherland
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com

*Attorneys for Price Waterhouse, PricewaterhouseCoopers Private Ltd., and Lovelock & Lewes*